NOSSAMAN LLP
Allan H. Ickowitz (SBN 80994)
John W. Kim (SBN 216251)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: 213-612-7849
Facsimile: 213-612-7801
aickowitz@nossaman.com
jkim@nossaman.com

-and-

WINDELS MARX LANE & MITTENDORF, LLP
Alan Nisselson, Esq.
Scott R. Matthews, Esq.
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
anisselson@windelsmarx.com
smatthews@windelsmarx.com

Attorneys for DOM Partners LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ESCOM, LLC,<br><br>          Debtor. | Involuntary Chapter 11 Petition<br><br>Case No. 10-bk-13001-GM<br><br>**DECLARATION OF ROBERT E. SEAMAN III IN SUPPORT OF MOTION OF DOM PARTNERS LLC FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE §§ 105, 305(a) AND 1112(b) DISMISSING THE PETITION, AND AWARDING SANCTIONS AGAINST PETITIONERS**<br><br>[Notice of Motion and Motion to Dismiss ESCOM's Involuntary Petition Filed Concurrently Hereto]<br><br>**HEARING**<br>Date:    April 20, 2010<br>Time:   10:00 a.m.<br>Judge:  Hon. Geraldine Mund (Crtm. 303)<br>Place:  21041 Burbank Blvd<br>         Woodland Hills, CA |

384406_1.DOC

**DECLARATION OF ROBERT E. SEAMAN III IN SUPPORT OF MOTION DISMISSING THE PETITION**

## DECLARATION OF ROBERT E. SEAMAN III

I, Robert E. Seaman III, declare as follows:

1. I am an authorized representative of and legal counsel to DOM Partners LLC ("**DOM**"), a secured creditor of the alleged Debtor, ESCOM, LLC ("**ESCOM**"). I personally participated on behalf of DOM in the original transaction and the communications, collection and enforcement of DOM's rights and remedies as more particularly described below. I have personal knowledge of the matters set forth herein and, if called upon to do so, I could and would competently testify as to them.

2. I submit this declaration in support of DOM's motion (the "**Motion**") pursuant to sections 105, 305(a) and 1112(b) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") seeking (a) dismissal of the involuntary chapter 11 petition (the "**Petition**") filed by three purported and related petitioners, Washington Technology Associates, LLC ("**WTA**"), iEntertainment, Inc. ("**iEntertainment**"), and AccountingMatters.com, LLC ("**AccountingMatters**") (collectively, "**Petitioners**"), and (b) sanctions against Petitioners for their bad faith filing.

## THE HISTORY OF THIS DISPUTE

3. DOM is a Delaware limited liability company formed for the purpose of lending monies to and making an equity investment in ESCOM. DOM is a manager, founder, member, secured creditor and equity investor of ESCOM.

4. ESCOM is a Delaware limited liability company formed for the purpose of operating a business whose substantially sole asset is the Internet domain name and related INTERNIC registration of the URL www.sex.com (the "**Domain Name**"). All of ESCOM's revenues are derived through operation of the Domain Name.

5. DOM originally lent $1,500,000 to ESCOM pursuant to a Convertible Promissory Note dated as of January 12, 2006 (the "**Convertible Loan**"). Thereafter, a third-party investor satisfied the Convertible Loan, which is no longer owed to DOM.

6. Also on January 12, 2006, DOM lent $3,000,000 to ESCOM pursuant to a Secured Promissory Note (the "**Secured Note**"). ESCOM's obligations under the Secured Note are secured by collateral consisting of the Domain Name and all tangible and intangible property of ESCOM, as more fully stated in that certain Security Agreement dated as of January 12, 2006 (the "**Security**

**Agreement**"). DOM perfected its security interest in the collateral by the filing of a UCC Financing Statement on January 31, 2006 (the "**UCC Financing Statement**"). Finally, DOM also invested $1,000,000 in ESCOM (the "**Equity Investment**"). True and correct copies of the Secured Note, Security Agreement and UCC Financing Statement are attached as Exhibits 1, 2 and 3, respectively.

7. On January 12, 2009, the Secured Note, and obligations thereunder, became due and payable to DOM, and ESCOM failed to make payment to DOM. On January 13, 2009, DOM gave notice of default to ESCOM. A true and correct copy of DOM's notice of default is attached as Exhibit 4.

8. As of the date of the involuntary Petition, ESCOM is indebted to DOM in the approximate aggregate amount of $4,313,276.16, comprised of principal of $3,000,000, interest and late fees of $932,264.06, and fees, costs and charges permitted under the Secured Note and the Security Agreement, including, without limitation, auctioneer, advertising and attorneys' fees and expenses of $381,012.10.

9. DOM was not the only source of funding for ESCOM. Indeed, on the same day that DOM lent monies to ESCOM, one of the Petitioners, WTA, made a secured loan to ESCOM in the amount of $5,000,000 (the "**WTA Loan**"). WTA and DOM are both first priority secured lenders, having agreed with ESCOM to share in the repayment of their loans *pari passu*, as recorded in the UCC Financing Statement and the UCC Financing Statement filed on behalf of WTA. A true and correct copy of WTA's UCC Financing Statement is attached as Exhibit 5. Like DOM, WTA also made an equity investment of $1,000,000 in ESCOM, and is a Manager, Founder, Member, secured creditor and equity investor of ESCOM.

10. Additional investments in ESCOM were made by (a) an entity named "Nuthin' But Net", which satisfied the Convertible Loan made by DOM to ESCOM in exchange for what is now an equity investment in ESCOM, (b) an entity named "I95 Investment Group", which made an equity investment in the amount of $400,000 in ESCOM, and (c) another of the Petitioners, iEntertainment, converted a right to receive future revenues into a $2,500,000 subordinate secured loan that is junior to the secured interests held by DOM and WTA. iEntertainment paid no monies to ESCOM in exchange for its security interest.

11. Accordingly, ESCOM's secured indebtedness aggregates the approximate amount of $14,397,594.84 million, the amounts and priorities of which may be summarized as follows:

(i) and (ii)    DOM: $4,313,276.16, and WTA: $6,607,803.66 (per the Petition), *pari passu*; and

(iii)    iEntertainment: $3,476,515.02 (per the Petition).

## THE FACTS LEADING UP TO THE FILING OF THE PETITION

12. Pursuant to ESCOM's governing corporate documents, ESCOM is required to be managed by its three Managers: (a) DOM, (b) WTA, and (c) Domain Name Acquisition Group ("**DNAG**"). A true and correct copy of the Fourth Amended and Restated Limited Liability Company Agreement of ESCOM, LLC is attached as Exhibit 6. As reflected in Article V, § 5.03 of Exhibit 6, ESCOM may not file a voluntary bankruptcy petition without the unanimous consent of its Managers.

13. In reality, WTA manages ESCOM. On information and belief, ESCOM's only employee and Chief Executive Officer, Del Anthony ("**Anthony**"), reports to and receives instruction from WTA's Chairman, Mike Mann ("**Mann**"). On information and belief, Mann, the person who signed the Petition as "Chairman" on behalf of all of the Petitioners WTA, iEntertainment and AccountingMatters, also controls or has an interest in the following companies that have done or currently do business with ESCOM, including AccountingMatters, SEO.com, DomainMarket.com, Graphics.net, Weblive.com, Tasty.com, and Yield Software. I make these statements on information and belief because, although DOM is a manager, founder, member, secured creditor and equity investor of ESCOM, DOM has been denied access to ESCOM's books and records despite repeated requests to review them for the last year.

14. Since ESCOM's default of the Secured Note on January 12, 2009, DOM's representatives have attempted to negotiate with representatives of WTA and iEntertainment to determine the best possible method to cure the defaults and monetize ESCOM to satisfy the secured claims of its creditors. Unfortunately, these negotiations were unsuccessful. DOM proposed various alternative transactions, including: (a) the sale of the Domain Name via private sale in which all secured creditors and equity participants agree on the sale metrics; (b) the sale of DOM's debt and/or equity positions to WTA; and/or (c) the sale of WTA's debt and/or equity positions to DOM. DOM even deposited $6,000,000 into my attorney escrow account to purchase WTA's position. Mann has

frustrated all of DOM's efforts to facilitate a transaction by which at least ESCOM's secured creditors would be repaid, including a proposed transaction that would have resulted in the repayment, in full, of all of the debts owed to the secured creditors *and* the repayment of the investments made by all of ESCOM's equity participants. On information and belief, Mann thwarted these proposed transactions so that he would retain control of ESCOM and the Domain Name, based upon his unfounded belief that the Domain Name was too valuable to sell to a third party at the offered prices, even though he was unwilling or unable to purchase or satisfy DOM's secured debt himself.

15. Accordingly, on February 12, 2010, after more than a year since ESCOM's default and failure to pay any monies to DOM, DOM served Notice of Foreclosure Sale pursuant to Article 9 of the Uniform Commercial Code for an auction to be held on March 18, 2010 at DOM's outside attorney's office in New York City (the "**Auction**"). DOM retained licensed auctioneers, David R. Maltz & Co., Inc. (Richard B. Maltz, DCA #1240836 and David R. Maltz, DCA #762794) (the "**Auctioneer**"), to sell the Domain Name at public auction to the highest bidder. A true and correct copy of the Notice of Foreclosure Sale is attached as <u>Exhibit 7</u>.

16. Upon receipt of the Notice of Foreclosure Sale, Mann's representatives went through the motions of attempting to negotiate a resolution of the dispute. Mann's representatives indicated that Mann was interested in purchasing DOM's Secured Note to avoid the Auction. DOM was ready, willing and able to sell its debt to WTA or any other entity through which Mann wanted to buy it, and requested assurances that Mann had sufficient capital to complete the purchase. Typical of his actions to date, Mann was unable provide any such assurances. Accordingly, DOM's counsel advised Mann's counsel that DOM would proceed with the Auction in an effort to satisfy its claim.

17. DOM and the Auctioneer advertised the Auction via legal notice and advertisement in *The Wall Street Journal* and *The New York Times*. The Auctioneer also advertised the Auction via its website at www.MaltzAuctions.com. As a result of these efforts, the following mainstream and Internet media outlets, among others, reported on the Auction: *Reuters, Wall Street Journal*, National Public Radio, *New York Post, New York Daily News, The Baltimore Sun, The Independent, Chicago Daily Herald, The Washington Post*, CNN TV, CNNMoney.com, CNBC, *The Belfast Telegraph, Domain Name Journal, Domain Name News*, WCBS News Radio 880, *The Daily Contributor*, stv.tv, Poker 777,

*Bluff Magazine*, PokerListings.com, PokerHeadline.com, DaniWeb, CircleID, LittleAbout, CNET, IDNBlog, *The Inquirer*, TECH.BLORGE.com, XBIZ, Newswire, Elliot's Blog, Techie Buzz, iT News, Stuff.co.nz, mediabistro.com (blog), *Times Online, Times of India.*

18. Scores of potential bidders, including international individual investors, domain name industry executives, adult entertainment industry companies, media companies and private investor groups, expressed an interest in bidding at the Auction. Indeed, interest was so high that I anticipated that ESCOM's first priority secured obligations (DOM and WTA) would be satisfied through the sale of the Domain Name at the Auction.

19. Shortly before the Auction, on March 16, 2010, Anthony sent an email to representatives of DOM, DNAG and WTA, advising that ESCOM had retained a prominent national bankruptcy firm to consult about "insolvency" issues. DOM's counsel's response, *inter alia*, reminded Anthony that unanimous consent was required for ESCOM to file a voluntary bankruptcy petition. Anthony acknowledged that fact in his reply. True and correct copies of those emails are attached as <u>Exhibit 8</u>.

20. Accordingly, because all other efforts to retain control over the Domain Name failed, Mann caused WTA, iEntertainment and AccountingMatters to file the involuntary Petition at 12:23 p.m. PST on Wednesday, March 17, 2010, less than 24 hours before the scheduled Auction. By this time, DOM's counsel had already qualified several bidders to participate at the Auction through acceptance from each of $1,000,000 to be held in escrow pending the results of the Auction, and at least three individuals had traveled to New York to participate in the Auction to be held the next morning on Thursday, March 18, 2010.

21. The Petitioners have no legitimate basis to file the Petition. According to a news report published by the *Associated Press*, Mann acknowledged that he caused the Petition to be filed to "stop the auction". Mann is quoted as saying: "It's the most valuable domain in the world. They were throwing away the world's most valuable domain asset." A true and correct copy of the AP article is attached as <u>Exhibit 9</u>. WTA and iEntertainment have claimed to be owed monies since January 12, 2009, but have done nothing to enforce their claims, preferring instead to allow the status quo to remain and to prevent DOM from collecting on its claim. Now, on the day before the Auction would be held, they initiated an involuntary chapter 11 bankruptcy proceeding to forestall the happening of the only

viable means to achieve satisfaction of their claims. At the same time, Mann's other company, AccountingMatters, joined in the filing of the Petition on the basis of a purported claim for $7,800.00, notwithstanding that Mann's representatives informed DOM that ESCOM had over $100,000 in its bank account as recently as January 21, 2010, and, therefore, ESCOM has more than enough money to satisfy a $7,800.00 claim. True and correct copies of electronic communications reflecting same are attached as Exhibit 10. Mann controls all three of the Petitioner entities and WTA is an equity holder and manager of ESCOM. They should not be permitted to hold the company hostage and thereby gain an unfair advantage over DOM.

22. Aside from the Domain Name and some cash, ESCOM has no other substantial assets, little income, and just one employee. ESCOM has no working capital of its own to finance any development of the Domain Name, let alone to pay its secured creditors. ESCOM has not sought a committed source of financing despite its efforts for more than a year to settle with DOM. It is clear that nothing short of a miracle will enable ESCOM to repay DOM and its other secured creditors without selling the Domain Name.

23. Moreover, the auction sale marketing had been tremendously successful. Numerous bidders had each paid one million dollars to qualify as competitive bidders and traveled to New York City from all over the world to attend and participate in the Auction. The Auction was widely reported in the global news media and on the Internet, and there was significant excitement that the Domain Name was going to sell for many millions of dollars. Immediate dismissal of this case will permit the sale to resume with that momentum of excitement, which can generate a highly competitive bidding environment. Permitting the asset to be held by a moribund debtor languishing in bankruptcy without the ability to rehabilitate the asset would not serve the best interests of creditors or the debtor.

24. Every day that ESCOM's case is pending, there is a substantial or continuing diminution of the estate. The Domain Name is not being used to its maximum advantage and, just as during the pre-petition period, ESCOM is not generating sufficient income to pay its creditors. Administrative debt is going to accrue and ESCOM has demonstrated its refusal and inability to implement any business plan to improve the situation. The secured claims held by DOM and the other secured creditors will continue

to accrue while ESCOM keeps their collateral unable to generate income to pay their debts. Thus, the diminution of the estate is indisputable.

### THE AUCTION IS THE MOST LIKELY METHOD TO
### SECURE FUNDS SUFFICIENT TO SATISFY ESCOM'S SECURED CREDITORS

25. The Auction is the best way to secure a sale price for the Domain Name in sufficient amount to repay the secured creditors. On information and belief, ESCOM does not have sufficient revenues to pay its debts to DOM and the other secured creditors. The sale of the Domain Name is the only way to secure funding to satisfy ESCOM's debts.

26. ESCOM has been aware of its unpaid obligations since at least January 12, 2009, but has not changed its business plan to generate additional revenues, sought alternative funding sources or otherwise satisfied its creditors. As noted above, the Auction generated significant interest and was expected to yield a sale price for the Domain Name that would satisfy the company's secured debt obligations. Although the bankruptcy filing has triggered press reports and public statements to the effect that the Domain Name's value has been reduced as a result of the bankruptcy, DOM continues to receive interest from potential purchasers indicating that they would purchase the Domain Name either privately or through an auction. DOM is pursuing these potential transactions; however, the existence of the bankruptcy action prevents consummation.

### PETITIONERS SHOULD BE SANCTIONED
### AND PAY FOR DOM'S COSTS, EXPENSES AND LEGAL FEES

27. DOM has incurred significant costs, expenses and legal fees in connection with administering and enforcing the Secured Note, securing the services of the Auctioneer, advertising the Auction, and in appearing in this Court. DOM requests that the Court order that all of its costs be added to ESCOM's debt and that the Petitioners pay for all of DOM's legal fees and costs incurred in connection with this proceeding. DOM is prepared to present a full schedule of its costs, expenses and legal fees incurred upon the Order of the Court.

*[Remainder of Page Left Intentionally Blank]*

28. DOM submits that Petitioners filed the Petition in bad faith and respectfully requests that the Court dismiss the Petition and award sanctions against Petitioners.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of March, 2010 at Fort Lee, New Jersey.

_____
ROBERT E. SEAMAN III

| In re: ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 10-bk-13001-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Nossaman LLP, 445 S. Figueroa Street, 31st floor, Los Angeles, CA 90071**

The foregoing document described **DECLARATION OF ROBERT E. SEAMAN III IN SUPPORT OF MOTION OF DOM PARTNERS LLC FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE §§ 105, 305(a) AND 1112(b) DISMISSING THE PETITION, AND AWARDING SANCTIONS AGAINST PETITIONERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 26, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **March 26, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 26, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 26, 2010 | Mitchi Shibata | /s/ Mitchi Shibata |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                **F 9013-3.1**

| In re: ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 10-bk-13001-GM |

## SERVICE LIST

### I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

S Margaux Ross    margaux.ross@usdoj.gov
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

### II. SERVED BY OVERNIGHT MAIL

**Attorneys for Petitioners Washington Technology Associates, LLC, iEntertainment, Inc., and AccountingMatters.comLLC**
Mark Chassman
120 Broadway Suite 300
Santa Monica, CA 90401

**Attorneys for Petitioners Washington Technology Associates, LLC, iEntertainment, Inc.,and AccountingMatters.comLLC**
Lawrence F. Morrison, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017

**Debtor**
Escom LLC
23480 Park Sorrento Ste 206B
Calabasas, CA 91302
Attn: Del Anthony

**Creditors or Parties in Interest**
Nuthin' But Net, LLC
c/o Cardworks L.P.
101 Cross Parkway West
Woodbury, New York 11797
Attn: Donald Berman

**Counsel to Creditors or Parties in Interest Nuthin' But Net, LLC**
Daniel G. Gurfein, Esq.
Satterlee Stephens, Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 404-8702

**Creditors or Parties in Interest**
i95 Investment Group
60 Wells Avenue, Suite 100
Newton, MA 02459
Attn: Corey Bialow, Andrew Miller

**Creditors or Parties in Interest**
Domain Name Acquisition Group, LLC
c/o Internet Real Estate Group LLC
188 Needham Street, Suite 255
Newton, MA 02464
Attn: Andrew Miller

**US Trustee**
S. Margaux Ross, Esq.
21051 Warner Ctr. Lane, Suite 115
Woodland Hills, CA 91367

**Bankruptcy Court**
The Honorable Geraldine Mund
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

| In re: ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 10-bk-13001-GM |

### III. SERVED BY E-MAIL

**Attorneys for Petitioners Washington Technology Associates, LLC, iEntertainment, Inc., and AccountingMatters.comLLC**
Mark Chassman
120 Broadway Suite 300
Santa Monica, CA 90401
mchassman@chassmanseelig.com

**Attorneys for Petitioners Washington Technology Associates, LLC, iEntertainment, Inc.,and AccountingMatters.comLLC**
Lawrence F. Morrison, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017
lfm@msf-law.com

**Debtor**
Escom LLC
23480 Park Sorrento Ste 206B
Calabasas, CA 91302
Attn: Del Anthony
del@escomllc.com

**Counsel to Creditors or Parties in Interest Nuthin' But Net, LLC:**
Daniel G. Gurfein, Esq.
Satterlee Stephens, Burke & Burke LLP
230 Park Avenue
New York, New York 10169
dgurfein@ssbb.com

**Creditors or Parties in Interest**
i95 Investment Group
60 Wells Avenue, Suite 100
Newton, MA 02459
Attn: Corey Bialow, Andrew Miller
cbialow@bialow.com
amiller@internetrealestate.com

**Creditors or Parties in Interest**
Domain Name Acquisition Group, LLC
c/o Internet Real Estate Group LLC
188 Needham Street, Suite 255
Newton, MA 02464
Attn: Andrew Miller
amiller@internetrealestate.com

**Attorneys for US Trustee**
S. Margaux Ross, Esq.
21051 Warner Ctr. Lane, Suite 115
Woodland Hills, CA 91367
margaux.ross@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                       **F 9013-3.1**