# EXHIBIT 2

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this *"Agreement"*) is made effective as of this the 12th day of January, 2006, by Escom, LLC, a Delaware limited liability company (the *"Borrower"*), in favor of DOM Partners LLC, a limited liability company organized under the laws of the State of Delaware (*"Lender"*).

### RECITALS:

A. The Borrower has entered into a Secured Promissory Note of even date herewith in favor of the Lender in the aggregate principal amount of Three Million Dollars ($3,000,000) (the *"Note"*).

B. As a condition of extending the financing evidenced by the Note, the Lender requires that the Borrower enter into this Security Agreement to evidence their agreement to grant security interests and liens in the Collateral (as defined herein) to secure repayment of the Note.

NOW, THEREFORE, in consideration of the receipt of one dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, the Borrower hereby agrees in favor of the Lender as follows:

### ARTICLE I: DEFINITIONS

1.01 Definitions. In addition to the terms defined elsewhere herein, when used herein, the following capitalized terms shall have the meanings indicated:

*"Accounts"* and *"Accounts Receivable"* shall mean and includes without limitation, collectively, all of Borrower's now owned and hereafter acquired "accounts" as defined in the Applicable UCC, and also all accounts, accounts receivable, notes, drafts, acceptances, and other forms of obligations and receivable and rights to payment for credit extended and for goods sold or leased, or services rendered, whether or not yet earned by performance; all Inventory which gave rise thereto, and all rights associated with such Inventory, including the right of stoppage in transit; and all reclaimed, returned, rejected or repossessed Inventory (if any) the sale of which gave rise to any Account, rights to payment for goods sold or leased or for services rendered;

*"Applicable Law(s)"* when used in the singular, shall mean any applicable federal, state or local law, ordinance, order, regulation, rule or requirement of any governmental or quasi-governmental agency, instrumentality, board, commission, bureau or other authority having jurisdiction, and, when used in the plural, shall mean all such applicable federal, state and local laws, ordinances, orders, regulations, rules and requirements.



*"Applicable UCC"* shall mean the Uniform Commercial Code, as enacted in the State of New Jersey, as amended through the date hereof.

*"Chattel Paper"* shall mean and includes without limitation, collectively, all of the Borrower's now owned and hereafter acquired "chattel paper," as that term is defined in Section 9-105(1)(b) of the Applicable UCC.

*"Collateral"* shall mean and includes without limitation, collectively, all of the now-owned and hereafter acquired tangible and intangible property of the Borrower, including all of the following: (i) all Accounts; (ii) all Chattel Paper, (iii) all Equipment; (iv) all Goods; (v) all Instruments; (vi) all Inventory; (vii) all General Intangibles; (viii) all Contract Rights; (ix) all Proceeds; (x) all Investment Interests; (xi) all books and records of the Borrower, including those relating to any of the foregoing; (xii) all monies, deposit accounts, and rights to money of any kind; (xiii) all additions or accessions to any of the foregoing; (xiv) all substitutions for any of the foregoing; and (xv) all replacements, products and proceeds of the foregoing. Collateral as used herein shall specifically exclude all property utilized or in the possession of the Borrower which is owned by a third-party (other than a direct or indirect wholly owned subsidiary), including but not limited to third-parties sharing common ownership, control or business offices with Borrower.

*"Contract Rights"* shall mean and includes without limitation, collectively, all of the Borrower's now-owned or hereafter acquired "contract rights" as now or formerly defined in the Applicable UCC and also any right to payment under a contract not yet earned by performance and not evidenced by an instrument or Chattel Paper, including, without limitation, all rights and interest in and to that certain Domain Name Purchase and Sale Agreement dated July 13, 2005, as amended, originally entered into by and between Domain Name Acquisition Group, LLC and Grant Media, LLC, and subsequently assigned to Borrower (the "Domain Name Purchase Agreement").

*"Equipment"* shall mean and includes without limitation, collectively, all of Borrower's now owned and hereafter acquired "equipment" as defined in the Applicable UCC, and also all motor vehicles, rolling stock, machinery, office equipment, plant equipment, tools, dies, molds, store fixtures, furniture, and other goods, property, and assets which are used and/or were purchased for use in the operation or furtherance of the Borrower's business, and any and all accessions, additions thereto, and substitutions therefor.

*"Goods"* shall mean and includes without limitations, collectively, all of the Borrower's now owned and hereafter acquired "goods," as that term is defined in Section 9-105(1)(h) of the Applicable UCC.

*"General Intangibles"* shall mean and includes without limitation,

collectively, all of the Borrower's now owned and hereafter acquired "general intangibles" as defined in the Applicable UCC, including without limitation, all rights, licenses, permits and authorizations held by the Borrower; all rights under governmental ordinances or agreements with governmental authorities; things in action; contractual rights; goodwill; literary rights; rights to performance; domain names (including specifically the domain name "Sex.com"); rights in curriculum design, structure and content, and all of the Intellectual Property (as defined below).

*"Instruments"* shall mean and includes without limitation, collectively, all of the Borrower's now owned or hereafter acquired "instruments" as defined in the Applicable UCC and all other instruments, notes, items of payment, negotiable documents, and documents of title.

*"Intellectual Property"* shall mean, collectively, all of the Borrower's now owned and hereafter acquired intellectual property, including, without limitation the following: (a) all patents (including all rights corresponding thereto throughout the world, and all improvements thereon); (b) all trademarks (including service marks, trade names and trade secrets, and all goodwill associated therewith, including with respect to the trade name "Sex.com"), (c) all copyrights (including all renewals, extensions and continuations thereof); (d) all applications for patents, trademarks or copyrights and all applications otherwise relating in any way to the subject matter of such patents, copyrights and trademarks; (e) all patents, copyrights, trademarks or applications therefor arising after the date of this Agreement; (f) all reissues, continuations, continuations-in-part and divisions of the property described in the preceding clauses (a), (b), (c), (d), and (e), including, without limitation, any claims by the Borrower against third parties for infringement thereof; and (g) all rights to sue for past, present and future infringements or violations of any such patents, trademarks, and copyrights.

*"Inventory"* shall mean and includes without limitation, collectively, all of the Borrower's now owned and hereafter acquired "inventory" as defined in the Applicable UCC and all products, replacements, and substitutions therefor and thereof, and all accessions thereto, and all books, records, computer software and logs relating to and necessary or appropriate to the conduct of the business and operation the Borrower.

*"Investment Interests"* shall mean any share of stock, membership certificate, or other evidence of ownership which constitutes the ownership interest of Escom, LLC.

*"Obligations"* shall mean the Borrower's indebtedness, liabilities and obligations under the Note, and any renewals, modifications, and extensions thereof.



"*Person*" shall mean any individual, corporation, partnership, joint venture, limited liability Borrower, unincorporated association, trust, or other legal entity.

"*Proceeds*" shall mean and includes without limitation "proceeds" as defined in the Applicable UCC, all insurance proceeds and each type of property described in the definition of "Collateral" in this Agreement and all other cash and noncash proceeds resulting from any complete or partial transfer of the Collateral or any portion thereof or otherwise relating to or generated by, any of the Collateral.

"*Real Property*" shall mean, collectively, all real property in which the Borrower have a leasehold interest and all real property hereafter acquired by the Borrower in fee or by means of a leasehold interest, together with all goods located on any such real property that are or may become "fixtures" under the law of the jurisdiction in which such real property is located; provided however that, with respect to leasehold interests, the term "Real Property" shall include only those leaseholds for which Borrower is the named lessee in the subject lease or sublease, and in no event shall include Borrower's current office location at: 123 Newbury Street, Boston, Massachusetts.

## ARTICLE II:  GRANT OF SECURITY INTEREST

2.01  <u>Grant</u>.  As security for the payment and performance of each of the Obligations, the Borrower hereby grants to the Lender a continuing security interest in all of the Collateral, which security interest shall be pari passu with those security interests granted pursuant to all other promissory notes and security agreements executed by Borrower contemporaneously herewith that grant to the relevant lender a security interest in all of the Collateral on substantially the same terms as contained herein and in the Note (collectively and respectively, the "Other Notes" and "Other Security Agreements; all of which shall be referred to as the "Other Loan Documents").

2.02  <u>Rights of Lender as Secured Party</u>.  In addition to the rights and remedies granted to the Lender herein, the Lender shall have all of the rights and remedies of a secured party under the Applicable UCC with respect to all of the Collateral.

## ARTICLE III:  REPRESENTATIONS AND WARRANTIES

To induce the Lender to enter into the loan agreement, Borrower represents and warrants to the Lender as follows:

3.01  <u>Due Organization and Corporate Authorization</u>.  The Borrower presently is and shall hereafter remain in good standing as a Delaware limited liability company and is and shall hereafter remain duly qualified and in good



standing in each state in which, by reason of the nature or location of the Borrower's assets or operation of the Borrower's business, such qualification may be necessary unless the failure to so qualify would not have a materially adverse effect on the Collateral. The execution and delivery of this Agreement and of any other documents, instruments, and agreements executed in connection herewith constitute representations by the Borrower that by such execution and delivery the Borrower have received all such corporate authorization as may be necessary to permit such execution and delivery to, and that they do, bind the Borrower.

3.02 <u>No Conflicting Agreements</u>. There is no provision (that has not been waived) in the Certificate of Formation or Limited Liability Company Agreement of the Borrower, each as amended to date, or in any document by which the Borrower may be bound which prohibits the execution and delivery of this Agreement or of any other instrument, agreement, or paper which relates to the Borrower's relationship with the Lender or which prohibits or adversely affects the Borrower's carrying out of the terms thereof.

3.03 <u>Title to Collateral; Priority of Security Interest</u>. The Borrower has full, complete, indefeasible and marketable title to all of the Collateral absolutely free and clear of any claims, defects, liens, security interests, pledges, title retention agreements or other encumbrances, other than as may be established under the Other Loan Documents.

3.04 <u>Mailing Address; Chief Executive Office; Principal Place of Business</u>. The address for Borrower set forth in Section 7.07 of this Agreement is the Borrower's correct mailing address, the address of Borrower's chief executive office, and the address of Borrower's principal place of business.

## ARTICLE IV: COVENANTS

Until the Note is repaid in full, the Borrower covenants and agrees with the Lender as follows:

4.01 <u>Offices</u>. The Borrower shall maintain the Borrower's chief executive office and principal place of business at the address for the Borrower set forth in Section 7.07 of this Agreement and shall not change the location of the Borrower's chief executive office or principal place of business without providing thirty (30) days' prior written notice to the Lender.

4.02 <u>Books and Records</u>.

(a) The Borrower will keep and maintain, at its own cost and expense, satisfactory and complete books and records of and with respect to the Collateral;



(b)  The Lender shall at all reasonable times, at intervals to be determined by the Lender, before or after the occurrence of an Event of Default hereunder or under the Note, and without hindrance or delay, have full and free access to the above-referenced books and records and any other data relating to the Collateral and the right at all reasonable times to examine the same and to audit, inspect, verify, check and make extracts or photocopies therefrom; and

(c)  The Lender shall have the right, at the cost and expense of the Borrower, to audit the books and records of the Borrower concerning the Collateral and to require the Borrower to procure and deliver to the Lender, at the Borrower's own cost and expense, all reports and information pertaining to the Collateral and to such portion of the financial condition and business operations of the Borrower as the Lender may reasonably deem necessary.

4.03  <u>Equipment</u>.  The Borrower shall use the Equipment solely in the conduct of its business and in a careful and proper manner.  The Borrower shall keep all of the Equipment at the Borrower's principal place of business or at any other location that is in the possession and control of Borrower.

4.04  <u>Goods and Inventory</u>.  The Borrower shall store all of the Goods and all of the Inventory in a careful, secure and proper manner at their principal place of business or at any other location that is in the possession and control of Borrower.

4.05  <u>No Transfers of Collateral</u>.  Notwithstanding that Proceeds are included within the definition of "Collateral" (and therefore subject to the Lender's security interest hereby granted), the Borrower shall not transfer the Collateral or any portion thereof or any interest therein without the prior written consent of the Lender other than in the ordinary course of business.  For purposes of this Section 4.05, any sale, transfer, assignment, abandonment, hypothecation or other disposal of the "sex.com" domain name or any of Borrower's rights or interest in or to the Domain Name Purchase Agreement shall be construed as outside the ordinary course of business.  Upon prior notice to Lender, Borrower's licensing the use of the "sex.com" domain name to a third party (provided that such license does not in any way affect the priority of Lender's security interest in the Collateral or the ability of Lender to monitor the use of, or if necessary foreclose upon, its interest in the "sex.com" domain name) shall be construed as within Borrower's ordinary course of business.

4.06  <u>Liens, Claims and Attachments</u>.  The Borrower shall maintain the Collateral free from all claims, liens, attachments, encumbrances and legal processes (other than as may be established under the Other Loan Documents), and the Borrower shall notify the Lender immediately of notice of any lien, attachment, encumbrance, claim or legal process affecting the Collateral in whole or in part; provided, however, that Borrower shall not be in default of this



provision (a) with respect to liens, attachments and encumbrances, if the same are discharged within fifteen (15) days of their creation or a surety bond or the like is posted by the Company within such time period guaranteeing satisfaction of any underlying debt or obligation, and (b) with respect to all other claims and legal processes, if Borrower has a bona fide defense thereto, Borrower is able to discharge the claim or legal process within ninety (90) days of its filing, and Borrower grants Lender the right to take over the defense of any such claim or legal process on behalf of the Borrower while the same is pending.

4.07   Payment of Taxes, Assessments and Fees.   The Borrower shall pay all taxes, assessments and fees relating to the ownership or use of the Collateral or any portion thereof as and when the same shall be due and payable.

4.08   Maintenance, Repairs and Replacements.   The Borrower shall keep and maintain, or cause to be kept and maintained, all of the tangible Collateral in good condition and shall provide all maintenance and service and make all repairs and replacements necessary for such purpose.

4.09   Right to Inspect.   The Lender shall have the right to inspect all of the tangible Collateral and all maintenance and repair records relating thereto at all reasonable times.

4.10   Financing Statements; Recording Costs; Possession of Collateral.   The Borrower shall promptly execute and deliver to the Lender any UCC financing or continuation statement or other documents reasonably required, or procure any documents reasonably required (including UCC termination statements, as necessary), to carry out the transactions contemplated hereby and to maintain Lender's perfected security interest in all of the Collateral.   The Borrower shall pay all state and local stamp or documentary taxes, recordation and transfer taxes, clerks' fees and filing fees, and all other costs to record such documents and to perfect and maintain the Lender's perfected security interest in all of the Collateral.   A carbon, photographic, photocopy or other reproduction of a security agreement (including this Agreement) or financing statement shall be sufficient as a financing statement.

4.11   Supporting Materials.   The Borrower, upon the reasonable request of the Lender, shall provide the Lender from time to time with: (a) written statements or schedules identifying and describing the Collateral, and all additions, substitutions, and replacements thereof, in such detail as the Lender may reasonably require; and (b) such other schedules and information as the Lender reasonably may require.   The items to be provided under this Section 4.11 shall be in form reasonably satisfactory to the Lender and are to be executed and delivered to the Lender from time to time solely for the Lender's convenience in maintaining records of the Collateral.   The Borrower's failure to give any of such items to the Lender shall not affect, terminate, modify or



otherwise limit the Lender's security interest in any of the Collateral.

      4.12  <u>Notice to Lender; Joinder by Borrower</u>.  The Borrower will promptly notify the Lender if the Borrower learns of any unauthorized use by any Person with respect to any of the Collateral.  If requested by the Lender, the Borrower, at the Borrower's expense, shall join with the Lender in such action as the Lender in the Lender's discretion, may reasonably deem advisable for the protection of the perfected security interest of the Lender in and to all of the Collateral.

      4.13  <u>Sale and Leaseback</u>.  The Borrower shall not enter into any arrangement, directly or indirectly whereby the Borrower shall sell or transfer any property owned by them in order then or thereafter to lease such property or lease other property that the Borrower intends to use for substantially the same purpose as the property being sold or transferred.

      4.14  <u>Insurance</u>.  At its own reasonable expense, the Borrower shall obtain and maintain insurance covering the tangible Collateral.  All insurance for loss or damage shall provide that losses, if any, shall be payable jointly to Lender and the Borrower.

      4.15  <u>Application of Insurance Proceeds</u>.  The proceeds of the insurance maintained by the Borrower and payable as a result of loss of or damage to any of the tangible Collateral may be applied, at the Borrower's option: (a) toward the replacement, restoration or repair of the tangible Collateral which may be lost, stolen, destroyed or damaged; or (b) toward payment of any of the Obligations.

## ARTICLE V:  INDEMNIFICATION

      5.01  <u>Indemnification</u>.  The Borrower hereby agrees to indemnify, defend and hold the Lender harmless from and against any claim, suit, loss, liability, damage or expense (including attorneys' fees and expenses) resulting from or arising out of this Agreement, except for any such claims resulting from the gross negligence or willful misconduct of Lender (each an "***Indemnified Claim***").  Any actual or threatened Indemnified Claim may be defended, compromised, settled, or pursued by the Lender with counsel of the Lender's selection, but at the reasonable expense of the Borrower.  The obligations contained in this Section 5.01 shall terminate only upon the expiration of the applicable statute of limitations relating to third party claims indemnified and shall survive payment of the Obligations.

## ARTICLE VI:  DEFAULT AND REMEDIES

      Upon the occurrence of (a) the failure of the Borrower to perform any term, covenant or agreement contained herein (other than as set forth in



subsection b hereof), or in the Note within ten (10) calendar days after written notice thereof by Lender, (b) failure to timely pay any amounts due under the Note (including repayment of the Note in full upon the Maturity Date) within five (5) days from the date of written demand by Lender (provided, however, that Borrower shall be entitled only to one such notice of demand during the term of the Note, all other failures entitling Lender to exercise any and all available remedies without notice of demand), (c) any representation or warranty of the Borrower under this Agreement shall not be correct in any material respect upon the date when made or deemed to have been made or repeated or (d) the occurrence of any Event of Default under and as defined in the Note or any of the Other Loan Documents, an event of default shall have occurred hereunder and the Lender shall be entitled to exercise, in addition to those available at law or in equity, any or all of the following rights and remedies:

6.01   Acceleration.   The Lender may declare all Obligations immediately due and payable (provided upon the occurrence of an event of default on account of a petition in bankruptcy filed by the Borrower all Obligations shall become immediately due and payable without any action by Lender).

6.02   Omitted Intentionally.

6.03   Assemble Collateral.   The Lender may require the Borrower (at the Borrower's sole expense) to assemble and to forward promptly any or all of the Goods, Equipment, Chattel Paper, and Inventory to the Lender at such location(s) as shall be reasonably required by the Lender.

6.04   Take Possession.   Without breaching the peace, the Lender may enter upon the premises where any Goods, Equipment, Chattel Paper or Inventory is located and take immediate possession thereof, by summary proceedings or otherwise, and the Lender may remove the Goods, Equipment, Chattel Paper or Inventory.

6.05   Appointment of Receiver.   The Lender shall be entitled to appointment of a receiver to take possession of and to manage all or any portion of the Collateral.  The Lender may obtain such appointment without notice to, or demand of the Borrower, on an *ex parte* basis before any court of competent jurisdiction, and without regard to the adequacy of the Collateral as security for the Obligations.

6.06   Sale of Collateral.   The Lender may sell, assign, and deliver or otherwise dispose of or cause to be sold or otherwise disposed of, the whole or any part of the Collateral, at one (1) or more commercially reasonable public or private sales, without demand or advertisement of the time or place of sale or of any adjournment thereof, each of which is hereby expressly waived by the Borrower.  The sale or other disposition may be made for such price and upon such terms and conditions as the Lender may deem best in its exercise of its



commercially reasonable discretion.  The Lender may apply the proceeds from such sale or sales or such other disposition or dispositions:  first, to the settlement of all liens or claims on the Collateral with a lien priority greater than that of the Lender; second, to the payment of all expenses connected with the assembly, preservation, preparation, and sale or other disposition of the Collateral, including any trustees' or auctioneers' fees, commissions or other expenses; third, to the payment of all amounts due under the Note and all other monetary Obligations; and fourth, returning the excess, if any, to the Borrower. The Borrower hereby expressly waives all rights of appraisal, whether before or after the sale or other disposition, and any right of redemption after the sale or other disposition.  The Borrower shall have the right to redeem any of the Collateral up to the time of the sale or other disposition by paying to the Lender the aggregate indebtedness under the Note and this Agreement, together with all costs incurred by the Lender in collecting such amounts or in enforcing its rights and remedies hereunder, and any other monetary Obligations then due and owing.

　　　　6.07　Attorney-in-Fact.  The Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact, with power of substitution, to, in the name of Borrower or in the name of the Lender or otherwise, for the use and benefit of the Lender, but at the cost and expense of the Borrower, and with three (3) days written notice to the Borrower, except in the case of a default as defined above in which case no notice shall be required, do all acts and things which the Lender may deem necessary or desirable to effectuate their rights under this Security Agreement, including, without limitation, to file financing statements and otherwise to perfect any security interest granted hereby, to correspond and negotiate directly with insurance carriers, and to do any of the following:

　　　　　　　　(a) notify the debtors or other party(ies) obligated under any of the Accounts, Chattel Paper or General Intangibles to make payments thereon directly to the Lender, and to take control of the cash and non-cash proceeds of any Collateral;

　　　　　　　　(b) compromise, extend, or renew any of the Collateral or deal with the same as it may deem advisable;

　　　　　　　　(c) release, make exchanges, substitutions, or surrender of all or any part of the Collateral;

　　　　　　　　(d) remove from Borrower's place of business copies (but not originals) of all books, records, ledger sheets, correspondence, invoices and documents, relating to or evidencing any of the Collateral or without cost or expense to the Lender, make such use of the Borrower's place(s) of business as may be reasonably necessary to administer, control and collect the Collateral;

　　　　　　　　(e) repair, alter or supply goods, if any, necessary to fulfill in



whole or in part the purchase order of any Account debtor;

(f) demand, collect, receipt for and give renewals, extensions, discharges and releases of any of the Collateral;

(g) institute and prosecute legal and equitable proceedings to enforce collection of, or realize upon, any of the Collateral;

(h) settle, renew, extend, compromise, compound, exchange or adjust claims with respect to any of the Collateral or any legal proceedings brought with respect thereto;

(i) endorse the name of the Borrower upon any items of payment relating to the Collateral or upon any proof of claim in bankruptcy against an Account debtor;

(j) institute and prosecute legal and equitable proceedings to reclaim any of the goods sold to any debtor obligated on an Account, Chattel Paper, or General Intangible at a time when such debtor was insolvent;

(k) execute and deliver on behalf of the Borrower one or more instruments of assignment of the Intellectual Property (or application, letters patent or recording relating thereto), in form suitable for filing, recording or registration; and

(l) receive, copies of all mail addressed to the Borrower and notify Postal Service authorities to change the address for mail addressed to the Borrower to an address designated by the Lender.

6.08 Right to Make Payments or Otherwise Cure. Whether or not such failure shall constitute an Event of Default under the terms of the Note, the Lender may, in its sole discretion, pay any amount or do any act which the Borrower fail to do or pay as required by the terms of this Agreement. The Lender may also take any actions, make any payments, or incur any reasonable expenses (including, without limitation, the payment of filing fees, court costs, travel expenses and attorneys' fees) as may be necessary or appropriate to preserve, defend, protect, maintain, record or enforce the Obligations, the Collateral, or the assignment granted hereunder.

## ARTICLE VII: ADDITIONAL PROVISIONS

7.01 Deficiency. The Borrower shall be liable for all Obligations remaining after crediting to the Borrower any net proceeds received by the Lender following exercise of any of the Lender's rights and remedies hereunder.

7.02 No Duty to Act. Nothing contained in this Agreement shall be



construed as requiring the Lender to take any particular enforcement or remedial action or combination of enforcement or remedial actions at any time.

7.03   Remedies Not Limited; Partial Exercise.   The Lender's rights and remedies, whether provided under this Agreement, at law, in equity, or otherwise shall be cumulative and none is exclusive.   Such rights and remedies may be enforced alternatively, successively or concurrently, and the Borrower hereby agrees that the Lender may enforce its rights separately hereunder with respect to individual items or classes of Collateral without waiving or prejudicing in any respect the Lender's rights hereunder with respect to any other items or classes of Collateral.   The Lender may exercise any other right or remedy which may be available to it under this Agreement or Applicable Law or may proceed by appropriate court action to enforce the terms hereof or to recover damages for the breach hereof or to rescind this Agreement in whole or in part.

7.04   Costs of Enforcement.   The Borrower shall be liable for all costs incurred by the Lender in collecting any sums owed to the Lender under the Note or in otherwise enforcing any of the Obligations (whether or not suit is brought), including, but not limited to, all reasonable attorneys' fees (incurred at regular hourly rates) and expenses, court costs, and costs of consultants, appraisers and other advisors retained by the Lender.

7.05   No Waivers by Lender.   No failure of the Lender to exercise, or delay by the Lender in the exercise of, any of the Lender's rights and remedies granted herein following the occurrence of an event of default shall constitute a waiver of any of the Lender's rights with respect to such event of default or any subsequent event of default (whether or not similar).   Any failure or delay by the Lender to require strict performance by Borrower of any of the provisions, warranties, terms and conditions contained herein or in any other agreement, document or instrument, shall not affect the Lender's right to demand strict compliance and performance therewith.

7.06   Lender's Actions.   The Lender may take or release the Collateral or other security, may release any party primarily or secondarily liable for any indebtedness to the Lender, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security therefor held by it to the satisfaction of such indebtedness, all without prejudice to any of its rights or the Borrower's obligations hereunder or under the Note.

7.07   Notices.   All notices, claims, certificates, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, if delivered by fax transmission with printed confirmation receipt, if sent by recognized overnight courier service (e.g. Federal Express), or if sent by U.S. registered or certified mail, postage prepaid, return receipt requested, as follows:



If to the Borrower at 123 Newberry Street, Second Floor, Boston, Massachusetts 02116, Attention: Mr. Andrew Miller.

If to the Lender at DOM Partners LLC, C/o Robert E. Seaman III, One Blue Hill Plaza, 4th Floor, P.O. Box 1555, Pearl River, New York 10965, or at such other address or addresses as may have been furnished to the Borrower in writing by the Lender.

The Borrower agrees that ten (10) days prior notice of the time and place of any public sale of all or any portion of the Collateral, or of the time after which a private sale of all or any portion of the Collateral will be made, is commercially reasonable notice.

7.08   Further Assurances.   The Borrower will promptly and duly execute and deliver to the Lender such further documents and assurances and take such further actions as the Lender may from time to time reasonably request in order to carry out the intent and purpose of this Agreement and to establish and protect the rights and remedies created or intended to be created in favor of the Lender hereunder.

7.09   Successors and Assigns.   This Agreement shall inure to the benefit of the Lender and its successors and assigns, and shall be binding upon the successors and permitted assigns of the Borrower.

7.10   Assignment.   The Borrower may not assign any of their rights or delegate any of their duties under this Agreement without prior written consent of the Lender.   The Lender may assign all of its right, title and interest in and to this Agreement and the Collateral to any transferee of the Note or interest in the Note.

7.11   Governing Law.   This Agreement and the rights and obligations of the parties hereunder shall, in all respects, be governed by, and construed in accordance with, the laws of the State of New Jersey, excluding its conflict of laws rules, including all matters of construction, validity and performance, regardless of the location of the Collateral.

7.12   No Oral Modifications or Waivers.   This Agreement shall not be modified or any of its provisions waived except by a writing signed by the Borrower and the Lender (or any assignee or transferee of Lender).

7.13   Termination of Agreement; Release of Security Interest.   Upon the repayment in full of all amounts owing under the Note or the conversion of the Note pursuant to their terms, this Agreement shall terminate without further action by the Lender. Notwithstanding the foregoing, the Lender will execute and deliver to the Borrower any releases, termination statements or similar instruments of reconveyance promptly upon the repayment in full of all amounts



owing under the Note.

7.14  Severability.   In case any provision (or any part of any provision) contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Agreement, but this Agreement shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) were modified to the minimum extent necessary to make it legal and enforceable and to achieve the same objective.  If no such modification is possible, then this Agreement shall be construed as if such provision had never been contained herein but only to the extent such provision (or part thereof) is invalid, illegal, or unenforceable.

7.15 Captions.  The captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

IN  WITNESS  WHEREOF,  and  intending  to  be  legally  bound hereby, the Borrower executes this Agreement under seal as of the day and year first above written.

**THE BORROWER:**

WITNESS/ATTEST:                    ESCOM, LLC

Name: _____        By: _____(SEAL)

Name: _____

Title: _____

