1  SUSAN I. MONTGOMERY (State Bar No. 120667)
   1925 Century Park East, Suite 2000
2  Los Angeles, CA 90067
   Telephone:  (310) 556-8900
3  Fax:  (310) 556-8905

4  MEISTER SEELIG & FEIN LLP

5  Lawrence F. Morrison, Esq.
   140 East 45th Street, 19th Floor
6  New York, NY  10017
   Telephone:  (212) 655-3500
7

8  Counsel for WASHINGTON
   TECHNOLOGY ASSOCIATES, LLC;
9  iENTERTAINMENT, INC; and
   ACCOUNTINGMATTERS.COM, LLC
10

11              UNITED STATES BANKRUPTCY COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13              SAN FERNANDO VALLEY DIVISION

14

15  In re                          )  INVOLUNTARY CHAPTER 11 PETITION
                                    )
16  ESCOM, LLC,                     )  CASE NO.:  1:10-bk-13001-GM
                                    )
17                                  )
              Debtor.               )  **MEMORANDUM OF POINTS AND**
18                                  )  **AUTHORITIES IN OPPOSITION TO**
                                    )  **MOTION OF DOM PARTNERS LLC FOR**
19                                  )  **ENTRY OF AN ORDER PURSUANT TO**
                                    )  **11 U.S.C. §§105(a), 305(a), AND 1112(b)**
20                                  )  **DISMISSING ESCOM'S INVOLUNTARY**
                                    )  **BANKRUPTCY PETITION FOR CAUSE;**
21                                  )  **DECLARATION OF MICHAEL MANN;**
                                    )  **EXHIBITS**
22                                  )
                                    )  HEARING
23                                  )
                                    )  Date:  April 20, 2010
24                                  )
                                    )  Time: 10:00 a.m.
25                                  )  Place: Courtroom 303
                                    )
26                                  )
27  _____ )

28

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE AND TO DOM PARTNERS, LLC, AND ITS ATTORNEY OF RECORD:**

Washington Technology Associates, LLC; iEntertainment, Inc.; and AccountingMatters.com, LLC, (the "Petitioning Creditors"), in the above-captioned case submit this opposition to the Motion of DOM Partners, LLC ("DOM") for Entry of an Order Pursuant to 11 U.S.C. §§105(a), 305(a), and 1112(b) ("Motion") dismissing Escom's ("Escom" or "Debtor") bankruptcy. The Motion for dismissal under 11 U.S.C. §§ 105(a), 305(a) and 1112(b) should be denied because (1) under 11 U.S.C. § 303(j), DOM lacks standing to file a Motion to Dismiss and (2) the involuntary petition was filed in good faith. No competent evidence of bad faith has been presented.

Debtor has not yet had an opportunity to either answer or contest the involuntary petition. The Debtor should be given the opportunity to evaluate the filing and determine whether it believes that the filing is in the best interest of the Debtor and its creditors.

## I.    INTRODUCTION

By its motion for dismissal pursuant to 11 U.S.C. Sections 105(a), 305(a) and 1112(b)(1), DOM essentially argues, without foundation or support, that the involuntary petition was filed in bad faith. DOM disregards the fact that it has no standing to file a motion to dismiss the bankruptcy and jumps ahead arguing that an auction of the Debtor's sole asset in New York State by auctioneer David R. Maltz & Co., Inc., ("Maltz"), is the "best way to secure a sale price for the domain name in sufficient amount to repay the secured creditors." DOM further claims, again without evidentiary support, that the involuntary filing will result in a diminution of the value of the domain name "sex.com" essentially the Debtor's only asset.

Petitioning Creditors filed the involuntary bankruptcy to allow the Debtor's assets to be sold free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363 to achieve the highest and best value for the benefit of the Debtor and its creditors.

## II.    STATEMENT OF FACTS: PROCEDURAL HISTORY

On March 17, 2010, the three Petitioning Creditors filed an involuntary bankruptcy

petition in the United States Bankruptcy Court, Central District of California.  Debtor has until April 12, 2010 to file an answer or otherwise contest the involuntary petition.  Not waiting for the Debtor to determine how to proceed, on March 26, 2010, DOM filed its motion to dismiss and attached a Memorandum of Points and Authorities and Supplemental declaration of its counsel Robert E. Seaman III.  Evidentiary objections to Mr. Seaman's declaration will be filed separately.

On January 12, 2006, Washington Technology Associates, LLC ("WTA") made a secured loan to Escom in the amount of $5,000,000.00 (the "WTA Loan"). WTA is a first priority secured lender which has been acknowledged by DOM to share an equal priority security interest in all of the Debtor's assets.  DOM further acknowledges that petitioners iEntertainment, Inc. and AccountingMatters.com, LLC are also creditors of the debtor, iEntertainment, Inc. being a secured creditor.

On or about February 17, 2010, DOM caused a UCC foreclosure notice to be sent to the Debtor and creditors by Maltz scheduling a UCC auction sale to occur on March 18, 2010 at the offices of Windels Marx. A copy of the UCC foreclosure notice is attached hereto as Exhibit "A."  In the opinion of the Petitioning Creditors, Maltz does not have expertise in the sale of super premium domain names such as sex.com (widely reported to be one of the most valuable domain names in the world) and an auction by Maltz will not achieve the highest and best value for the benefit of the Debtor and its creditors. The involuntary petition was filed on March 17, 2010 to stay the auction and allow the sale to be quickly and efficiently conducted under the supervision of the Bankruptcy Court.

## III.    DISCUSSION

### A.    DOM Lacks Standing to Dismiss the Involuntary Petition

DOM has no standing to file a motion to dismiss the involuntary proceeding. Title 11, § 303(j) states the basis upon which an involuntary case may be dismissed:

> § 303 (j)   Only after notice to all creditors and a hearing may
> the court dismiss a petition filed under this section
> (1) on the motion of a petitioner;

1        (2) on consent of all petitioners and the debtor; or

2        (3) for want of prosecution.

3        DOM is not a petitioner and the Petitioning Creditors will not consent to dismiss the

4 proceeding. Therefore, DOM lacks standing to contest the involuntary petition. *See* 11

5 U.S.C. §303(j) *Id.* § 303(d); Fed.R. of Bankr.P. 1011: *Carlson Plywood Co. v. Vytex*

6 *Plastics Corp.,* 519 F.2d 556, 557-58 (7th Circuit 1975); *In re Taylor & Associates.,* 191

7 B.R. 374, 378 (Bankr.E.D.Tenn.1996). DOM has not established cause to dismiss.

8        **B.**    <u>**There is No Cause to Dismiss this Proceeding**</u>

9        DOM seeks to dismiss the involuntary chapter 11 proceeding on the ground that  it

10 was brought in bad faith. Even assuming arguendo that DOM did have standing to seek

11 such a dismissal (which it does not), there is no bad faith.  As set forth in the attached

12 Declaration of Michael Mann, the petition was filed in good faith; the Petitioning Creditors

13 do not believe that Maltz, the auctioneer selected by DOM, has the specific knowledge of

14 the dot-com industry and domain names to sell the domain name at auction and achieve the

15 highest and best value.  A copy of the website of the Maltz auction firm is attached hereto as

16 Exhibit "B".  In the opinion of Petitioning Creditors, the appropriate professional to sell the

17 Debtor's domain name would be a company that (i) specializes in the buying, selling,

18 brokerage and auction of domain names, (ii) has substantial experience in dealing with

19 super premium names, (iii) has substantial contacts throughout the world to reach the full

20 community of potentially interested buyers, including the adult entertainment industry, and

21 (iv) experience in marketing super premium domain sales and auctions.  Mann decl., ¶ 3,

22 Line 5. An example of one such company is Sedo.com GmbH (together with its US

23 subsidiary Sedo.com, LLC, "Sedo").  Petitioners believe Sedo would be an appropriate

24 candidate to market and sell the domain name.  Mann decl., ¶2, Line 10. A copy of some of

25 the pages from Sedo's website is attached hereto as Exhibit "C". In fact, DOM previously

26 agreed with WTA (after the parties jointly interviewed multiple candidates) that Sedo would

27 be the best candidate to sell the domain. Mann decl., ¶3, Line 12.  The Chief Executive

28 Officer of Sedo even wrote a letter to DOM's attorneys prior to the filing of the Petition

expressing his concern that the UCC auction process would not generate the highest and best value for the company and its creditors. A copy of Sedo's letter is attached as Exhibit "D".

The Petitioning Creditors seek a sale process that will achieve the highest return for creditors. The Court should await a determination by the Debtor as to whether it will consent to an order for relief and allow the Debtor to determine how its assets should be sold. See 11 U.S.C. §363(b)(1).

DOM contends that the involuntary proceeding should be dismissed for cause under 11 U.S.C. § 1112(b)(1). Cause includes:

A. substantial and continuing loss or diminution of the estate in the absence of a reasonable likelihood of rehabilitation;

B. gross mismanagement of the estate;

C. failure to maintain appropriate insurance that poses a risk to the estate or to the public;

D. unauthorized use of cash collateral substantially harmful to 1 or more creditors;

E. failure to comply with an order of the court;

F. unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

G. failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

H. failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

I. failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

J. failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

K.  failure to pay any fees or charges required under chapter 123 of title 28;

L.  revocation of an order of confirmation under section 1144;

M.  inability to effectuate substantial consummation of a confirmed plan;

N.  material default by the debtor with respect to a confirmed plan;

O.  termination of a confirmed plan by reason of the occurrence of a condition
    specified in the plan; and

P.  failure of the debtor to pay any domestic support obligation that first becomes
    payable after the date of the filing of the petition.

DOM has not established that Debtor has engaged in any conduct sufficient to justify the dismissal of the case pursuant to § 1112(b)(1).  The petition was filed to preserve value in the Debtor's asset, which would otherwise be lost.

Bankruptcy courts have used a two-part inquiry to determine whether or not a chapter 11 Petition was filed in good faith. "Our cases have accordingly focused on two inquiries that are particularly relevant to the question of good faith:" (1) Whether the petition serves a valid bankruptcy purpose, e.g., by preserving a growing concern and maximizing the value of the debtor's estate; and (2) whether the petition was filed merely to obtain tactical litigation advantage. *See In re Integrated Telecom Express, Inc.* (3rd Circuit 2004) 384 F.2d 108 citing to Sgl. Carbon, 200 F.3d at 165. It is respectfully submitted that this involuntary chapter 11 was filed for a valid bankruptcy purpose which is to sell the Debtor's assets pursuant to § 363 of the Bankruptcy Code subject to higher and better offers. Additionally, this petition was not filed to obtain a tactical litigation advantage. There was no pending litigation at the time of the bankruptcy filing and the moving party in its papers has acknowledged that the Petitioning Creditors have valid claims against the estate.

Petitioning Creditors seek to sell the Debtor's assets pursuant to Section 363 of the bankruptcy code.

Section 363(b)(1) reads in pertinent part: "The trustee, after notice of a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate, except

1  that if the debtor in connection with offering a product or service discloses to an individual

2  a policy prohibiting the transfer of personally identifiable information about individuals to

3  persons that are not affiliated with the debtor and if such policy is in effect on the date of the

4  commencement of the case, then the trustee may not sell or lease personally identifiable

5  information to any person…"

6       Pursuant to section F, "the trustee may sell property under sub-section (b) or (c) of

7  this section free and clear of any interest in such property of an entity other than the estate,

8  only if - applicable nonbankruptcy law permits sale of property free and clear of such

9  interest; such entity consents; such interest is a lien and the price at which such property is

10  to be sold is greater than the aggregate value of all lines on such property; such interest is in

11  bona fide dispute; or such entity could be compelled, in a legal or equitable proceeding, to

12  accept a money satisfaction of such interest."

13       Professionals with the proper background in domain names should be employed by

14  the Debtor. The estate should be permitted to conduct a sale of substantially all the debtor's

15  assets in chapter 11, as it is the most efficient means and will create the highest value to the

16  estate. Therefore, the chapter 11 proceeding should not be dismissed. Instead, it is

17  respectfully submitted the court should proceed on a fast track to permit the Debtor to retain

18  a proper expert to market and sell the Debtor's assets, the most valuable of which is the

19  sex.com domain name, in order to create the highest and best value to the bankruptcy estate.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## IV.    CONCLUSION

2          For the foregoing reasons, DOM's Motion should be denied.

3    Dated:  April 6, 2010

4                                        LAW OFFICE OF SUSAN I. MONTGOMERY
                                         Susan I. Montgomery
5

6                                        MEISTER SEELIG & FEIN LLP
                                         Lawrence F. Morrison
7

8                                        By ___/s/ Susan I. Montgomery_____
                                                 Susan I. Montgomery
9                                        Attorneys for Petitioning Creditors
                                         WASHINGTON TECHNOLOGY
10                                       ASSOCIATES, LLC; iENTERTAINMENT,
                                         INC.; and
11                                       ACCOUNTINGMATTERS.COM, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHAEL MANN

I, Michael Mann, declare as follows:

1.     I am the managing member of Petitioning Creditors Washington Technology Associates LLC ("WTA") and Accounting Matters LLC ("AM") and I am also the President of iEntertainment, Inc. ("IE"). I caused WTA, AM, and IE to jointly file an involuntary bankruptcy petition against Escom, LLC ("Escom"). Based on my positions with WTA, AM and IE, and on my filing of the involuntary petition against Escom, I have personal knowledge of the facts set forth in this declaration and would competently testify thereto under oath if requested to do so. I submit this declaration in support of the opposition to the Motion of Dom Partners, LLC ("DOM") to dismiss the Escom bankruptcy petition.

2.     Escom was formed in January 2006 by Domain Name Acquisition Group, LLC ("DNAG") and WTA, with a commitment from WTA to loan Escom $5 Million. I was directly involved in the initial formation and financing of Escom. Escom was originally formed to commercialize the sex.com domain name. The members of Escom include DNAG, WTA, DOM, Nuthin' But Net, LLC and I-95 Investment Group, LLC.

3.     As part of the original operating agreement for Escom between WTA and DNAG, and as a condition for WTA to provide financing, Escom entered into a linking agreement with IE that gave IE the exclusive right to promote its video chat service on the sex.com website with Escom receiving in exchange 10% of the revenue IE earned through referrals that came from the sex.com site (the "Linking Agreement").

4.     As part of the capitalization of Escom, DOM was brought into the company to provide additional capital. Escom was initially capitalized as follows:

- $5 Million long term note from WTA (the "WTA Note")
- $3 Million long term note from DOM (the "DOM Note")
- $1.5 Million bridge note from DOM (the "Bridge Note")

1         •    $1 Million in Class B equity from WTA (the "WTA Equity Investment")

2         •    $1 Million in Class B equity from DOM (the "DOM Equity

3            Investment")

4   5.    On or about May 2006, as DOM's Bridge Note was coming due, Nuthin but

5      Net, LLC ("NBN') loaned Escom the funds needed to pay off the DOM Bridge

6      Note, which was in fact repaid in full. NBN's note was unsecured with a right to

7      convert to equity at a predetermined rate (the "NBN Note"). The terms of the

8      NBN Note provide that NBN's sole remedy upon default was to convert its debt

9      to equity. NBN received a 1.27% Class A interest in Escom in exchange for

10     providing the debt financing (the "NBN Equity"). (The only difference between

11     Class A and B equity in Escom is that holders of Class B equity are entitled to

12     125% of their invested capital before holders of Class A equity receive any

13     distributions, other than those to cover the members' tax liabilities).

14   6.    On or about August 2007, IE waived its rights under the Linking Agreement in

15      exchange for $2.5 Million which was paid in the form of a note secured by all

16      assets of Escom, but junior to the WTA Note and the DOM Note (the "IE

17      Note"). A security agreement was entered into by Escom as well.

18   7.    In April 2008, I-95 Investment Group, LLC ("I-95") invested $400,000 in

19      exchange for Class B equity.

20   8.    In August 2008, Escom defaulted on the IE Note, having failed to pay the

21      annual interest due thereunder. The IE Note was due in full in September 2008.

22      Escom also defaulted on the WTA Note and the DOM Note in January 2009 by

23      failing to repay those notes in full.

24   9.    In the several months leading up to default, I and/or my representatives on

25      behalf of WTA, Del Anthony (the CEO of Escom), representatives of DNAG

26      and other members, attempted to find investors to invest debt or equity in

27      Escom so that Escom could repay the DOM Note. WTA and IE expressed a

28      willingness to restructure and/or convert their respective debts so that Escom

1    could continue to operate. DOM was not willing to restructure or convert its

2    debt.

3    10.    I am informed and believe that, on January 13, 2009, DOM sent a Notice of

4    Default to Escom.

5    11.    On January 13, 2009, WTA and IE sent a Notice of Default to Escom.

6    12.    Between January 2009 and February 2010, I and/or my representatives

7    repeatedly attempted to work with various representatives of DOM on an

8    amicable basis to come to agreement on a process for selling the "Sex.com"

9    name and to distribute the proceeds therefrom to the creditors and equity

10    holders of Escom.

11    13.    Notwithstanding our continuous good faith efforts to arrive at a mutually

12    acceptable sale and distribution plan, on or about February 27, 2010, I received

13    from DOM's counsel a Notice of Foreclosure Sale under the UCC, purporting to

14    sell Escom's domain name on March 18, 2010, a true and correct copy of which

15    is attached hereto as Exhibit A.

16    14.    From January 2009 through the date hereof, I and my representatives have

17    repeatedly made efforts to convince Robert Seaman, DOM's counsel, and other

18    representatives of DOM, to utilize a company that specializes in the sale of high

19    value domain names to sell "sex.com" in order to achieve the highest and best

20    value for all creditors.  Instead, DOM selected UCC auctioneer David R. Maltz

21    & Co, Inc. ("Maltz") to conduct the auction.

22    15.    I reviewed the qualifications of Maltz as set forth in its website, a true and

23    correct copy of certain pages from which is attached hereto as Exhibit B.  Based

24    on my review of Maltz' background and qualifications, it was my opinion that

25    Maltz did not have sufficient expertise in the sale of super premium domain

26    names such as "sex.com," which is widely reported to be one of the most

27    valuable domain names in the world.  As a result, it was my opinion that an

28    auction by Maltz would not achieve the highest and best value for the benefit of

Escom and its creditors.  I made by concerns known to DOM.  I had previously

1  investigated companies qualified to conduct domain name auctions, including

2  Sedo.com LLC, a company known as a global leader in the domain industry.

3  DOM had previously agreed with WTA that Sedo would be the best candidate

4  to sell the domain name. Exhibit C is a true and correct copy of the webpage of

5  Sedo that I obtained from the internet which describes Sedo's qualifications.

6  Sedo even sent a letter to DOM's counsel expressing concern regarding the use

7  of Maltz to sell the domain name. I received a copy of Sedo's March 12, 2010

8  letter. Exhibit D is a true and correct copy of that letter. DOM nevertheless

9  ignored our concerns and proceeded to sale

10  16.  .  On March 17, 2010, the day before the scheduled auction, I filed the involuntary

11  petition to stop the foreclosure sale and allow for a sale to take place through the

12  bankruptcy process and pursuant to 11 U.S.C. § 363. In my opinion such a sale

13  would render a much higher price and allow for payment of all or nearly all of

14  Escom's creditors.

15

16  I have personal knowledge of the facts stated herein, except where stated upon

17  information and belief, and where so stated, I am informed and believe that such facts are true

18  and correct. If called and sworn as a witness, I could and would competently testify to the

19  above.

20

21  Executed this 6th day of April 2010, I declare under penalty of perjury under the laws of

22  the United States of America that the foregoing is true and correct.

23

24

25

26  Michael Mann

27

28

| In re: ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-13001-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1925 Century Park East, Suite 2000
Los Angeles, California  90067

A true and correct copy of the foregoing document described **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF DOM PARTNERS LLC FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§105(a), 305(a), AND 1112(b) DISMISSING ESCOM'S INVOLUNTARY BANKRUPTCY PETITION FOR CAUSE; DECLARATION OF MICHAEL MANN; EXHIBITS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 6, 2010  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- John W Kim    jkim@nossaman.com
- Susan I Montgomery    susan@simontgomerylaw.com
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On April 6, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Geraldine Mund
United States Bankruptcy Court
 - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

Daniel G Gurfen
230 Park Ave Ste 1130
New York, NY 10169

Mark Chassman
120 Broadway Suite 300
Santa Monica, CA 90401

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re: ESCOM, LLC | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER  1:10-bk-13001-GM |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 6, 2010 | RITA WILLIAMS | /S/  RITA WILLIAMS |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**