Jeffrey W. Dulberg (CA Bar No. 181200)
Gabrielle Albert Rohwer (CA Bar No. 190895)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

Proposed Attorneys for Alleged Debtor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>**ESCOM LLC,**<br><br>　　　　　　Alleged Debtor. | Case No.: 1:10-bk-13001-GM<br><br>Chapter 11<br><br>**JOINT RESPONSE TO MOTION OF DOM PARTNERS, LLC FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 305(a) AND 1112(b) DISMISSING ESCOM'S INVOLUNTARY BANKRUPTCY PETITION FOR CAUSE AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**<br><br>**Hearing**<br>Date: April 20, 2010<br>Time: 10:00 a.m.<br>Place: 21041 Burbank Blvd<br>　　　　Woodland Hills, CA  91367<br>Judge: Hon. Geraldine Mund (Crtm. 303) |

ESCOM LLC, the alleged debtor herein (the "Debtor"), through its undersigned counsel, hereby responds to the Motion of DOM Partners, LLC for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 305(a) and 1112(b) Dismissing ESCOM's Involuntary Bankruptcy Petition for Cause (the

23880-001\DOCS_LA:217922.4

"Dismissal Motion") and the Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) (the "RFS Motion" and, jointly with the Dismissal Motion, the "Motions") as follows:[1]

## I. PRELIMINARY STATEMENT

ESCOM is a company being strangled by its debt and the inability of its principals to agree on a course of action. In order to maximize the value of its estate, it must sell its single asset, the domain name sex.com.[2] However, due to in-fighting between DOM and WTA, ESCOM has not been able to move forward on a reasonable sale process. The filing of the bankruptcy petition was a welcome turn of events that opens the possibility for the Debtor to properly market and sell its domain name in order to distribute the proceeds to its creditors in accordance with the priorities of the Bankruptcy Code. Consequently, the Debtor consents to the bankruptcy filing and seeks a judicial determination of the status and priority of the competing claims against its assets.

## II. BACKGROUND

ESCOM, LLC, the alleged debtor herein (the "Debtor"), was formed in 2006 to operate a website with the domain name www.sex.com. The Debtor is run by three managers pursuant to the terms of the Forth Amended and Restated Limited Liability Company Agreement of ESCOM, LLC (the "Operating Agreement"), a copy of which is attached as Exhibit 6 to RFS Motion. Those managers are DOM Partners LLC ("DOM") (the Movant), Washington Technology Associates, LLC ("WTA") (one of the petitioning creditors), and Domain Name Acquisition Group ("DNAG" and, collectively with DOM and WTA, the "Managers"). According to the terms of the Operating Agreement, the majority of actions taken outside the ordinary course of business must be approved by a unanimous vote of the Managers. The Debtor's business operations are run by the officers.

The Debtor's Chief Executive Officer is Del Anthony Polikretis ("Anthony"). Anthony runs the Debtor's day-to-day operations, including management of the website and all business functions. See Declaration of Del Anthony filed concurrently herewith (the "Anthony Declaration").

---

[1] The Debtor's response to the Motions was not timely filed because the Debtor was prohibited from filing a response by the terms of its Operating Agreement (as defined below) until receiving authority to do so. This authority was not received until the date of this filing.

[2] Despite the rather titillating name, the www.sex.com website has been kept in a "R" format in order to maximize its marketability.

1    At its inception, the Debtor was funded by allegedly secured loans from DOM and WTA.
2    The Debtor borrowed $3,000,000 from DOM allegedly secured by a blanket lien on the Debtor's
3    assets. The Debtor borrowed $5,000,000 from WTA, also allegedly secured by a blanket lien on the
4    Debtor's assets and shares priority *pari passu* with DOM. Finally, the Debtor has a $2,500,000 note
5    owed iEntertainment, another one of the petitioning creditors, which obligation is allegedly secured
6    by a blanket lien subordinate to those of DOM and WTA. The obligations to DOM and WTA have
7    been in default since January 2009 but specific action to enforce those notes was not taken until
8    January 2010.

9    Section 5.03 of the Operating Agreement requires the three Managers to give unanimous
10   approval prior to any significant action being taken. This provision in the Operating Agreement has
11   lead to disastrous results. The Debtor began discussions on selling the domain but disputes between
12   DOM and WTA prevented the Debtor from proceeding with a reasonable process that would end up
13   benefiting all constituencies. See Anthony Declaration.

14   The result was that the Debtor's sale efforts were, and continue to be, paralyzed. It cannot
15   sell its assets or raise new capital even though it does not have the cash to pay its obligations as they
16   come due. To make matters worse, the Debtor could not seek bankruptcy protection because that too
17   require a unanimous Manager vote.

18   DOM had scheduled an "As Is" auction of the domain name with no representations or
19   warranties as to clear title to foreclosure on its security interest. The auction was stayed by the
20   bankruptcy filing. That auction, however, was not commercially reasonable because it failed to
21   address the competing secured claims. See Anthony Declaration.

## III. ARGUMENT

**A.    DOM Has Failed to Establish Cause for Dismissing the Case**

    **1.    The Standard for Dismissal pursuant to 11 U.S.C. § 1112(b)**

Section 1112(b), which was modified pursuant to BAPCPA, now reads in pertinent part as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104 (a)(3),[3] on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

While section 1112(b) provides a non-exhaustive list of grounds qualifying as cause, courts have wide latitude in determining whether cause exists for dismissal. See In re Nugelt, Inc., 142 B.R. 661, 665 (D. Del. 1992); In re Young, 76 B.R. 376, 378 (Bankr. D. Del. 1987). "The determination of whether cause has been shown must be made on a case-by-case basis, and cause is not limited to the enumerated grounds of § 1112(b)." Young, 76 B.R., at 378. A court need only conclude that one of the enumerated cause scenarios is supported by facts for dismissal to be appropriate. See id.

### 2.  The Standard for Dismissal of an Involuntary Petition

This Court set the standard for dismissal of an involuntary petition in In re Mi La Sul, et al., 380 B.R. 546 (Bankr. C.D.Cal. 2007). Consistent with the analysis for case dismissal pursuant to Bankruptcy Code section 1112(b), the Mi La Sul standard is a fact intensive inquiry. There are six factors cited by the court to assist in that inquiry:

> (1) subjective test – based on the petitioning creditor's motivation – ie. harassment rather than collection.
>
> (2) improper purpose test – why did the creditor file – ie. to harm the debtor's business?
>
> (3) objective test – what would a reasonable person in the petitioning creditor's position have done?
>
> (4) improper use – does the creditor's action take disproportionate advantage of other creditors – ie. to reduce an obligation on a guaranty or use the bankruptcy process as if it were the creditor's own private collection agency?

---

[3] Section 1104(a)(3) provides that, rather than converting or dismissing the case, the court may appoint a chapter 11 trustee if doing so would be in the best interests of creditors and the estate. The appointment of a chapter 11 trustee in this Case would not be in the interests of creditors and the estate.

(5) combined objective and subjective – similar to that used in Federal Rule of Bankruptcy Procedure 9011.

(6) nose test – if "it smells like bad faith, it's got to be bad faith." In re Better Care, Ltd., 97 B.R. 405, 409 (Bankr.N.D.Ill.1989) simply states that although courts use fancy tests, the judges really are relying on the smell test.

Id. at 554.

More to the point of whether the case at hand should be dismissed, the Mi La Sul court examined In re Stern, 268 B.R. 390 (Bankr. S.D.N.Y. 2001), which held that "[I]t may be proper for unsecured creditors to seek to prevent a mortgage foreclosure on the debtor's sole asset where the foreclosure sale would wipe out equity that could repay unsecured creditors." Id. at 393. The Mi La Sul court also cites In re Kingston Square Associates, et al., 214 B.R. 713 (Bankr. S.D.N.Y. 1997) where "the debtor orchestrated the involuntary chapter 11 petition by soliciting creditors to sign it because the provisions of corporate governance did not allow the corporation to file a voluntary petition. But the court found that the bankruptcy was necessary to prevent the loss of value and the potential for reorganization and since the debtor did not violate any statute or order, the court did not dismiss the case." Mi La Sul at 556.

### 3. The Debtor's Estate Would Be Best Served by the Protection Offered by the Bankruptcy Court

Applying the Mi La Sul factors to the case at hand clearly shows that the case should not be dismissed.[4] Specifically, a reasonable person in WTA's position would file an involuntary petition in order to protect the Debtor's assets and preserve its interest therein. The Managers could not agree on a course of action for this company leaving it flailing in the wind. In the absence of an agreement between the warring parties, bankruptcy is the only means of achieving a conclusion to the dispute while preserving the value of the Debtor's assets. The bottom line is that it passes the "nose test;" the involuntary petition serves a legitimate purpose.

The Debtor finds it interesting that Movant relies on Mi La Sul when the facts in that case are so clearly distinguishable from those of the Debtor's case. In Mi La Sul, the petitioning creditors

---

[4] The Debtor can only address the objective factors of the Mi La Sul test because it does not speak for WTA and, contrary to DOM's unsupported assertion, WTA does not control the Debtor. See Anthony Declaration.

were trying to game the system to assert leverage against secured lenders and obtain property for less than its true value. The <u>Mi La Sul</u> cases were a series of interrelated involuntary petitions orchestrated by a single entity intent on using the bankruptcy court as a collections agency. In the case at hand, the Debtor is in serious financial distress suffering from a genuine dispute between its lenders regarding their respective interests in the Debtor's assets. The Debtor did not instigate the involuntary filing but it agrees that bankruptcy protection is in the best interest of all of its constituencies.

Even assuming, *arguendo,* that DOM's assertion is correct and WTA manipulated the Debtor to obtain the necessary petitioning creditors,[5] that is not *per se* grounds for dismissal according to the holding in <u>Kingston Square</u>, as cited by <u>Mi La Sul</u>. <u>In re Mi La Sul</u>, 380 B.R. at 556. The bankruptcy is necessary to prevent the loss of value that would surely occur if DOM were allowed to foreclose on the assets and conduct an auction on the court-house steps. But the Operating Agreement prevented the Debtor from seeking bankruptcy protection on its own even though the bankruptcy court would provide a forum in which to conduct an asset sale, preserve the proceeds, and allow all creditors to argue over their distribution.

Now that the Debtor is in bankruptcy, it plans to immediately employ an investment banker that specializes in the disposition of intellectual property so that the Debtor can conduct a rapid yet orderly liquidation of its assets. The Debtor will seek court authority to sell its assets free and clear of liens and encumbrances with those attaching to the proceeds pursuant to section 363 of the Bankruptcy Code. It is only this type of sale that will maximize the value of those assets. Once a sale is complete, the competing creditors may file claims against the estate and their respective rights can be determined by this Court.

**B.    <u>DOM Has Failed to Establish Cause for Relief from the Automatic Stay</u>**

    **1.    The Standard for Granting Relief from the Automatic Stay**

The automatic stay is one of the most fundamental protections afforded a debtor. <u>Midlantic Nat'l Bank v. New Jersey Dep't of Envir. Prot.</u>, 474 U.S. 494, 503 (1986). The purpose of the

---

[5] DOM's assertion is based on an unsubstantiated theory that WTA controls the Debtor. The Anthony Declaration directly refutes that assertion.

automatic stay is to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (internal citation omitted). The stay should "give the debtor a breathing spell from his creditors." Id. (citations omitted).

DOM has the burden to establish that cause exists to grant the RFS Motion. See In re Ward, 837 F.2d 124, 128 (3d Cir. 1988) (movant bears burden of proof).

### 2. The Automatic Stay Should Remain in Place to Protect All of the Debtor's Creditors

DOM has not met its burden to establish that cause exists to grant relief from the automatic stay. As discussed above, there is a *bona fide* dispute over the nature and extent of the Debtor's outstanding secured obligations. Without the benefit of the automatic stay, the creditors would be allowed to pick apart the Debtor's asset without regard for competing claims. This case presents a classic example of the necessity of the automatic stay to preserve the estate's assets so that they may be distributed among the competing parties once those parties have established the validity of their claims.

DOM's reliance on In re Rule, Ltd. is inapposite. 41 B.R. 153 (Bankr. D. Hawaii 1984). In Rule, the creditor filing the involuntary petition against the alleged debtor was its sole shareholder. An involuntary petition was filed because the debtor did not have sufficient time prior to a foreclosure sale to prepare the necessary filing materials. The sole purpose of the petition was to prevent a foreclosure in hopes of selling the debtor's assets for "a 'pie in the sky' return." Id. at 156. There was no benefit to the estate to be gained by the filing of the bankruptcy petition. In the case at hand, the Debtor could not filed its own petition because of the dispute between its Managers. And it is the dispute between those Managers regarding the amount of their secured and unsecured claims against the Debtor that is the reason why the Debtor needs the protection of the bankruptcy court in the first place. While the filing of the bankruptcy petition is contrary to DOM's interest, it is in the Debtor's estate's best interest.

Without the protection of the automatic stay, the Debtor would not be able to use the protections of the bankruptcy court as Congress intended: to maximize the value of its assets and distribute those assets to its creditors according to the priorities outlined in the Bankruptcy Code. For this reason, the Debtor asserts that the cause does not exist to grant DOM relief from the automatic stay.

## IV. CONCLUSION

Based on the foregoing, ESCOM respectfully requests that the Court (i) deny the Dismissal Motion, (ii) deny the RFS Motion, and (iii) grant such additional relief as it deems just and proper.

Dated: April 19, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/Jeffrey W. Dulberg*
    Jeffrey W. Dulberg
    Gabrielle Albert Rohwer
    Proposed Attorneys for Escom LLC, the
    Alleged Debtor

| In re:           Escom, LLC, | | CHAPTER  11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER    1:10-bk-13001-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10100 Santa Monica Boulevard, 11th Floor, Los Angeles, Ca  90067-4100

A true and correct copy of the foregoing document described **JOINT RESPONSE TO MOTION OF DOM PARTNERS, LLC FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 305(a) AND 1112(b) DISMISSING ESCOM'S INVOLUNTARY BANKRUPTCY PETITION FOR CAUSE AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 19, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 19, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA 91367-6603

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 19, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **April 19, 2010** | Nancy H. Brown | */s/ Nancy H. Brown* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re:                 |            | CHAPTER 11                           |
|------------------------|------------|--------------------------------------|
| Escom, LLC,            | Debtor(s). | CASE NUMBER 1:10-bk-13001-GM         |

## TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

Jeffrey W Dulberg on behalf of Debtor Escom LLC
jdulberg@pszjlaw.com

John W Kim on behalf of Creditor DOM Partners LLC
jkim@nossaman.com

Susan I Montgomery on behalf of Interested Party Courtesy NEF
susan@simontgomerylaw.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

## SERVED BY U.S. MAIL

**Counsel to Washington Technology Associates LLC**
Mark Chassman
120 Broadway
Suite 300
Santa Monica, CA 90401

## SERVED BY EMAIL

### Escom LLC 2002 Service List

**Debtor**
Escom LLC
23480 Park Sorrento
Suite 206B
Calabasas, CA 91302
Attn: Del Anthony
del@escomllc.com

**Counsel for Nothin' But Net, LLC**
Daniel G. Gurfein
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
Suite 1130
New York, NY 10169
Tel: (212) 818-9200/Fax: (212) 818-9606
dgurfein@ssbb.com

**Counsel for DOM Partners LLC**
Alan Nisselson/Scott Matthews
Windels Marx Lane & Mittendorf, LLP
156 West 56th St.
New York, NY 10019
Tel: (212) 237-1000/Fax: (212) 262-1215

**Counsel for Dom Partners LLC**
Allan H. Ickowitz/John Kim
Nossaman LLP
445 So. Figueroa Street
31st Floor
Los Angeles, CA  90071
Tel: (213) 612-7800/Fax: (213) 612-7801
aickowitz@nossaman.com
jkim@nossaman.com

**Attorneys for Petitioning Creditors Washington Technology Associates, LLC, iEntertainment, Inc., and AccountingMatters.comLLC**
Susan I. Montgomery, Esq.
1925 Century Park East
Suite 200
Los Angeles, CA 90067
Tel: (310) 556-8900/Fax: (310) 556-8905
susan@susanmontgomerylaw.com

23880-001\DOCS_LA:217922.4

| In re: Escom, LLC, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-13001-GM |

**Attorneys for Petitioning Creditors Washington Technology Associates, LLC, iEntertainment, Inc., and AccountingMatters.comLLC**
Mark Chassman
120 Broadway
Suite 300
Santa Monica, CA 90401
Tel: (310) 576-2238/Fax: (310) 576-2551
mchassman@chassmanseelig.com

**Attorneys for Petitioning Creditors Washington Technology Associates, LLC, iEntertainment, Inc., and AccountingMatters.comLLC**
Lawrence F. Morrison, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th St.
19th Floor
New York, NY 10017
Tel: (212) 655-3582/Fax: (646) 539-3682
lfm@msf-law.com

**Creditors or Parties in Interest**
i95 Invesment Group
60 Wells Ave.
Suite 100
Newton, MA 02459
Attn: Corey Bialow
Tel: (617) 928-9423/Fax: (617) 964-5318
cbialow@bialow.com

**Creditors or Parties in Interest**
Domain Name Acquisition Group, LLC
c/o Internet Real Estate Group LLC
188 Needham St.
Suite 255
Newton, MA 02464
Attn: Andrew Miller
Tel: (617) 236-0806/Fax: (617) 927-1199
amiller@internetrealestate.com

**Counsel for US Trustee**
S. Margaux Ross, Esq.
21051 Warner Center Lane
Suite 115
Woodland Hills, CA 91367
margaux.ross@usdoj.gov