FILED
APR 21 2010
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

Escom LLC,

Debtor(s).

Case No: 1:10-bk-13001-GM

Chapter: 11

**COURT WRITTEN TENTATIVE RULING REGARDING MOTION TO DISMISS INVOLUNTARY CHAPTER 11 BANKRUPTCY CASE**

Date: April 20, 2010
Time: 10:00 a.m.
Location: Courtroom 303

Court written tentative ruling attached to this cover sheet.

- 1 -

United States Bankruptcy Court
Central District of California

San Fernando Valley

Judge Geraldine Mund, Presiding

Courtroom 303 Calendar

**Tuesday, April 20, 2010**     **Hearing Room 303**

10:00 am

**1:10-13001**    **Escom LLC**                                        **Chapter 11**

     **#62.00**     Motion to Dismiss Involuntary Case pursuant to 11 U.S.C.
Sections 105(a), 305(a) and 1112(b)

Docket #: 3

**Courtroom Deputy:**

- NONE LISTED -

**Tentative Ruling:**

     On March 17, 2010, an involuntary chapter 11 bankruptcy petition was filed against Escom, LLC ("Escom") by Washington Technology Associates LLC ("WTA"), iEntertainment, Inc. ("iEntertainment"), and AccountingMatters.com, LLC ("AccountingMatters") (collectively, the "Petitioning Creditors"). All three Petitioning Creditors are managed or otherwise controlled by Mike Mann ("Mann"). WTA and iEntertainment both hold relatively large secured claims and AccountingMatters holds a $7,800 unsecured claim.

     Escom was formed on January 5, 2006, and is currently managed by WTA, Domain Name Acquisition Group, LLC ("DNAG"), and DOM Partners LLC ("DOM" or "Movant"). Escom's business is derived almost entirely from its ownership and operation of the much-publicized domain name "www.sex.com" (the "Domain Name"), which it purchased in January 2006. The Domain Name (with various derivative intellectual property rights) appears to be Escom's only significant asset. It is unclear whether Escom has any employees other than its chief executive officer, Del Anthony. It is also unclear what income, if any, Escom has. Escom's operating agreement expressly requires the unanimous consent of its managers prior to taking any action with respect to the Domain Name, including the filing of a bankruptcy petition.

     Escom was initially capitalized by a combination of secured loans and equity investments. On January 12, 2006, DOM lent $3 million to Escom, secured by collateral consisting of the Domain Name and all of its other tangible and intangible property. WTA lent $5 million to Escom, secured by the same collateral. DOM and WTA share first priority secured status, and have agreed to share in repayment of their loans pari passu. DOM also made a $1.5 million convertible loan to Escom, which was subsequently satisfied by an equity investor, Nuthin' But Net, LLC ("NBN"). In addition, DOM and WTA each made $1 million equity investments in Escom.

     In August 2007, iEntertainment converted a right to receive future revenues under a

United States Bankruptcy Court
Central District of California

San Fernando Valley
Judge Geraldine Mund, Presiding
Courtroom 303 Calendar

Tuesday, April 20, 2010          Hearing Room 303

10:00 am

**Cont....**     **Escom LLC**                        **Chapter 11**

certain "linking agreement" with Escom into a $2.5 million subordinate "loan" secured by a junior lien on all of Escom's tangible and intangible property. In April 2008, I95 Investment Group ("I95") made a $400,000 equity investment in Escom. Taking into account the interest that has accrued on the various loans, it appears that Escom has approximately $14.4 million in secured debt owed to DOM, WTA, and iEntertainment. Escom does not appear to have any significant unsecured debt.

In August 2008 and January 2009, Escom defaulted on the DOM, WTA, and iEntertainment loans. All three creditors sent Escom notices of default. During the months preceding and following the defaults, Escom and those parties attempted an out-of-court workout to determine the method by which to cure all of the defaults and allow Escom to meet its monetary obligations. Initial proposals included a conversion of DOM's secured loans to equity and the "buy out" of one member's debt by another. Thereafter, it became clear to the parties that a sale of the Domain Name would be necessary to and part of any future workout.

It appears, however, that the parties disagreed as to the best method for selling the Domain Name, with Mann attaching far more value to the Domain Name than DOM was apparently willing to accept in a potential sale to a third party. Negotiations soon collapsed, and on February 12, 2010, DOM served a notice of foreclosure sale, purporting to sell the Domain Name at a public auction to be conducted on March 18, 2010, by David R. Maltz & Co., Inc. ("Maltz"), a UCC auctioneering firm.

Mann voiced his concerns regarding Maltz's lack of expertise in the marketing and sale of "super premium domain names such as 'sex.com,' which is widely reported to be one of the most valuable domain names in the world." Mann suggested that a special "domain name broker" such as Sedo.com LLC ("Sedo") be utilized to sell the Domain Name and maximize its value. On March 12, 2010, Sedo's CEO Tim Schumacher sent a letter to DOM's counsel stating that in his professional opinion the current circumstances surrounding the scheduled auction—a foreclosure sale of a highly publicized domain name, on relatively short notice, and by an auctioneer unfamiliar with the sale of high-value domains—would yield a purchase price well below the Domain Name's fair market value. DOM declined to utilize Sedo claiming that its commission percentage of 10% was excessive given the amount of services involved. Maltz proceeded to advertise the auction in the Wall Street Journal and the New York Times, garnering a lot of interest by potential bidders and the news media.

Mann filed the involuntary petition through his companies on March 17, 2010 in order to

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Geraldine Mund, Presiding
### Courtroom 303 Calendar

**Tuesday, April 20, 2010**                                                                 **Hearing Room  303**

10:00 am

**Cont....     Escom LLC**                                                                         **Chapter 11**

stop the foreclosure sale.  DOM subsequently filed this Motion, along with an accompanying motion for relief from the automatic stay, on March 26, 2010.

Proposed Ruling:
A. DOM's Standing under Section 303(j)
   Section 303(j) provides that an involuntary petition may be dismissed by motion of a petitioner, by consent of the petitioners and the debtor, or for want of prosecution.  11 U.S.C. § 303(j).  This necessarily means that a nonpetitioning creditor cannot move to dismiss an involuntary petition under section 303(j).
The Petitioning Creditors argue that DOM's Motion should be dismissed because it lacks standing under section 303(j).  However, DOM brings this Motion under sections 305(a) and 1112(b), which are not so limited.  See § 305(a) (containing no restriction on who can move for dismissal); § 1112(b) (allowing any "party in interest" to bring a motion for dismissal for "cause"); see also 2 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY & 303.35, at 303-117 (16th ed. 2009) (explaining the relationship between § 303(j) and § 305(a)).  Accordingly, DOM is not precluded from bringing a motion to dismiss the involuntary petition under either section 305(a) or section 1112(b).

B. Dismissal under Section 305(a)(1)
   Section 305(a)(1) permits a court to dismiss any case and at any time if the interests of both the creditors and the debtor would be "better served" by a dismissal.  11 U.S.C. § 305(a)(1).  Because a dismissal under section 305(a) is not reviewable on appeal, it is "an extraordinary remedy" of "narrow breadth" that should be granted only if the court finds that both the debtor and its creditors would be better served by a dismissal.  In re Macke Intern. Trade, Inc., 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007); In re Eastman, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995); see also § 305(c).  The moving party bears the burden to demonstrate that the debtor and its creditors would be better served by a dismissal.  In re Monitor Single Lift I, Ltd., 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008).
   While section 305(a) is clear in its requirements, courts have recently employed a non-exhaustive seven-factor "test" to aid in the determination of whether to abstain by dismissal.  These factors are: 1) the economy and efficiency of administration; 2) the availability of another forum; 3) the necessity of federal proceedings in reaching a just and equitable solution; 4) the availability of an alternative means of achieving an equitable distribution of assets; 5) the possibility of a less-expensive out-of-court workout; 6)

# United States Bankruptcy Court
## Central District of California

San Fernando Valley

Judge Geraldine Mund, Presiding

Courtroom 303 Calendar

Tuesday, April 20, 2010                                                                                                   Hearing Room 303

10:00 am

**Cont....    Escom LLC**                                                                                                        **Chapter 11**

whether non-bankruptcy insolvency proceedings have progressed so far that it would be costly and time consuming to start afresh; and 7) the purpose for which bankruptcy jurisdiction has been sought. Id. at 464-65 (citing In re 801 S. Wells St. Ltd. P'ship, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)); see also Macke, 370 B.R. at 247-48 (noting the bankruptcy court's use of the factors in its totality of the circumstances analysis). Not all factors are given equal weight in every case. Id. at 465. The first factor is generally a "primary consideration." In re Century/ML Cable Venture, 294 B.R. 9, 38 (Bankr. S.D.N.Y. 2003); see In re StatePark Bldg. Group, Ltd., 316 B.R. 466, 477 (Bankr. N.D. Tex. 2004).

In assessing the economy and efficiency of administration, the bankruptcy court's power under section 363(f) to approve the sale of assets free and clear of interests is a key consideration against dismissal under section 305(a)(1). Id. In addition, the failure of out-of-court workout attempts generally weighs against dismissal. See, e.g., In re Paper I Partners, L.P., 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002). The last factor dealing with the bankruptcy purpose has been used "to support the dismissal of an involuntary case that was filed not to favor all creditors and the estate but to obtain a disproportionate advantage for petitioning creditor's position." 2 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY & 305.02[2][b], at 305-8 (16th ed. 2009); see also In re John Richards Homes Bldg. Co., LLC, 439 F.3d 248, 254 (6th Cir. 2006); In re Mi La Sul, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007).

Because DOM has not sufficiently demonstrated that both Escom and its creditors would be better served by dismissal, relief under section 305(a)(1) does not appear to be appropriate. Significantly, the estate could be administered economically and efficiently, and the Domain Name could be sold quite quickly in a 363 sale. The power under a 363 sale to sell the Domain Name free and clear of interests weighs quite heavily against dismissal. The notice of foreclosure sale indicated that the Domain Name would be sold "as is," which, considering the long history of litigation surrounding the Domain Name, may well have discouraged some bidders or otherwise diminished its value. Those bidders' confidence that they are bidding on an asset free of encumbrances might significantly increase the value of the Domain Name. Moreover, a 363 sale utilizing a "stalking horse" bidder could ensure that a minimum value would be paid for the Domain Name. DOM and Mann appear to have the same interest in maximizing the value of the Domain Name and the distribution to all creditors. While it is true that chapter 11 bankruptcy can be expensive, the fact that Escom appears to have few employees and only one significant asset suggests that the estate could be administered in an economic

**United States Bankruptcy Court**
**Central District of California**

San Fernando Valley
Judge Geraldine Mund, Presiding
Courtroom 303 Calendar

Tuesday, April 20, 2010                                           Hearing Room  303

10:00 am
Cont....     **Escom LLC**                                        Chapter 11

and efficient way.

A review of the other factors also weighs against dismissal. This is not a situation where Escom and some of its creditors have reached an out-of-court workout agreement, and some other "recalcitrant" creditors forced the filing of the involuntary petition in order to extract more favorable terms. Rather, it is clear that workout attempts have consistently failed. No allegations have been made that non-bankruptcy insolvency proceedings have progressed so far that it would be costly and time consuming to start afresh. Likewise, there appears to be a valid bankruptcy purpose to the filing of the involuntary petition, which is to maximize the value of the Domain Name and the equitable distribution to all creditors, including DOM.

DOM expends much effort in insisting that the auction sale marketing campaign was "tremendously successful" in attracting competitive bidders eager to bid high amounts on the Domain Name. DOM does not address the possibility that a sale of the Domain Name under the protection of the bankruptcy laws would better serve the interests of both Escom and its creditors. Therefore, in light of the extraordinariness of dismissal under section 305(a)(1), and the fact that DOM has not sufficiently demonstrated that Escom and its creditors would be better served by dismissal, the Court will deny relief under section 305(a)(1).

C. Dismissal under Section 1112(b)

The court must dismiss or convert a chapter 11 case if the movant establishes "cause." § 1112(b)(1). Section 1112(b)(4) contains a list of circumstances constituting "cause," but that list is expressly non-exhaustive. § 1112(b)(4); see H.R. Rep. No. 95-595, at 406 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6362. For purposes of this Motion, DOM argues that dismissal under section 1112(b) is warranted because 1) there is "substantial or continuing loss to or diminution of the estate" and no "reasonable likelihood of rehabilitation," and 2) the involuntary petition was filed in bad faith.

1) Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation:

An example of "cause" justifying the dismissal or conversion of a chapter 11 case is "substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." § 1112(b)(4)(A). Both requirements must be met for "cause" to exist under this provision. If the debtor has a negative cash flow—i.e. its liabilities are

United States Bankruptcy Court
Central District of California

San Fernando Valley
Judge Geraldine Mund, Presiding
Courtroom 303 Calendar

Tuesday, April 20, 2010      Hearing Room 303

10:00 am

**Cont....**     **Escom LLC**             **Chapter 11**

continuing to increase more rapidly than cash is available to meet continuing obligations—the first requirement is met. In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); In re AdBrite Corp., 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). Rehabilitation—as opposed to reorganization—requires the reestablishment of a business, and may not include liquidation. Loop Corp. v. U.S. Trustee, 379 F.3d 511, 516 (8th Cir. 2004); In re 15375 Mem'l Corp., 386 B.R. 548, 552 (Bankr. D. Del. 2008), rev'd on other grounds, 400 B.R. 420 (D. Del. 2009).

DOM argues that both requirements are met because Escom has a negative cash flow which will result in "continuing loss to or diminution of the estate" and, because it has no ascertainable source of financing, it has no reasonable likelihood of rehabilitation. The fact that Escom is in financial trouble is obvious. It is unknown at this early juncture, however, whether Escom has a reasonable likelihood of rehabilitation. The fact that the Petitioning Creditors are contemplating a sale of the Domain Name does not necessarily mean that liquidation is the only alternative. In fact, a DIP loan under section 364 would only be available to Escom if it were to become a debtor in possession, a "luxury" it is not afforded outside of bankruptcy. Moreover, because the court must choose between dismissal and conversion to chapter 7, "whichever is in the best interest of creditors and the estate," dismissal at this early stage may be premature. Therefore, the Court declines to conclude that there is an "absence of a reasonable likelihood of rehabilitation" prior to the entering of an order for relief.

2) <u>Bad Faith</u>:

Generally, a chapter 11 case which is filed in bad faith may be dismissed for "cause." See, e.g., In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re Global Ship Sys., LLC, 391 B.R. 193, 202 (Bankr. S.D. Ga. 2007); In re Victory Constr. Co., 9 B.R. 549, 551-58 (Bankr. C.D. Cal. 1981). Several "tests" for determining the existence of bad faith have been used, and the Ninth Circuit has not expressly adopted one. Lower courts, however, have used the "totality of the circumstances" test. See Macke, 370 B.R. at 247; In re Mi La Sul, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007). The Eleventh Circuit, as well as courts in other circuits, has adopted a set of factors to aid in determining the existence of bad faith: 1) whether the debtor is a "single asset debtor"; 2) the number and amount of unsecured claims in relation to secured claims; 3) limited number of employees employed by the debtor; 4) the existence of a foreclosure action affecting the debtor's asset; 5) the availability of a pending state court action to resolve the dispute between the

United States Bankruptcy Court
Central District of California

San Fernando Valley
Judge Geraldine Mund, Presiding
Courtroom 303 Calendar

Tuesday, April 20, 2010                Hearing Room 303

10:00 am

Cont....     **Escom LLC**                                                    **Chapter 11**

debtor and its secured creditors; and 6) whether the timing of the filing evidences an attempt to delay or frustrate the legitimate efforts of secured creditors to exercise their state law remedies. In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1989).

In Phoenix Piccadilly, there was strong evidence that the debtor's bankruptcy filing was intended simply to harass its major secured creditor, in light of the timing of the filing and the fact that the location of the filing was far removed from the relevant business and a pending state court action. Id. at 1395. In In re Global Ship Systems, the court found sufficient bad faith existed to dismiss an involuntary chapter 11 petition where: 1) an involuntary petition was filed in circumvention of the debtor's operating agreement only hours before a non-judicial foreclosure sale; 2) the petition was filed after a state court refused to stay the sale; 3) the debtor had no employees or an operating business; 4) the debtor had no cash with which to fund expenses; 5) the debtor had few unsecured creditors with relatively minimal claims; 6) the timing of the petition evidenced an intent to delay or frustrate the secured creditor's efforts to enforce its rights. Global Ship Sys., 391 B.R. at 202-03.

DOM points to the filing of the involuntary petition in circumvention of Escom's operating agreement as strong evidence of Petitioning Creditors' (i.e. Mann's) bad faith. In support of its argument, DOM relies heavily on Global, which noted that "in circumventing the rights of [the secured creditor] as a shareholder to consent to a bankruptcy filing through the ruse of soliciting an involuntary case . . . [the debtor] engaged in bad faith . . . ." Id. at 204. The Global court, however, conceded that the filing of an involuntary case in circumvention of corporate bylaws does not necessarily amount to bad faith where there was a good faith belief by creditors that the filing of an involuntary was the only means of preserving equity that would otherwise be lost following a foreclosure. Id.; see also In re Kingston Square Assoc., 214 B.R. 713, 733-35 (Bankr. S.D.N.Y. 1997). The court distinguished that situation from the facts before it, where the value of the collateral in question was far below the amount of the debt held by the secured creditor, which meant that "there is simply no basis to believe that unsecured and equity interest holders will be any worse off after a foreclosure than they were before." Id.

The facts of this case are readily distinguishable from those in Global. In Global, the collateral was worth less than half the amount of the debt held by the foreclosing creditor. By contrast, the true fair market value of the Domain Name is at the center of the dispute, with Mann and the Petitioning Creditors confident that the proceeds of a properly-noticed and marketed sale would satisfy all secured claims and possibly even provide a return on

United States Bankruptcy Court
Central District of California

San Fernando Valley
Judge Geraldine Mund, Presiding
Courtroom 303 Calendar

Tuesday, April 20, 2010                                    Hearing Room  303

10:00 am
Cont....    **Escom LLC**                                    **Chapter 11**

equity investments. That reasonable belief weighs against the finding of a bad faith filing by Mann and the Petitioning Creditors. Moreover, DOM has not cited a single case suggesting that mere control by one individual of the petitioning creditors evidences bad faith.

In further support of its argument that the involuntary petition was filed in bad faith and solely to stop the foreclosure sale, DOM points to the fact that Escom has only one asset that is the subject of a foreclosure action, insufficient income to meet its continuing obligations, only one key employee, and relatively few and insignificant unsecured claims. However, the fact that Mann and the Petitioning Creditors filed the involuntary petition to stop the foreclosure sale does not mean that they did so in bad faith. Rather, they would have had to intend to do so "for an improper purpose, such as merely to frustrate the rights of creditors rather than to reorganize or have an orderly liquidation." COLLIER ON BANKRUPTCY ¶ 1112.07[6][b][i], at 1112-59; see In re Kerr, 908 F.2d 400, 404 (8th Cir. 1990) (noting that debtors are allowed to file for bankruptcy protection to shield their assets, and distinguishing between permissible and impermissible motives as relevant to a bad faith determination). Maximizing the value of the Domain Name, as the parties here appear eager to do, is not such an improper purpose. In addition, the absence of sufficient income and the existence of only one employee are factors weighing in favor of conversion to chapter 7, but are not necessarily enough to demonstrate bad faith.

DOM also argues that the Petitioning Creditors are attempting to obtain a disproportionate advantage over DOM, citing In re Mi La Sul. The differences between that case and the instant case are significant. In Mi La Sul, the petitioning creditors filed several collusive involuntary petitions in order to coerce various mortgagees into taking less than they were owed. Mi La Sul, 380 B.R. at 557. The court found that those creditors had no intention to collect the unsecured debts, but that they filed the involuntary petitions solely to take "disproportionate advantage" of the mortgagees. Id. By contrast, it does not appear that the Petitioning Creditors are seeking to take disproportionate advantage of DOM or any other creditors. In fact, WTA and DOM would have been paid the same percentage of the auction proceeds. There is no readily ascertainable reason to believe that the distribution scheme will change as a result of this bankruptcy. Accordingly, it does not appear that Mann and the Petitioning Creditors filed the involuntary petition in bad faith in order to take "disproportionate advantage" of DOM.

D. <u>Appointment of a Chapter 11 Trustee</u>

United States Bankruptcy Court
Central District of California

San Fernando Valley

Judge Geraldine Mund, Presiding

Courtroom 303 Calendar

**Tuesday, April 20, 2010**　　　　　　　　　　　　　　　　　　　　　　　Hearing Room　303

10:00 am

**Cont....**　　**Escom LLC**　　　　　　　　　　　　　　　　　　　　　　　　　**Chapter 11**

　　Section 1104(a) and section 105(a) give the bankruptcy court the authority to appoint a chapter 11 trustee sua sponte at any time after commencement of a case. In re Bibo, Inc., 76 F.3d 256, 258 (9th Cir. 1996); see also § 1104(a) (providing that a chapter 11 trustee may be appointed at any time after the commencement of the case but before confirmation of a plan). This authority applies equally to voluntary and involuntary cases. See generally COLLIER ON BANKRUPTCY ¶ 303.29, at 303-90. Section 1104 provides that a trustee may be appointed "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ." In situations where the debtor corporation's boards of directors or partners in a debtor partnership are effectively deadlocked, the appointment of a trustee is "in the interests of creditors, any equity security holders, and other interests of the estate." In re New Orleans Paddlewheels, Inc., 350 B.R. 667, 692 (Bankr. E.D. La. 2006); In re Colorado-Ute Elec. Ass'n, Inc., 120 B.R. 164, 176-77 (Bankr. D. Colo. 1990); In re Advanced Elecs., Inc., 99 B.R. 249 (Bankr. M.D. Pa. 1989).

　　In light of DOM's assertion that it has been "locked out" of its management position in Escom, the uncertainty as to who is and has been operating Escom for past year, and the stalemate in the negotiations between DOM, the Petitioning Creditors, and Mann, it appears that appointment of a trustee may be in the parties' interest, both as creditors and as equity investors. While appointment of a trustee (and his or her counsel) is bound to be expensive, this may be a preferable course of action in light of the impending gridlock that has prevented Escom from meeting its obligations since late 2008 and early 2009 and resolving the issue of how to best liquidate the Domain Name. A trustee owing a fiduciary duty to the estate may diffuse the tension between Mann and DOM and may elect to sell the Domain Name in a manner that he or she believes to be most beneficial to the estate.

　　DENY the motion to dismiss. Set a hearing to consider appointing a chapter 11 trustee sua sponte after determining who is and has been effectively operating Escom, who will make the decision on how to sell the asset, and whether this company is able to operate and make business decisions.

Party Information

Debtor(s):

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Geraldine Mund, Presiding
### Courtroom 303 Calendar

| Tuesday, April 20, 2010 | Hearing Room 303 |
|---|---|

**10:00 am**

**Cont....    Escom LLC**                                                                 Chapter 11

    Debtor(s):
        Escom LLC

    Movant(s):
        DOM Partners LLC                                   Represented By
                                                          John W Kim