1  Jeffrey W. Dulberg (CA Bar No. 181200)
   Gabrielle A. Rohwer (CA Bar No. 190895)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 11th Floor
3  Los Angeles, California  90067-4100
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:    jdulberg@pszjlaw.com
5             grohwer@pszjlaw.com

6  [Proposed] Attorneys for Escom, LLC
   Debtor and Debtor in Possession

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **·CENTRAL DISTRICT OF CALIFORNIA**

10                  **SAN FERNANDO VALLEY DIVISION**

11  In re:                              Case No.: 1:10-bk-13001-GM

12  **ESCOM, LLC,**[1]                     Chapter 11

13                          Debtor.      **NOTICE OF MOTION AND MOTION FOR
                                         ORDER (A) APPROVING SALE PROCEDURES**
14                                       **AND BID PROTECTIONS, INCLUDING BREAK-
                                         UP FEE, IN CONNECTION WITH SALE OF**
15                                       **DOMAIN NAME AND TRADEMARKS, FREE
                                         AND CLEAR OF ALL LIENS, CLAIMS,**
16                                       **ENCUMBRANCES AND INTERESTS;
                                         (B) AUTHORIZING EMPLOYMENT OF**
17                                       **SEDO.COM, LLC, AS MARKETING AND SALES
                                         AGENT PURSUANT TO EXCLUSIVE**
18                                       **BROKERAGE AGREEMENT; AND (C)
                                         GRANTING RELATED RELIEF**
19
                                         [Declaration of Del Anthony Polikretis, Motion to File
20                                       Brokerage Agreement Under Seal and Motion for Order
                                         Shortening Time filed concurrently herewith]
21
                                         REQUESTED HEARING DATE
22                                       Date:      June 29, 2010
                                         Time:      10:00 a.m.
23                                       Place:     Courtroom 303
                                                    21041 Burbank Boulevard
24                                                  Woodland Hills, Ca  91367

25

26

27

28  ——————————————
    [1]  The Debtor is a Delaware limited liability company, Tax I.D. # 20-038609.  The Debtor's address is PO Box 1410
    Agoura Hills, CA 91376.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 5

II. STATEMENT OF FACTS ................................................................................................. 5

    A.    Jurisdiction and Venue ................................................................................ 5

    B.    Background .................................................................................................... 5

    C.    Bankruptcy Filing ........................................................................................ 6

    D.    Events Following the Filing of the Involuntary Petition ............................. 6

III. SALE PROCEDURES ...................................................................................................... 8

    1.    Property to be Sold Free and Clear of Interests........................................... 9

    2.    Notice of the Motion .................................................................................... 9

    3.    Marketing/Sale Process: ............................................................................... 9

    4.    Public Auction ............................................................................................ 10

    5.    Bid Protections; Backup Bidders ............................................................... 12

    6.    Objections.................................................................................................... 13

    7.    Court Approval at Sale Hearing .................................................................. 13

    8.    Return of Deposit ........................................................................................ 14

    9.    Merit of Proposed Sale Procedures ............................................................ 14

IV. ARGUMENT.................................................................................................................... 14

    A.    Cause Exists to Approve the Sale of the Property Under Section 363(b) of the
        Bankruptcy Code........................................................................................ 14

    B.    This Court Is Empowered to Approve Reasonable Sales Procedures and Bidding
        Protections and Should Approve the Sale Procedures ............................... 15

    C.    Good Faith .................................................................................................. 17

    D.    Employment of Sedo and Approval of the Brokerage Agreement............. 17

V. CONCLUSION .................................................................................................................. 18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF AUTHORITIES

Page

**Cases**

*In re 995 Fifth Ave. Assocs., L.P.,*
    96 B.R. 24 (Bankr. S.D.N.Y. 1989) ................................................................................ 16

*In re Ames Dept. Stores, Inc.,*
    136 BR 357 (Bankr. S.D.N.Y. 1992) ............................................................................. 15

*In re Bel Air Assocs., Ltd.,*
    706 F.2d 301 (10th Cir. 1983) ...................................................................................... 17

*In re Canyon P'ship,*
    55 B.R. 520 (Bankr. S.D. Cal. 1985) ........................................................................... 14

*In re Continental Airlines, Inc.,*
    780 F.2d 1223 (5th Cir. 1986) ...................................................................................... 15

*In re Crown Corp.,*
    679 F.2d 774 (9th Cir. 1982) ........................................................................................ 16

*In re Curlew Valley Assocs.,*
    14 B.R. 506 (Bankr. D. Utah 1981) .............................................................................. 15

*Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.),*
    492 F.2d 793 (9th Cir. 1974) ........................................................................................ 15

*Ewell v. Diebert (In re Ewell),*
    958 F.2d 276, 280 (9th Cir. 1992) ................................................................................ 17

*In re Financial News Network, Inc.,*
    931 F.2d 217 (2d Cir. 1991) ......................................................................................... 16

*In re Lionel Corp.,*
    722 F.2d 1063 (2d Cir. 1983) .................................................................................. 14, 15

*Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.),*
    No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) ..................... 17

*In re Marrose Corp.,*
    Nos. 89 B 12171 (CB) to 89 B 12179 (CB), 1992 WL 33848 ..................................... 16

*In re Moore,*
    110 B.R. 924 (Bankr. C.D. Cal. 1990) ......................................................................... 14

*Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),*
    147 B.R. 650, 657-58 (S.D.N.Y. 1992) ........................................................................ 16

*In re Pisces Leasing Corp.,*
    66 B.R. 671 (E.D.N.Y. 1986) ....................................................................................... 17

*In re Sassoon Jeans, Inc.,*
    90 B.R. 608 (S.D.N.Y. 1988) ....................................................................................... 17

*In re Rock Indus. Machinery Corp.,*
    572 F.2d 1195 (7th Cir. 1978) ...................................................................................... 17

*Walter v. Sunwest Bank (In re Walter),*
    83 B.R. 14, (B.A.P. 9th Cir. 1988) ......................................................................... 14, 15

**Statutes**

11 U.S.C. § 363(b) ................................................................................................................. 2, 14
11 U.S.C. § 363(f) ...................................................................................................................... 2
11 U.S.C. § 363(m) ..................................................................................................................... 2
11 U.S.C. § 365 ........................................................................................................................... 2
28 U.S.C. § 157 ........................................................................................................................... 5
28 U.S.C. § 157(b)(2) ................................................................................................................. 5
28 U.S.C. § 1334 ......................................................................................................................... 5
28 U.S.C. § 1408 ......................................................................................................................... 5
28 U.S.C. § 1409 ......................................................................................................................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  **TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE,**

2  **MEMBERS, SECURED CREDITORS, CREDITORS HOLDING THE TWENTY LARGEST**

3  **UNSECURED CLAIMS, PARTIES THAT HAVE FILED REQUESTS FOR SPECIAL**

4  **NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

5     **PLEASE TAKE NOTICE THAT** Escom, LLC, a Delaware limited liability company,

6  debtor and debtor in possession herein (the "Debtor"), has requested a hearing (the "Sale Procedures

7  Hearing") on shortened notice[2] before the Honorable Geraldine Mund in Courtroom 303, 21041

8  Burbank Boulevard, Woodland Hills, California to consider its motion (the "Motion") for an order

9  substantially in the form attached to the Motion (the "Sale Procedures Order"), pursuant to sections

10 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

11 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

12    (a) Approving the proposed sale procedures and bid protections, including a possible break-

13 up fee, substantially in the form set forth below (the "Sale Procedures") in connection with the

14 proposed sale of substantially all of the Debtor's assets including (i) the internet domain "sex.com"

15 (the "Domain") and (ii) the two trademark registrations for the Domain (the "Trademarks" and

16 jointly with the Domain, the "Property"), as described more fully on **Exhibit A** hereto, free and clear

17 of all liens, claims, interests and encumbrances whatsoever, pursuant to sections 363(b), (f) and (m)

18 and 365 of the Bankruptcy Code with interests attaching to the proceeds of the sale with the same

19 validity and priority as existed immediately prior to the sale;

20    (b) Authorizing the Debtor to employ Sedo.com LLC ("Sedo") as its marketing and sales

21 agent in accordance with that certain Exclusive Brokerage Agreement dated May 15, 2010 (the

22 "Brokerage Agreement") pertaining to the marketing and sale of the Property, a redacted version of

23 which is attached hereto as **Exhibit B**;[3] and

24    (c) Granting such other relief as is fair and equitable.

25    **PLEASE TAKE FURTHER NOTICE THAT**, at the conclusion of the sale process

26 described in the Sales Procedures (the "Sale Process"), the Debtor will request a hearing to obtain

27

28 [2] The Debtor has requested the hearing be held on June 29, 2010, at 10:00 a.m.
   [3] The Debtor has concurrently filed a motion to file the Brokerage Agreement under seal.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

1  the Court's approval of the sale of the Property (the "Sale Hearing") pursuant to sections 363(b), (f)

2  and (m) and 365 of the Bankruptcy Code, to the person or entity making the highest and best offer

3  for the Property or the highest bid at auction, as the case may be, in accordance with the Sales

4  Procedures (the "Buyer"); and such other relief as is fair and equitable.

5        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9075-1,

6  any response, written or oral, to the Motion may be presented at or before the time of the hearing on

7  the Motion.  All written responses to the Motion should be filed with the Clerk of the Court for the

8  San Fernando Valley Division at 21041 Burbank Blvd., Woodland Hills, California 91367 with a

9  courtesy copy delivered to the Chambers of Judge Mund and should be served upon: (a) Debtor's

10  proposed counsel – Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1100, Los

11  Angeles, CA 90067-1225, Attn: Jeffrey W. Dulberg, fax: (310) 201-0760, e-mail:

12  jdulberg@pszjlaw.com; (b) counsel to the Managers and Petitioning Parties – (i) DOM Partners

13  LLC, (x) Windels Marx Lane & Mittendorf, LLP, 156 West 56th St. New York, NY 10019, Attn:

14  Alan Nisselson/Scott Matthews, fax: (212) 262-1215, e-mail: anisselson@windelsmarx.com,

15  smatthews@windelsmarx.com, and (y) Nossaman LLP, 445 So. Figueroa Street, 31st Floor, Los

16  Angeles, CA 90071, Attn: Allan H. Ickowitz/John Kim, fax: (213) 612-7801, e-mail:

17  aickowitz@nossaman.com, jkim@nossaman.com; (ii) Washington Technology Associates, LLC,

18  iEntertainment, Inc., and AccountingMatters.comLLC, (x) Law Office of Susan I. Montgomery,

19  1925 Century Park East, Suite 2000, Los Angeles, CA 90067, fax: 310-556-8905, e-mail:

20  susan@susanmontgomerylaw.com; and (c) the Office of the United States Trustee.  Pursuant to

21  Local Bankruptcy Rule 9013-1(a)(11), the failure to timely assert opposition may be deemed by the

22  Court to be consent to the granting of the relief requested in the Motion.

23        **WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (a) approving

24  the proposed Sale Procedures and bid protections; (b) authorizing the Debtor to employ Sedo to

25  market and sell the Property on the Debtor's behalf in accordance with the terms of the Brokerage

26  Agreement; (c) authorizing payment of a Break-Up Fee (as defined below), if applicable, to a

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Stalking Horse Bidder, to the extent one is named, on the terms and conditions set forth in the

2    Agreement and the Sale Procedures; and (d) granting such other relief as is fair and equitable.

3

4    Dated:    June 22, 2010        PACHULSKI STANG ZIEHL & JONES LLP

5

6                  By    */s/ Jeffrey W. Dulberg*

                         Jeffrey W. Dulberg

7                        Gabrielle A. Rohwer

                       [Proposed] Attorneys for Escom LLC,

8                        Debtor and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

The Debtor operates and maintains the Domain "sex.com" and the Debtor's sole business asset is the Domain and its related assets.  In the exercise of its reasonable business judgment, and at the direction of its managers, the Debtor has determined that the sale of the Property in accordance with the Sale Procedures set forth herein will maximize the value of these assets for the benefit of the Debtor's estate.  The Debtor has enlisted the services of Sedo, a firm with expertise in the marketing of internet domains, for this purpose.  The Motion seeks approval of the Sale Procedures and authorization for the Debtor to employ Sedo in accordance with the terms of the Brokerage Agreement.  The Debtor respectfully submits that the sale of the Property in accordance with the Sale Procedures, subject to approval at the Sale Hearing, will maximize its value for the benefit of the Debtor's estate and creditors.

## II.
## STATEMENT OF FACTS

### A.    Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of this Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    Background

Escom, LLC, the debtor herein, was formed in 2006 to operate a website with the domain name "sex.com".  The Debtor is governed by three managers pursuant to the terms of the Fourth Amended and Restated Limited Liability Company Agreement of Escom, LLC (the "Operating Agreement").  Those managers are DOM Partners LLC ("DOM"), Washington Technology Associates, LLC ("WTA"), and Domain Name Acquisition Group ("DNAG" and, collectively with DOM and WTA, the "Managers").  According to the terms of the Operating Agreement, the majority of actions taken outside the ordinary course of business must be approved by a unanimous vote of the Managers.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Del Anthony Polikretis ("Anthony") is the Debtor's Chief Executive Officer and sole

2    employee. Anthony has run the Debtor's day-to-day operations, including management of the

3    website and all business functions, since March 2007. *See* Anthony Declaration.

4    At its inception, the Debtor was funded by secured loans from DOM and WTA. The Debtor

5    borrowed $3,000,000 from DOM secured by a blanket lien on the Debtor's assets. The Debtor

6    borrowed $5,000,000 from WTA also secured by a blanket lien on the Debtor's assets which shares

7    priority *pari passu* with DOM. Finally, in August 2007, iEntertainment, Inc. ("iEntertainment"),

8    waived its rights under a Linking Agreement with the Debtor in exchange for $2,500,000 which was

9    paid by Debtor in the form of a note which obligation is secured by a blanket lien subordinate to

10    those of DOM and WTA (DOM, WTA and iEntertainment, collectively, the "Secured Lenders").

11    The Debtor has been in default of its obligations to DOM and WTA under their notes since January

12    2009. The Debtor has been in default under iEntertainment's note since August 2008.

13    Without paying debt service to the Secured Lenders, the Debtor presently maintains a

14    revenue-generating, cash flow-positive operation. As a result, the Debtor has approximately

15    $200,000 of cash on hand. However, the Debtor is presently over-leveraged and unable to satisfy its

16    obligations to its Secured Lenders.

17    **C.    Bankruptcy Filing**

18    On March 17, 2010 (the "Petition Date"), (i) WTA, (ii) iEntertainment, and (iii) Accounting

19    Matters.com, LLC, a Maryland limited liability company ("AM," collectively with WTA and

20    iEntertainment, the "Petitioning Creditors") filed an involuntary petition for relief under chapter 11

21    of the Bankruptcy Code. On June 21, 2010, this Court entered an order for relief [Docket No. 61].

22    The Debtor operates its business and manages its affairs as a debtor in possession pursuant to

23    sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been

24    appointed in this chapter 11 case.

25    **D.    Events Following the Filing of the Involuntary Petition**

26    On April 21, 2010, the Court issued an *Order to Show Cause Why a Chapter 11 Trustee*

27    *Should Not Be Appointed in the Case* (the "OSC"). The hearing on the OSC was continued twice.

28    In the interim period, the Secured Lenders, the Managers, and the Petitioning Creditors were able to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   reach a settlement of their dispute regarding the manner in which this case should proceed, which

2   settlement was memorialized in an agreement dated May 18, 2010 by and among such parties (the

3   "Settlement Agreement"). A copy of the Settlement Agreement is attached as Exhibit A to the

4   stipulation relating to the proposed sale of the Property (the "Stipulation"), filed on May 20, 2010

5   [Docket No. 52].

6          Among other things, the Settlement Agreement fixed the amount and priority of claims

7   against the estate by the Secured Lenders and Petitioning Creditors as follows:

8          (a)    pursuant to that certain Secured Promissory Note by the
       Debtor in favor of WTA dated January 12, 2006 (the "WTA Note")
9      and the corresponding Security Agreement of even date therewith
       (the WTA Security Agreement" and, together with the WTA Note,
10     the "WTA Loan Dos"), as of April 30, 2010, WTA holds an allowed
       claim against the Debtor in the aggregate sum of $6,799,281.79,
11     which is comprised of the principal amount of $5,000,000.00,
       accrued unpaid interest and late fees in the amount of $1,709,293.53,
12     and costs, expenses, attorneys' fees and disbursements payable to
       WTA under the WTA Loan Docs as of April 30,2010 in the amount
13     of $89,988.26, and which claim is secured by a valid, enforceable,
       first priority security interest and lien in and to all assets of the
14     Debtor, including the Domain Name and the Trademarks;

15         (b)    pursuant to that certain Secured Promissory Note issued by the
       Debtor in favor of DOM dated January 12, 2006 (the "DOM Note")
16     and the corresponding Security Agreement of even date therewith
       (the "DOM Security Agreement: and, together with the DOM Note,
17     the "DOM Loan Docs"), as of April 30, 2010, DOM holds an allowed
       claim against the Debtor in the aggregate sum of $4,500,427.11,
18     which is comprised of the principal amount of $3,000,000.00,
       accrued unpaid interest and late fees in the amount of $1,009,622.73,
19     and costs, expenses, attorneys' fees and disbursement payable to
       DOM under the DOM Loan Docs as of April 30, 2010 in the amount
20     of $490,804.38, and which claim is secured by a valid, enforceable,
       first priority security interest and lien in and to all assets of the
21     Debtor, including the Domain Name and the Trademarks;

22         (c)    pursuant to that certain Secured Promissory Note issued by the
       Debtor in favor of iEntertainment dated August 1, 2007 (the
23     "iEntertainment Note") and the corresponding Security Agreement of
       even date therewith (the Security Agreement of even date therewith
24     (the "iEntertainment Security Agreement" and, together with the
       iEntertainment Note, the "iEntertainment Loan Docs"), as of April
25     30, 2010, iEntertainment holds an allowed claim against the Debtor in
       the aggregate sum of $3,577,264.61, which is comprised of the
26     principal amount of $2,500,000.00, accrued unpaid interest and late
       fees in the amount of $1,029,919.64, and costs, expenses, attorneys'
27     fees and disbursements payable to iEntertainment under the
       iEntertainment Loan Docs as of April 30, 2010 in the amount of
28     $47,344.97, and which claim is secured by a valid enforceable,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

second priority security interest and lien in and to all assets of the Debtor, including the Domain Name and the Trademarks;

(d)      pursuant to that certain Services Agreement between AM and Debtor executed in December 2008 (the "AM Agreement"), AM holds an allowed claim as of April 30, 2010 against the Debtor in the aggregate sum of $9,100.00, which claim is an unsecured claim validly owed by the Debtor arising out of pre-petition bookkeeping services provided by AM to Debtor; and

(e)      the WTA Note, the DOM Note and the iEntertainment Note shall continue to accrue interest at the default rate after the Effective Date until paid in accordance with the terms of their respective loan documents (the total amount owed under such notes at any given time being the amounts set forth above, plus the amount of additional accrued but unpaid interest plus the amount of additional Collection Costs (as defined in the Notes) arising after April 30, 2010.

The Settlement Agreement also gave Anthony the authority necessary to operate the Debtor as a debtor in possession under the Managers' direction.

On June 9, 2010, this Court entered an order approving the *Stipulation* [Docket No. 57].[4] According to the terms of the Settlement Agreement, the Debtor must file the instant motion seeking authority to sell the Property and employ Sedo as its exclusive marketing and sales agent no more than three (3) business days following entry of an order for relief in this case and must seek such relief on an expedited basis.

## III.
## SALE PROCEDURES

In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction.  The Debtor has retained Sedo as the marketing and sales agent for the Property and seeks authority to conduct a private sale and, if necessary in accordance with the terms described below, a private and/or public auction (the "Auction").  Good cause exists to expose the Property to a private sale and, if necessary, an Auction and to approve the Sale Procedures.  The Debtor cannot fully meet its debt obligations based on its monthly revenue. Selling the Property is the best way to maximize its value for the benefit of the estate.  A sale of the Property conducted substantially in accordance with the Sale Procedures will enable the Debtor to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[4] The order stated that the Stipulation shall not waive the rights of any creditor or other party in interest to object to the allowance, amounts, status or priority of the claims set forth in Paragraph II.D. above or to assert any claims against the Debtor, all such rights being expressly reserved.

1    obtain the "highest and best offer" for the Property, thereby maximizing its value. Those procedures

2    provide as follows:

### 1.    Property to be Sold Free and Clear of Interests

4    The Property shall be sold free and clear of all liens, claims, rights, interests and

5    encumbrances whatsoever, in accordance with sections 363(b) and (f) and 365 of the Bankruptcy

6    Code, with all then-existing liens, claims, rights, interests and encumbrances ("Interests") (i) to

7    attach to the net proceeds of the sale of the Property with the same validity and priority as existed

8    prior to the sale as set forth in the Settlement Agreement or as otherwise determined by the Court or

9    (ii) to be paid in full. The Secured Lenders shall have the right to credit bid the full amount of their

10    allowed secured claim during the Private Sale Period, a Private Auction or a Public Auction, as each

11    of those terms is defined below.

### 2.    Notice of the Motion

13    The Debtor proposes to serve a copy of the Sale Procedures Order, within five (5) days after

14    the entry of the Sale Procedures Order, by first-class mail, postage prepaid, upon (i) the Office of the

15    United States Trustee; (ii) all known parties in interest, including all known creditors; and (iii) all

16    entities on the 2002 Service List as of such date.

17    Any party in interest that wishes to receive a copy of this Motion shall make such request in

18    writing to Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, Suite 1100, Los

19    Angeles, California 90067, Attn: Jeffrey W. Dulberg. Prior to being permitted to conduct any due

20    diligence, a party may be required to execute a confidentiality agreement in form and substance

21    satisfactory to the Debtor and/or Sedo.

### 3.    Marketing/Sale Process:

23    The Debtor has proposed a sales and marketing process in consultation with Sedo. Sedo's

24    initial effort will consist of a 90 day marketing/sale plan for the Property in accordance with the

25    Brokerage Agreement (the "Private Sale Period"). Sedo will begin this process on the first business

26    day following receipt of notice from the Debtor that the Bankruptcy Court has entered the Sale

27    Procedures Order. The plan will consist in general of the following process, as further described in

28    the Brokerage Agreement: (i) Phase 1 shall consist of worldwide outreach and pre-qualification of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interested parties; (ii) Phase 2 shall consist of negotiations with qualified parties to either secure a buyer for a sale of the Property (which buyer may be required to serve as a Stalking Horse (as defined below)), and/or narrow the field to a group of finalists; (iii) Phase 3 shall consist of consummation of a sale (with or without a Stalking Horse), and/or a private auction of finalists conducted on terms determined by Debtor, at the direction of the Managers and Sedo (a "Private Auction"), provided, however, that Sedo must obtain the Debtor's prior written consent to hold a Private Auction and the minimum bid for such Private Auction shall be an amount equal to the highest firm offer previously received by Sedo, unless the Debtor agrees otherwise; and (iv) the Private Sale Period will end after 90 days. If the Brokered Sales Reserve Price (as defined in the Brokerage Agreement) is met, and the prospective buyer meets the Qualification Requirements (as defined below), the Debtor and such prospective buyer shall enter into an asset purchase agreement memorializing the transaction and the terms and conditions upon which such Buyer's bid was made and accepted (the "Asset Purchase Agreement"), which Asset Purchase Agreement shall be subject to Court approval. If the Brokered Sales Reserve Price has not been met during the Private Sale Period for any reason whatsoever, Sedo will hold a public auction that shall be completed within 30 days of the end of the Private Sale Period with an Auction Minimum Bid required of all bidders (the "Public Auction").[5] Sedo shall use commercially reasonable efforts to market and publicize the Public Auction as widely as practicable beginning on the first day following completion of the Private Sale Period. The Public Auction shall be conducted with all bid amounts disclosed to all auction participants throughout the Public Auction (i.e. as opposed to Sedo collecting sealed bids and announcing a winner). In addition, Sedo will provide the identities of all bidders to the Debtor as soon as they are known to Sedo.

    4.    **Public Auction**

        In the event a Public Auction is necessary, the Public Auction shall be conducted no later than thirty days after the completion of the Private Sale Period, the time and location of which shall be determined by the Debtor and Sedo and widely publicized along with any additional terms

---

[5] In order to avoid unnecessary "bid chilling" the Debtor is not disclosing the amount of any applicable minimum bids or reserves. Rather, the Debtor has separately filed a motion seeking approval to file the complete and unredacted Sedo Agreement under seal so that the Court can be apprised of this information.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   regarding the manner in which the Public Auction will be conducted, including, but not limited to,

2   the terms of participating via online access, the minimum bid and deposit requirements, minimum

3   bid increments, and anti-fraud/collusion mechanisms (collectively, the "Auction Terms"). The

4   Public Auction will be an 'open format' such that all participants are contemporaneous to be made

5   aware of the amount of each Qualified Bid (as defined below) that is submitted.  To the extent

6   unanimously approved by the Managers, the Debtor reserves the right to cancel the Public Auction at

7   any time and seek to move forward with a private sale.

8        Promptly upon the conclusion of the Public Auction, and subject to Court approval, the

9   Qualified Bidder making the highest bid (the "Winning Bid") shall be declared the winner (the

10   "Winning Bidder") and shall complete and sign an Asset Purchase Agreement.

11        Each person or entity that wishes to participate in the Public Auction (if one is held), first

12   must provide (a) a deposit of $1,000,000 to be held in escrow by Sedo (a "Deposit"), (b)

13   information, acceptable to the Debtor, which demonstrates that such prospective participant (i) has

14   sufficient cash on hand or a binding financial commitment from an established and financially sound

15   financial institution to ensure such Bidder's ability to meet its commitments pursuant to its bid and

16   to close the transaction within the time frame established, and (ii) has the legal capacity to complete

17   the sale, and (c) sufficient indicia (in the opinion of the Debtor) that the person who will be

18   submitting bids on behalf of such prospective participant is legally empowered, by power of attorney

19   or otherwise to bid on their behalf and complete and sign binding and enforceable Asset Purchase

20   Agreement which shall be submitted to the Court for approval.

21        For these purposes, the term "Qualified Bid" shall mean a bid placed by a person or entity

22   that has satisfied all the conditions set forth above (the "Qualification Requirements") and has

23   agreed in writing to (a) be bound by the Auction Terms, and (b) if such person or entity's bid is the

24   Winning Bid, enter into an Asset Purchase Agreement and consummate the transaction by

25   purchasing the entire Property upon the entry of an order approving the same (the "Sale Order").

26   Any participant making a Qualified Bid shall be deemed to be a "Qualified Bidder".

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**5.    Bid Protections; Backup Bidders**

The Debtor may execute one or more asset purchase agreements with prospective buyers (during and/or at the conclusion of the Private Sale Period (including any Private Auction) and/or the Public Auction, and including with Winning Bidders) that state such prospective buyer's right to purchase the Property is subject to the absence of an alternate buyer willing to pay a higher price coming forward to do so within a specified period of time, (each, a "Stalking Horse Transaction," and each such prospective buyer, a "Stalking Horse"). Recognizing a Stalking Horse's expenditure of time, energy and resources, and that the Stalking Horse provides a "floor bid" with respect to the Property, the Debtor proposes to provide certain bidding protections to those prospective buyers selected as Stalking Horse bidders by the Debtor in its sole discretion, at the direction of the Managers. In addition, the Debtor may enter into an Asset Purchase Agreement with a back-up prospective buyer (a "Back-up Buyer") at the conclusion of the Private Sale Period (including the Private Auction) or the Public Auction, which would take effect if the transaction with the primary buyer is not consummated within a period of time specified by Debtor in its sole discretion (a "Back-up Transaction"). If a Public Auction is held, the Auction Terms will require the bidder making the second highest Qualified Bid to sign an Asset Purchase Agreement and serve as a Backup Buyer.

**a.    Break-Up Fee**

The Debtor may agree to pay a Stalking Horse a break-up fee in an amount up to, and no more than, $25,000 in the event that: (i) such Stalking Horse is not approved by the Bankruptcy Court as the purchaser of the Property on which it bid; (ii) the Stalking Horse is not in default of its obligations under the Asset Purchase Agreement; and (iii) the Property on which it bid is thereafter sold to another person or entity for consideration in excess of the purchase price provided for in the Stalking Horse's Asset Purchase Agreement, notwithstanding the Stalking Horse's willingness and ability to consummate the transactions contemplated by the Asset Purchase Agreement. In such a circumstance, the payment shall be made to the Stalking Horse promptly following closing of a sale of the Property to such other higher bidding buyer (the "Break-Up Fee").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### b.    Overbid Protection

Any bid(s) submitted by a party or parties other than the Stalking Horse must be in an amount that is sufficient to pay the Break-Up Fee and result in additional consideration to the Debtor's estate (as compared to the purchase price offered by such Stalking Horse), after payment of the Break-Up Fee, of at least $10,000, as determined by the Debtor, at the direction of the Managers, in their sole and absolute discretion.

### 6.    Objections

Objections to the Sale Procedures in accordance with the terms requested in this Motion shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position and shall be filed with the Court on or before the date fixed by the Court at the Sale Procedures Hearing, and shall be served so as to be received by that same date and time on (a) Debtor's counsel – Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1100, Los Angeles, CA 90067-1225, Attn: Jeffrey W. Dulberg, Esq., fax (310) 201-0760, e-mail: jdulberg@pszjlaw.com; (b) counsel to the Managers and Petitioning Creditors; and (c) the Office of the United States Trustee. The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion at the Hearing on this Motion.

### 7.    Court Approval at Sale Hearing

The Sale Hearing will be held before the Honorable Geraldine Mund, United States Bankruptcy Judge, on the date and at the time designated by the Court, or at such time thereafter as counsel may be heard. The Sale of the Property will be subject to, among other things, the entry of the Sale Order by the Bankruptcy Court approving the Sale to the proposed Buyer or, to the extent the Court requires any proposed Buyer to serve as a Stalking Horse for any final sale effort or auction, to the ultimate buyer emerging from such process (in which case, such new buyer will then be deemed the "Proposed Final Buyer"). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date. If the Proposed Final Buyer fails to consummate a Court-approved sale for any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  reason whatsoever, the Debtor shall be entitled to consummate the Back-up Transaction with the

2  Back-up Buyer.

3      **8.    Return of Deposit**

4      Deposits of all Qualified Bidders shall be held in an interest-bearing account until the third

5  business day after the Sale Order is entered, after which time the Deposits of all bidders other than

6  those of the Proposed Final Buyer and any Back-up Buyer(s) shall be returned.  If the Proposed Final

7  Buyer fails to consummate a Court-approved sale because of a material breach or failure to perform

8  on the part of such Proposed Final Buyer, the Debtor shall be entitled to retain such Proposed Final

9  Buyer's Deposit.

10     **9.    Merit of Proposed Sale Procedures**

11     The Debtor believes that the foregoing Sale Procedures provide an appropriate framework for

12  selling the Property and will enable the Debtor to review, analyze and compare all bids received to

13  determine which bid is in the best interests of its estate and creditors.  Moreover, for the reasons

14  discussed below, the Debtor believes the Sale Procedures, including the Sale Terms and Break-Up

15  Fee, are fair and reasonable under the circumstances.  Therefore, the Debtor respectfully requests

16  that this Court approve the Sale Procedures in full.

17                          **IV.**
                        **ARGUMENT**
18

19  A.    **Cause Exists to Approve the Sale of the Property Under Section 363(b) of the**

20        **Bankruptcy Code**

21     The Debtor, after notice and a hearing, may use, sell, or lease property, other than in the

22  ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business

23  judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In re*

24  *Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon P'ship*, 55 B.R. 520 (Bankr. S.D. Cal.

25  1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988)

26  ("[T]here must be some articulated business justification for using, selling, or leasing the property

27  outside the ordinary course of business . . . whether the proffered business justification is sufficient

28  depends on the facts of the case.  As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

1   consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse

2   interests of the debtor, creditors and equity holders, alike.").

3          In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction

4   involving property of the estate generally should be approved where the debtor can demonstrate

5   "some articulated business justification for using, selling, or leasing property outside of the ordinary

6   course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In*

7   *re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley*

8   *Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).  Among other factors, courts should consider

9   the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the

10  buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in

11  the debtor's possession. *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding*

12  *Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of

13  the debtor's assets would be in the best interest of the estate in light of impending deterioration of

14  market value of debtor's assets).  Store closing or liquidation sales are a common occurrence in

15  Chapter 11 cases involving debtors in the retail business. *In re Ames Dept. Stores, Inc.*, 136 BR 357,

16  359 (Bankr. S.D.N.Y. 1992)("going out of business" sales are an important part of "overriding

17  federal policy requiring debtor to maximize estate assets").

18          The Debtor and the Secured Lenders, DOM, WTA and iEntertainment, have agreed that

19  selling the Property is the only way to end the stalemate as described in the Settlement Agreement.

20  Accordingly, the Debtor has determined that the sale of the Property, as described herein, is in the

21  best interests of its estate.

22  **B.**     **This Court Is Empowered to Approve Reasonable Sales Procedures and Bidding**

23          **Protections and Should Approve the Sale Procedures**

24          In general, bidding incentives encourage a potential purchaser to invest the requisite time,

25  money and effort to negotiate with a debtor and perform the necessary due diligence attendant to the

26  acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.

27  Historically, bankruptcy courts have approved bidding incentives similar to the bidding protections

28  proposed here under the "business judgment rule," which proscribes judicial second-guessing of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    actions of a corporation's board of directors taken in good faith and in the exercise of honest

2    judgment. *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989)

3    (bidding incentives may "be legitimately necessary to convince a 'white knight' to enter the bidding

4    by providing some form of compensation for the risks it is undertaking"); *In re Marrose Corp.*, Nos.

5    89 B 12171 (CB) to 89 B 12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15, 1992)

6    (stating that "agreements to provide breakup fees or reimbursement of fees and expenses meant to

7    compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more

8    favorable offers."); *see also Official Committee of Subordinated Bondholders v. Integrated*

9    *Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 657-58 (S.D.N.Y. 1992)

10    (establishing three basic factors for determining whether to permit breakup fees in bankruptcy:

11    whether "the relationship of the parties who negotiated the break-up fee [is] tainted by self-dealing

12    or manipulation," whether the "fee hamper[s], rather than encourage[s], bidding," and whether "the

13    amount of the fee [is] unreasonable relative to purchase price"), appeal dismissed, 3 F.3d 49 (2d Cir.

14    1993).

15        Courts have routinely held that when the sale of substantially all assets in bankruptcy is done

16    on a competitive bidding basis, it is appropriate to require parties submitting competing bids to

17    submit bids that exceed existing bids by a specified minimum amount. *See, e.g., In re Financial*

18    *News Network, Inc.*, 931 F.2d 217 (2d Cir. 1991) (requiring that overbids exceed the initial offer by

19    9.5 percent); *In re Crown Corp.*, 679 F.2d 774 (9th Cir. 1982) (requiring that overbids exceed the

20    initial offer by 4.9 percent).

21        The Debtor submits that sufficient cause exists to approve the proposed Sale Procedures,

22    Break-Up Fee(s) and other bid protections. Specifically, a Stalking Horse will have expended, and

23    likely will continue to expend, considerable time, money and energy pursuing the sale, will have

24    engaged in extended and lengthy, good faith negotiations, and will provide a floor bid for the

25    Property that the Stalking Horse will have offered to purchase. The Agreement with such Stalking

26    Horse will be the culmination of these efforts.

27        Moreover, the bid protections will provide a material inducement for, and a condition of, the

28    Stalking Horse's entry into the Agreement. The Debtor believes that they are fair and reasonable in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  view of, among other things, (a) the intensive analysis, due diligence investigation, and negotiation

2  undertaken by the Stalking Horse in connection with the purchase, and (b) the fact that the efforts of

3  the Stalking Horse will have increased the chances that Debtor will receive the highest and best offer

4  for the Property, by establishing a bid standard or minimum for other bidders, and serving as a

5  catalyst for other potential or actual bidders, to the benefit of the estate, creditors, and all other

6  parties in interest.

7     A Stalking Horse likely will be unwilling to commit to hold open its offer to purchase the

8  Property under the terms of the Agreement unless the Sales Procedures Order authorizes the Debtor

9  to provide the bid protections and authorizes payment of the Break-Up Fee as an expense of

10  administration.  The Debtor thus requests that the Court approve the bid protections included in the

11  Sale Procedures and payment of the Break-Up Fee.

12  **C.**     **Good Faith**

13     The Debtor intends to show at the Sale Hearing that the Asset Purchase Agreements with the

14  Proposed Final Buyer and with any Back-up Buyer(s) were negotiated at arms-length and in good

15  faith after other parties and their qualifications and proposals were considered, and thus that this

16  Court should find that the Proposed Final Buyer and any Back-up Buyer(s) acted in good faith

17  within the meaning of section 363(m) of the Bankruptcy Code.  *See generally Ewell v. Diebert (In re*

18  *Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*,

19  No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of

20  good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage

21  of other bidders"); *see also In re Sassoon Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In*

22  *re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R.

23  671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an

24  actor's] conduct during the sale proceedings" (*quoting In re Rock Indus. Machinery Corp.*, 572 F.2d

25  1195, 1998 (7th Cir. 1978)).

26  **D.**     **Employment of Sedo and Approval of the Brokerage Agreement**

27     The Debtor, at the direction of its members, has entered into the Brokerage Agreement with

28  Sedo, a redacted copy of which is attached hereto as **Exhibit B**.  The Brokerage Agreement provides

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   for Sedo to act as the Debtor's exclusive agent to market and sell the Property.  While the Debtor

2   cannot publish the Brokerage Agreement as it contains information which might permit parties to

3   control bidding or otherwise negatively impact the outcome, a complete copy of the Brokerage

4   Agreement will be provided to all known parties in interest under the condition that such party

5   agrees to restrict its publication and maintain its confidentiality.

6       The Debtor seeks court approval to retain Sedo under section 327(a) of the Bankruptcy Code

7   and approval of the fee arrangements with Sedo as set forth in the Brokerage Agreement pursuant to

8   section 328 of the Bankruptcy Code.   Sedo will be retained to execute the Sale Procedures as

9   described above.

10       Sedo is a nationally recognized leader in domain sales and is well qualified to perform the

11   services described in the Brokerage Agreement and this Motion.  As more fully set forth in the

12   concurrently filed Declaration of Tim Schumacher (the "Schumacher Declaration"), Sedo's Chief

13   Executive Officer, Sedo has vast experience conducting such sales.

14       To the best of the Debtor's knowledge, and except as disclosed in the Anthony Declaration

15   and the Schumacher Declaration, Sedo has not represented the Debtor, its creditors, equity security

16   holders, or any other parties in interest, or their respective attorneys, in any matter relating to the

17   Debtor or its estate and is otherwise disinterested.

18   **V.**
**CONCLUSION**

19

20       For all the foregoing reasons, the Debtor respectfully requests that the Court enter an order

21   (a) approving the proposed Sale Procedures and bid protections; (b) authorizing the Debtor to

22   employ Sedo to market and sell the Property on the Debtor's behalf in accordance with the terms of

23   the Brokerage Agreement; (c) authorizing payment of a Break-Up Fee, if applicable, to a Stalking

24   Horse Bidder, to the extent one is named, on the terms and conditions set forth in the Agreement and

25   the Sale Procedures; and (c) granting such other relief as is fair and equitable..

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

Dated:    June 22, 2010                    PACHULSKI STANG ZIEHL & JONES LLP

3                                    By    /s/ Jeffrey W. Dulberg

4                                          Jeffrey W. Dulberg
                                           Gabrielle A. Rohwer

5                                          [Proposed] Attorneys for Escom LLC,
                                           Debtor and Debtor in Possession

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## Description of Property

Internet Domain Name – "sex.com"

U.S. Federal Trademarks – No. 3284052 & No. 3122247

## EXHIBIT B

### Redacted Brokerage Agreement

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA



## Exclusive Brokerage Agreement

Date: May 18, 2010

"Domain(s)": sex.com

Domain Owner/Authorized Representative ("Domain Seller")
    Company: Escom, LLC
    Contact Persons: ███████████████████████

███████████

## PARTIES

THIS PROFESSIONAL BROKERAGE AGREEMENT (together with the Exhibits attached hereto, this "Agreement") made as of the 17th day of May, 2010  by and between Sedo.com, LLC, a Massachusetts limited liability company with its principal place of business at 161 First Street, 4th Floor, Cambridge, MA 02142, U.S.A. ("Sedo") and Escom, LLC, a Delaware limited liability company ("Domain Seller") as the actual domain owner or as the authorized representative of the domain owner for the internet domain sex.com ("Domain") and the two trademark registrations for "sex.com" issued by the United States Patent and Trademark Office (registration #s 3284052 and 3122247; each a "Trademark", and together the "Trademarks"; collectively with the Domain, the "Assets").

## BACKGROUND

WHEREAS, on March 17, 2010, certain creditors of Domain Seller filed an involuntary petition under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") against Domain Seller commencing case number 10-bk-13001-GM with the Bankruptcy Court (the "Case");

WHEREAS, all secured creditors of Domain Seller and Domain Seller itself wish for Domain Seller to retain Sedo as its exclusive broker to market and sell the Assets in accordance with the terms of this Agreement;

WHEREAS Sedo wishes to provide professional brokerage services to Domain Seller in order to market and sell the Assets in
 exchange for a commission of the Sale price and in accordance with the terms of this Agreement;

AND WHEREAS the Bankruptcy Court's approval is required in order for Domain Seller to enter into this Agreement and for Sedo to market and sell the Assets in accordance herewith;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

## TERMS AND CONDITIONS

### 1. Definitions

#### 1.1. "Sale"

A Sale is the voluntary transfer or exchange of any interest in the Assets or the voluntary creation of the obligation to convey any interest in the Assets including a contract or lease. A Sale may result from either an Auction or through a Brokered Sale. Notwithstanding anything in this Agreement to the contrary, a Sale shall not be deemed to have taken place unless and until it has been approved by the Bankruptcy Court pursuant to the entry of an order authorizing the transaction and reaching a finding that the purchaser is a good faith purchaser under § 363 (m) of the Bankruptcy Code (a "363 Order").

#### 1.2. "Auction"

The process of buying and selling the Assets by offering the Assets up for Sale by taking bids, and selling the Assets to the highest bidder.

#### 1.3. "Sale Terms"

Sale Terms are the specific terms pursuant to which Sedo is being retained to market and sell the Assets, which terms are attached as Exhibit A hereto and incorporated herein by this reference.  In the event of a conflict between any of the terms or conditions set forth in the Sale Terms and those of any other part of this Agreement, the Sale Terms shall govern.

#### 1.4. Reserve Prices

##### 1.4.1. "Auction Minimum Bid"

Auction Minimum Bid refers to the required minimum opening bid for any potential buyer to participate in the Auction, should an Auction be necessary. The Auction Minimum Bid pertains to a Sale by public Auction pursuant to paragraph (A)iv of the Sale Terms only. The Auction Minimum Bid shall be ███████████████
███████████.

##### 1.4.2. "Brokered Sales Reserve Price"

Brokered Sales Reserve Price refers to the lowest price that Sedo is authorized to accept for the sale of the Assets on behalf of the Domain Seller.  The Sales Reserve Price is not disclosed to any interested buyers or other third parties.  The Sales Reserve Price pertains to Brokered Sales only. The initial Brokered Sales Reserve Price shall be ████████████████████████████████████████████████████████

#### 1.5. Effective Date

The Effective Date of this Agreement shall be the date on which the Bankruptcy Court enters one or more orders approving the Domain Seller's retention of Sedo pursuant to this Agreement and the sales and marketing procedures described herein, including the Sale Terms (the "Retention Order(s)").



#### 1.7. Stalking Horse

A Stalking Horse is a potential buyer of the Assets who executes an asset purchase agreement with Domain Seller that (a) states such buyer's right to purchase the Assets is subject to an alternate buyer willing to pay a higher price not coming forward to do so within a specified period of time, and (b) may provide for a breakup fee to be paid to the original buyer in the event such buyer is outbid by a subsequent buyer. Sedo acknowledges and agrees that Domain Seller and/or the Bankruptcy Court may require that any buyer to whom Domain Seller purports to sell the Assets as a result of Sedo's efforts hereunder serve as a Stalking Horse, and that in any case Sedo must obtain Domain Seller's prior approval (and possibly that of the Bankruptcy Court) in order to pursue a Stalking Horse transaction.

### 2. Term and Termination

#### 2.1. Term

Unless earlier terminated by the completion of the Sale of the Assets or as otherwise provided in this Agreement, this Agreement will remain in effect from the Effective Date until the completion of the sales process set forth in the Sale Terms and, if such process yields a buyer, consummation of the Sale transaction and the Bankruptcy Court's entry of a 363 Order (the "Term").

#### 2.2. Termination

Either party may terminate this Agreement in the event of a material breach of the other party that remains uncured after ten (10) days written notice. Sedo shall continue to assist in the completion of any transaction for which compensation is payable to Sedo under section six (6) of this Agreement.

## 3. Exclusive Brokerage

Domain Seller agrees, in exchange for the consideration described herein, that for the Term of this Agreement Sedo shall have the exclusive right to broker in the name of the Domain Seller for the Sale of the Assets.

### 3.1. Agency Relationship

Sedo shall act as the agent for Domain Seller with regard to an actual or potential Sale of the Assets. Depending upon the circumstances, and unless agreed otherwise in writing, it is understood that Sedo may act as an agent for both Domain Seller and the buyer of the Assets ("Buyer"). Sedo hereby discloses, and Domain Seller hereby consents to Sedo acting as a dual agent representing both Domain Seller and Buyer, provided at all times Sedo acts in good faith an in the best interest of Domain Seller. Sedo acknowledges and agrees that for any agreement, approval and/or consent of Domain Seller that may be required hereunder to be effective, the same first must be confirmed in writing to Sedo by both WTA and DOM (email from the representatives designated in the Sale Terms shall suffice) or by the Bankruptcy Court.

### 3.2. Competition

Domain Seller understands that Sedo has numerous other listings, and promotes transactions involving other domain names registered to third parties, some of which third party domain names may be deemed to compete with Domain Seller and the Domain. Domain Seller consents to Sedo's representation of such other entities and Domain Seller's activities pertaining to such other Internet domain names both during and after the Term of this Agreement, and shall not deem such activities to be a breach of this Agreement, its terms or any representations made herein or in connection thereof.

## 4. Rights and Duties of Sedo

(a) Sedo shall provide marketing, brokerage and escrow services to Domain Seller in accordance with the Sale Terms. Sedo shall exercise reasonable skill and care for Domain Seller.

(b) Sedo, as Domain Seller's agent, shall promote the interests of Domain Seller with the utmost good faith, loyalty and fidelity, including, but not limited to:

(i)     Contacting potential buyers of the Assets , seeking a price and terms which are acceptable to Domain Seller and in accordance with the Sale Terms; including seeking additional offers to purchase the Assets while the Assets are subject to a Stalking Horse contract for Sale;

(ii)    Disclosing to Domain Seller adverse material facts actually know by Sedo;

(iii)   Counseling Domain Seller as to any material benefits or risks of a transaction actually known by Sedo;

(iv)    Accounting in a timely manner for all money and property received;

(v)     Participating in weekly conference calls with ███████████████████████████████ to discuss the status of marketing and sale efforts; and

(vi)    To the extent necessary, testifying at one or more hearings in the Bankruptcy Court in order to assist Domain Seller in securing the Retention Order(s) and/or the 363 Order.

(c) Sedo shall not disclose the following information without the informed consent of Domain Seller:

(i)     What the motivating factors are for Domain Seller to sell the Assets;

(ii)    Any material information about Domain Seller unless the disclosure is required by law or failure to disclose such information would constitute fraud.

(d) Domain Seller shall not be vicariously liable for the acts of Sedo that are not approved, directed or ratified by Domain Seller, .

(e) When Domain Seller and a buyer in a transaction are working with different brokerage agents employed by Sedo, upon written notification to both Domain Seller and buyer, said brokerage agents shall continue to conduct themselves consistent with the brokerage relationships they have established with their respective clients.

(f) Except to the extent the Bankruptcy Court requires otherwise, Sedo reserves the right to accept payment on behalf

of Domain Seller in respect of a commission due under this Agreement from a buyer of the Assets in accordance with the commission schedule set forth in this Agreement.

(g) If Domain Seller significantly hinders Sedo's search for buyers or violates the provisions of section 5(a), then Sedo may terminate this Agreement upon written notification.

(h) This Agreement does not cover any further legal advice or drafting of contracts.

**5.  Rights and Duties of Domain Seller**
   (a) Domain Seller may not use the service of another broker regarding the Assets during the Term of this Agreement. Domain Seller agrees to forbid anyone whom it may have previously hired to broker the Assets to continue to do so.  Domain Seller agrees to refer to Sedo all material information known to Domain Seller before and during the Term of this Agreement relevant to the Sale of the Assets, including, but not limited to, all leads, offers, contacts, etc.  In addition, Domain Seller agrees to refer to Sedo all communications received in any form from other brokers during the Term of this Agreement.

   (b) Domain Seller represents and warrants to Sedo that he/she is the lawful and exclusive registrant of the Domain, that he/she is able to dispose of the Domain, that no other party has any right to registration of the Domain, and that no third party has made any claim against the Domain, including that the Domain violates another party's trademark or other intellectual property rights.  Should the Domain infringe upon the rights of a third party, Domain Seller agrees to indemnify Sedo for any reasonable damages or costs incurred.  Domain Seller hereby expressly declares that it is authorized to sign this Agreement, provided the Agreement shall not become effective unless and until the Bankruptcy Court enters the Retention Order(s).

   (c) Domain Seller agrees to take all steps reasonably necessary to secure a 363 Order authorizing Domain Seller to proceed with the Sale of the Assets if the best offer Sedo is able to secure for a Sale of the Assets after completing the Private Sale Period (as defined in the Sale Terms") is equal to or greater than the Brokered Sale Reserve Price noted at the top of page one (1) of this Agreement (as the same may be modified pursuant to the Sale Terms).  If Sedo is not able to secure an offer for a Sale of the Assets after completing the Private Sale Period that is equal to or greater than the Brokered Sale Reserve Price, then Sedo shall attempt to sell the Assets at a public Auction in accordance with the Sale Terms.

   (d) Domain Seller agrees that any violation of the provisions of sections 5(a) and/or 5(b) of this Agreement will be considered a substantial breach of this Agreement by Domain Seller.  If there is such a breach Sedo may, at its option, terminate this Agreement immediately upon written notice.  In addition, Sedo reserves the right to recover from Domain Seller reasonable attorney's fees, which may arise due to the violation of the terms of this Agreement.

**6.  Commission to Sedo**
Domain Seller agrees that any compensation which is conditioned upon the Sale of the Assets shall be earned by Sedo as set forth herein without any discount or allowance for any efforts made by Domain Seller or by any other person in connection with the Sale of the Assets, except as otherwise set forth in the Sale Terms .   Under no circumstances shall Sedo share any of the Commission Fee with any Insider (as defined in the Sale Terms).

   **6.1. Amount**
      In consideration of the services to be performed by Sedo, Domain Seller agrees to pay Sedo a transaction fee equal to the percentage (the "Commission Percentage") of the gross value of the revenue received for the Sale of Assets hereunder set forth in the Sale Terms, regardless of the form of payment thereof, including cash, cash equivalence, equity, stock or otherwise ("Commission Fee").  The Commission Fee shall be payable by cash or wire transfer, is to be paid in US currency, shall be due and payable upon consummation of the Sale and entry of the 363 Order by the Bankruptcy Court, regardless whether or not such Sale was conducted with the assistance of Sedo or whether or not such Sale occurred subsequent to the expiration of the Term of this Agreement if involving anyone with whom Sedo served as the source of the contact.  Notwithstanding anything to the contrary herein, this provision shall not apply in the event of a termination of this Agreement pursuant to Section 2.2.

   **6.2. Basis for Calculation of Commission**
      In the case of term-structured or other unusual sales agreements (i.e., profit-sharing) Sedo's commission will be based on the sum of all payments.

**7.  Miscellaneous Provisions**
   **7.1. Confidentiality**
      Both parties are obligated to keep any and all information that becomes known through the course of performing this Agreement (e.g. information relating to each other's business practices) confidential.  The Domain Seller is not allowed to give any information regarding potential buyers to any third party, except as may be required of

the Debtor by the Bankruptcy Court or Prevailing law... Upon completion of the Sale of the Assets, Sedo reserves the right to disclose and publicize the Sales price and Domain Name of such Domain; provided such disclosure is not prohibited by the terms of any applicable Sale contract with the Buyer and/or by the Bankruptcy Court. Sedo will not publish the seller's name or any confidential details. These obligations remain in effect even after this contract has expired or has been terminated by either party. Both parties guarantee that their employees, partners, and other relevant parties exposed to such information will also keep such information confidential.

### 7.2. Force Majeure

Each of the parties hereto shall be excused from the performance of its obligation under this Agreement in the event such performance is prevented by Force Majeure, and such performance shall be excused for so long as the condition constituting Force Majeure continues and for five (5) business days thereafter. For the purposes of this Agreement, "Force Majeure" shall mean causes beyond the control of a particular party, including without limitation, unforeseen circumstances causing the disruption of services provided through Sedo's website; disruption of services provided via the Internet; disruption of access to Sedo's website; acts of God; acts, regulations or laws of any government; war; civil commotion; destruction of service facilities or materials by fire, earthquake or storm; epidemics; labor strikes; and failure of common carriers.

### 7.3. Entire Agreement

This Agreement contains the entire agreement between the parties concerning its subject matter and replaces all other agreements between them, whether written or oral, concerning this subject matter.

### 7.4. Amendments

No amendment of this Agreement shall be valid unless set forth in a writing signed by both parties and, to the extent necessary, approved by the Bankruptcy Court.

### 7.5. Severability

If a provision in these general terms and conditions or any other contractual provision in full or in part should be invalid or rendered invalid, the validity of the rest of this contract will not be affected. The ineffective provision shall be replaced by a valid one that approaches the ineffective provision as closely as possible.

### 7.6. Governing Law

This Agreement shall be governed by and construed in accordance with the domestic laws of The State of Delaware without giving effect to any choice-of-law or conflict-of-law provision or rule (whether of the State of Delaware or of any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

### 7.7. Dispute Resolution

The Parties hereby agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes or controversies arising out of or relating to this Agreement and any legal proceedings therein shall be conducted in English. Sedo and Domain Seller agree that they will be subject to personal jurisdiction in the Bankruptcy Court in any dispute involving this Agreement.

## SIGNATURE

IN WITNESS of their acceptance of the above terms and conditions, the parties by themselves or by their duly authorized representatives have signed and dated this Agreement as follows:

**Escom, LLC (Domain Seller)**

By: _____    Date _____

**Sedo.com, LLC**

By: _____    Date _____

By: _____    Date _____

# EXHIBIT A
## SALE TERMS

**(A) Marketing/Sale Process:** Sedo's initial effort will consist of a 90 day marketing/sale plan for the Assets in accordance with the Proposal for Exclusive Offering dated May 15, 2010, attached hereto as Exhibit B (the "Proposal"). Sedo will begin this process on the first business day following receipt of notice from Domain Seller that the Bankruptcy Court has entered the Retention Order(s). The plan will consist generally of the following process, as further described in the Proposal:

**i.** Phase 1 shall consist of worldwide outreach and pre-qualification of interested parties.

**ii.** Phase 2 shall consist of negotiations with qualified parties to either secure a Buyer for a Sale of the Assets (which Buyer may be required to serve as a Stalking Horse), and/or narrow the field to a group of finalists.

**iii.** Phase 3 shall consist of further negotiation using a Stalking Horse, consummation of a Sale, and/or a private auction of finalists (a "Private Auction"), provided, however, that Sedo must obtain Domain Seller's prior written consent to hold a Private Auction and the minimum bid for such Private Auction shall be an amount equal to the highest firm offer previously received by Sedo, unless Domain Seller agrees otherwise.

**iv.** The Private Sale Period will end after 90 days. If the Brokered Sales Reserve Price has not been met during the Private Sale Period for any reason whatsoever, Sedo will hold a public Auction that shall be completed within 30 days of the end of the 90-day Private Sale Period with the Auction Minimum Bid of ▮▮▮▮▮▮ required of all bidders (the "Public Auction"). Sedo shall use commercially reasonable efforts to market and publicize the Public Auction as widely as practicable beginning on the 1st day following completion of the 90-day Private Sale Period. The Public Auction shall be conducted with all bid amounts disclosed to all auction participants throughout the Auction (i.e. as opposed to Sedo collecting sealed bids and announcing a winner). In addition, the identities of all bidders shall be disclosed to Domain Seller as soon as known to Sedo.

**(B)** 

**ii.** Any Sale prior to end of the Private Sale Period requires written consent of Domain Seller regardless of amount.

**iii.** The Private Sale Period shall end at the conclusion of 90 days notwithstanding interest from any potential buyer to purchase the Assets and any closing of a transaction arrived at during the Private Sale Period and/or Public Auction shall be completed within ten (10) days of the entry of the 363 Order, except insofar as any delay beyond such period is caused by the relevant registrar(s), in which case the parties agree to use commercially reasonable efforts to complete the transaction as quickly as possible.

**(C) Nature of Sale:** The Domain and the Trademarks will be marketed and sold together as a bundled asset "as is", and "where is", but free and clear of all liens, claims and encumbrances.

**(D) Commission Percentage:**



**(E) Correspondence:** Sedo shall ensure that the representatives designated below of Domain Seller's senior secured creditors (WTA and DOM) are copied on all electronic and written correspondence from Sedo to Domain Seller:

DOM Partners, LLC:                          Washington Technology Associates, LLC:

# EXHIBIT B
# PROPOSAL

SEE PROPOSAL FOR EXCLUSIVE OFFERING
PROVIDED BY KATHY NIELSEN OF SEDO TO BRIAN LEVENTHAL
VIA EMAIL ON 5/12/10

| In re:<br>ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-13001-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described _____ **NOTICE OF MOTION AND MOTION FOR ORDER (A) APPROVING SALE PROCEDURES AND BID PROTECTIONS, INCLUDING BREAK-UP FEE, IN CONNECTION WITH SALE OF DOMAIN NAME AND TRADEMARKS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING EMPLOYMENT OF SEDO.COM, LLC, AS MARKETING AND SALES AGENT PURSUANT TO EXCLUSIVE BROKERAGE AGREEMENT; AND (C) GRANTING RELATED RELIEF** _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 22, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On __ **June 22, 2010,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 22, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

VIA FEDEX
Honorable Geraldine Mund
U.S. States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 22, 2010  Mary de Leon | /s/ Mary de Leon |
|---|---|
| Date                    Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re:<br>ESCOM, LLC | | CHAPTER 11 |
| --- | --- | --- |
| | Debtor(s). | CASE NUMBER 1:10-bk-13001-GM |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

**1:10-bk-13001-GM Notice will be electronically mailed to:**

Jeffrey W Dulberg on behalf of Debtor Escom LLC
jdulberg@pszjlaw.com

Michael I Gottfried on behalf of Creditor Nothin But Net LLC
mgottfried@lgbfirm.com, msaldana@lgbfirm.com

Peter J Gurfein on behalf of Creditor Nothin But Net LLC
pgurfein@lgbfirm.com

John W Kim on behalf of Creditor DOM Partners LLC
jkim@nossaman.com

Susan I Montgomery on behalf of Interested Party Courtesy NEF
susan@simontgomerylaw.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

**II.      SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

**1:10-bk-13001-GM Notice will be sent via U.S. mail to:**

Office of the United States Trustee
S Margaux Ross
21051 Warner Ctr Ln, Ste 115
Woodland Hills, CA  91367

Accounting Matters
600 Jefferson St., #320
Rockville, MD  20852

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

32

| In re:<br>ESCOM, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:10-bk-13001-GM |

III.    **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**

**1:10-bk-13001-GM Notice will be sent via Email to:**

Debtor
Escom LLC
23480 Park Sorrento, Suite 206B
Calabasas, CA  91302
Attn: Del Anthony
Email: del@escomllc.com

Counsel for DOM Partners LLC
Alan Nisselson/Scott Matthews
Windels Marx Lane & Mittendorf, LLP
156 West 56th St.
New York, NY 10019
Email: smatthews@windelsmarx.com
       anisselson@windelsmarx.com

Del Polikretis
PO Box 1175
Agoura Hills, CA  91376
Email: del@escomllc.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**