1   Jeffrey W. Dulberg (CA Bar No. 181200)
    PACHULSKI STANG ZIEHL & JONES LLP
2   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California 90067-4100
3   Telephone: 310/277-6910
    Facsimile: 310/201-0760
4   E-mail:    jdulberg@pszjlaw.com

5

    Attorneys for Escom, LLC
6   Debtor and Debtor in Possession

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                 **SAN FERNANDO VALLEY DIVISION**

11  In re:                          Case No.: 1:10-bk-13001-GM

12  **ESCOM, LLC,**[1]                Chapter 11

13                      Debtor.      **NOTICE OF MOTION AND MOTION FOR
                                     ORDER (I) AUTHORIZING DEBTOR TO SELL
14                                   ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
                                     AND ENCUMBRANCES, (II) APPROVING
15                                   ASSET PURCHASE AGREEMENT WITH
                                     SUCCESSFUL BIDDER CLOVER HOLDINGS
16                                   LIMITED, (III) AUTHORIZING PAYMENT OF
                                     SALE COMMISSIONS FROM SALE PROCEEDS,
17                                   AND (IV) GRANTING RELATED RELIEF;
                                     DECLARATIONS OF DEL ANTHONY
18                                   POLIKRETIS AND JEREMIAH JOHNSTON IN
                                     SUPPORT THEREOF**

19
                                     [Application for Order Shortening Time Filed
20                                   Concurrently Herewith; Hearing Requested No Later
                                     Than October 27, 2010]
21
                                     Date:  TBD
22                                   Time:  TBD
                                     Place: Courtroom 303
23                                          21041 Burbank Blvd.
                                            Woodland Hills, California 91367
24

25

26

27

28  ———————————
    [1]  The Debtor is a Delaware limited liability company, Tax I.D. # 20-038609. The Debtor's address is PO Box 1410
    Agoura Hills, CA 91376.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  **TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE,**

2  **ALL PARTIES IN INTEREST, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

3        **PLEASE TAKE NOTICE THAT** that a hearing will be held before the Honorable

4  Geraldine Mund, United States Bankruptcy Judge, on the motion of Escom, LLC, a Delaware

5  limited liability company, debtor and debtor in possession herein (the "Debtor"), for an order

6  approving Clover Holdings Limited ("Clover") as buyer for the purchase of substantially all of the

7  Debtor's assets as authorized by the order (the "Sale Procedures Order"), entered on June 30, 2010

8  [Docket #81], approving the Debtor's *Motion For Order (A) Approving Sale Procedures and Bid*

9  *Protections, Including Break-up Fee, In Connection With Sale of Domain Name and Trademarks,*

10  *Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing Employment of*

11  *Sedo.com, LLC, as Marketing and Sales Agent Pursuant to Exclusive Brokerage Agreement; and (c)*

12  *Granting Related Relief* (the "Sale Procedures Motion"). <u>**The Debtor has concurrently filed an**</u>

13  <u>**application for entry of an order shortening time (the "OST Application") for a hearing on this**</u>

14  <u>**Motion and has requested, for the reasons stated herein, that the Motion be heard no later**</u>

15  <u>**than October 27, 2010. It is imperative to the estate that this transaction close promptly.**</u>

16        Via the Sale Procedures Motion, the Debtor obtained approval of sale procedures (the "Sale

17  Procedures") for the marketing and sale of substantially all of the Debtor's assets including (i) the

18  internet domain "sex.com" (the "Domain") and (ii) two trademark registrations for the Domain (the

19  "Trademarks" and jointly with the Domain, the "Assets"), free and clear of all liens, claims, interests

20  and encumbrances whatsoever, pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code with

21  interests attaching to the proceeds of the sale with the same validity and priority as existed

22  immediately prior to the sale. The Debtor further obtained Court approval to employ Sedo.com,

23  LLC ("Sedo") as its marketing and sales agent in accordance with that certain Exclusive Brokerage

24  Agreement dated May 15, 2010 (the "Brokerage Agreement").

25        The Sale Procedures also provided that the Debtor may enter into an Asset Purchase

26  Agreement with a back-up buyer (a "Back-up Buyer") at the conclusion of the Private Sale Period

27  (as defined therein) which would take effect if the transaction with the primary buyer is not

28  consummated (a "Back-up Transaction"). The Sale Procedures Motion notified all parties that at the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  conclusion of the sale process described in the Sales Procedures, the Debtor would request a hearing

2  to obtain the Court's approval of the sale of the Assets (the "Sale Hearing") (i) to the person or entity

3  making the highest and best offer for the Assets or the highest bid at auction, as the case may be, in

4  accordance with the Sale Procedures (the "Buyer") or (ii) to the extent necessary, a Back-up Buyer.

5      Following entry of the Sale Procedures Order and in accordance with the Sale Procedures

6  approved thereby, Sedo acted as the Debtor's sales and marketing agent with respect to the Assets.

7  Sedo actively marketed the Assets and solicited potential purchasers through a variety of methods

8  during the Private Sale Period.  Sedo undertook an extensive and elaborate campaign utilizing a wide

9  range of media outlets, including email marketing, online display advertisements, radio

10 advertisements, use of Sedo's global public relation teams, printed sales collateral, event

11 sponsorships, and highly targeted social media marketing.  This comprehensive marketing initiative

12 produced a number of interested parties, approximately one dozen of whom signed non-disclosure

13 agreements to permit them to conduct due diligence.  Sedo ultimately conducted lengthy discussions

14 with many of these parties regarding the Assets and evaluated several offers during the Private Sale

15 Period.

16     At the conclusion of the Private Sale Period, in an exercise of its business judgment and at

17 the direction of its managers, the Debtor selected Clover as the Buyer and, subject to Court approval,

18 entered into the Asset Purchase Agreement attached hereto as **Exhibit "A"** in connection with the

19 proposed sale (the "Clover APA").  Upon consideration of a variety of factors, the Debtor concluded

20 that the Clover offer was the "highest and best" offer for the Assets and a sale pursuant to the Clover

21 APA is in the best interests of the Debtor's estate and all stakeholders.  In a further exercise of its

22 business judgment and at the direction of its managers, the Debtor has reserved its right to select a

23 Back-up Buyer for a Back-Up Transaction at a later time, which transaction would take effect only if

24 the transaction with the Buyer is not consummated.

25     Accordingly, the Debtor has scheduled the captioned Sale Hearing (as called for by the Sale

26 Procedures Motion) for the purpose of obtaining Court approval of (a) the transaction contemplated

27 by the Clover APA, (b) payment to Sedo of its sale commission as provided in the Brokerage

28 Agreement and the Sale Procedures Motion, and (c) distribution of the net sale proceeds

1    immediately following the closing of the sale to the Secured Lenders (as defined below), in

2    accordance with the terms of the Stipulation and accompanying Settlement Agreement approved by

3    Court order entered on June 9, 2010 [Docket No. 57].

4        **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon the accompanying

5    Memorandum of Points and Authorities, the Declarations of Del Anthony Polikretis and Jeremiah

6    Johnston, the Exhibits attached hereto, and the entire record of this case.

7        **PLEASE TAKE FURTHER NOTICE** that, if you wish to oppose this Motion, you must

8    file a written response with the Court and serve a copy of it upon the undersigned counsel for the

9    Debtor no later than the date set by the Court.  The failure to timely file responsive papers to the

10    Motion may be deemed to be consent to the relief requested.

11        **WHEREFORE**, the Debtor respectfully requests that the Court enter an order (a) approving

12    Clover as the Buyer and authorizing the Debtor to enter into and effectuate the Clover APA in

13    accordance with its terms;  (b) authorizing the Debtor to pay Sedo its sale commissions as set forth

14    in the Brokerage Agreement; (c) authorizing the Debtor to distribute the net sale proceeds upon the

15    closing to the Secured Lenders; and (d) granting such other relief as is fair and equitable.

16

17    Dated:    October 18, 2010          PACHULSKI STANG ZIEHL & JONES LLP

18                                By     */s/ Jeffrey W. Dulberg*
                                        _____
19                                      Jeffrey W. Dulberg
                                        Attorneys for Escom LLC,
20                                      Debtor and Debtor in Possession

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

The Debtor previously obtained Court approval of Sale Procedures for the marketing and sale of substantially all of the Debtor's assets free and clear of all liens, claims, interests and encumbrances whatsoever, pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code with interests attaching to the proceeds of the sale with the same validity and priority as existed immediately prior to the sale. The Debtor further obtained Court approval to employ Sedo.com, LLC as its marketing and sales agent.

The Debtor has marketed the assets accordingly and has concluded, in an exercise of its business judgment, that a sale of the assets to Clover will maximize their value for the benefit of the Debtor's estate. In the Debtor's business judgment, Clover has made the highest and best offer to purchase the Property. The Debtor seeks approval of Clover as the buyer of the assets and related relief accordingly.

## II.
## STATEMENT OF FACTS

### A.   Background

Escom, LLC, the debtor herein, was formed in 2006 to operate a website with the domain name "sex.com". The Debtor is governed by three managers pursuant to the terms of the Fourth Amended and Restated Limited Liability Company Agreement of Escom, LLC (the "Operating Agreement"). Those managers are DOM Partners LLC ("DOM"), Washington Technology Associates, LLC ("WTA"), and Domain Name Acquisition Group, LLC ("DNAG" and, collectively with DOM and WTA, the "Managers"). According to the terms of the Operating Agreement, the majority of actions taken outside the ordinary course of business must be approved by a unanimous vote of the Managers.

Del Anthony Polikretis ("Anthony") is the Debtor's Chief Executive Officer and sole employee. Anthony has run the Debtor's day-to-day operations, including management of the website and all business functions, since March 2007.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      At its inception, the Debtor was funded by secured loans from DOM and WTA. The Debtor

2    borrowed $3,000,000 from DOM secured by a blanket lien on the Debtor's assets. The Debtor

3    borrowed $5,000,000 from WTA also secured by a blanket lien on the Debtor's assets which shares

4    priority *pari passu* with DOM. Finally, in August 2007, iEntertainment, Inc. ("iEntertainment"),

5    waived its rights under a Linking Agreement with the Debtor in exchange for $2,500,000 which was

6    paid by Debtor in the form of a note which obligation is secured by a blanket lien subordinate to

7    those of DOM and WTA (DOM, WTA and iEntertainment, collectively, the "Secured Lenders").

8    The Debtor has been in default of its obligations to DOM and WTA under their notes since January

9    2009. The Debtor has been in default under iEntertainment's note since August 2008.

10      Without paying debt service to the Secured Lenders, the Debtor presently maintains a

11    revenue-generating, cash flow-positive operation. As a result, the Debtor had approximately

12    $200,000 of cash on hand as of the commencement of this case. However, the Debtor is presently

13    over-leveraged and unable to satisfy its obligations to its Secured Lenders.

14      On March 17, 2010, (i) WTA, (ii) iEntertainment, and (iii) Accounting Matters.com, LLC, a

15    Maryland limited liability company (the "Petitioning Creditors"), filed an involuntary petition for

16    relief under chapter 11 of the Bankruptcy Code. On June 21, 2010, this Court entered an order for

17    relief [Docket No. 61]. The Debtor operates its business and manages its affairs as a debtor in

18    possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or

19    committee has been appointed in this chapter 11 case.

20      On April 21, 2010, the Court issued an *Order to Show Cause Why a Chapter 11 Trustee*

21    *Should Not Be Appointed in the Case* (the "OSC"). The hearing on the OSC was continued twice.

22    In the interim period, the Secured Lenders, the Managers, and the Petitioning Creditors were able to

23    reach a settlement of their dispute regarding the manner in which this case should proceed, which

24    settlement was memorialized in an agreement dated May 18, 2010 by and among such parties (the

25    "Settlement Agreement"). A copy of the Settlement Agreement is attached as Exhibit A to the

26    stipulation relating to the proposed sale of the Property (the "Stipulation"), filed on May 20, 2010

27    [Docket No. 52].

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   On June 9, 2010, this Court entered an order approving the Stipulation [Docket No. 57].

2   Among other things, under the terms of the Settlement Agreement, the Debtor was required to file

3   the Sale Procedures Motion, seeking authority to sell the Assets (defined below).  On June 22, 2010,

4   the Debtor filed the Sale Procedures Motion, and at a hearing on June 29, 2010, the Court granted

5   the Sale Procedures Motion.

6   **B.**      **Proposed Buyer Transaction**

7   Via the Sale Procedures Motion, the Debtor obtained approval of sale procedures (the "Sale

8   Procedures") for the marketing and sale of substantially all of the Debtor's assets including (i) the

9   internet domain "sex.com" (the "Domain") and (ii) two trademark registrations for the Domain (the

10  "Trademarks" and jointly with the Domain, the "Assets"), free and clear of all liens, claims, interests

11  and encumbrances whatsoever, pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code with

12  interests attaching to the proceeds of the sale with the same validity and priority as existed

13  immediately prior to the sale.  The Debtor further obtained Court approval to employ Sedo.com,

14  LLC ("Sedo") as its marketing and sales agent in accordance with that certain Exclusive Brokerage

15  Agreement dated May 15, 2010 (the "Brokerage Agreement").

16  The Sale Procedures Motion also provided that the Debtor may enter into an Asset Purchase

17  Agreement with a back-up buyer (a "Back-up Buyer") at the conclusion of the Private Sale Period

18  (as defined therein) which would take effect if the transaction with the primary buyer is not

19  consummated (a "Back-up Transaction").  The Sale Procedures Motion notified all parties that at the

20  conclusion of the sale process described in the Sales Procedures, the Debtor would request a hearing

21  to obtain the Court's approval of the sale of the Assets (the "Sale Hearing") (i) to the person or entity

22  making the highest and best offer for the Assets or the highest bid at auction, as the case may be, in

23  accordance with the Sale Procedures (the "Buyer") or (ii) to the extent necessary, a Back-up Buyer.

24  Following entry of the Sale Procedures Order and in accordance with the Sale Procedures

25  approved thereby, Sedo acted as the Debtor's sales and marketing agent with respect to the Assets.

26  Sedo actively marketed the Assets and solicited potential purchasers through a variety of methods

27  during the Private Sale Period.  Sedo undertook an extensive and elaborate campaign utilizing a wide

28  range of media outlets, including email marketing, online display advertisements, radio

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   advertisements, use of Sedo's global public relation teams, printed sales collateral, event

2   sponsorships, and highly targeted social media marketing. This comprehensive marketing initiative

3   produced a number of interested parties, approximately one dozen of whom signed non-disclosure

4   agreements to permit them to conduct due diligence. Sedo ultimately conducted lengthy discussions

5   with many of these parties regarding the Assets and evaluated several offers during the Private Sale

6   Period.

7       At the conclusion of the Private Sale Period, in an exercise of its business judgment and at

8   the direction of its managers, the Debtor selected Clover as the Buyer and, subject to Court approval,

9   entered into the Asset Purchase Agreement attached hereto as **Exhibit "A"** in connection with the

10  proposed sale (the "Clover APA"). Upon consideration of a variety of factors, the Debtor concluded

11  that the Clover offer was the "highest and best" offer for the Assets and a sale pursuant to the Clover

12  APA is in the best interests of the Debtor's estate and all stakeholders. In a further exercise of its

13  business judgment and at the direction of its managers, the Debtor has reserved its right to select a

14  Back-up Buyer for a Back-Up Transaction at a later time, which transaction would take effect only if

15  the transaction with the Buyer is not consummated.

16                          **II.**

17                       **ARGUMENT**

18  A.    **This Court Is Empowered To Approve The Proposed Sale Upon Finding That The
           Debtor Has Satisfied The Business Judgment Test**
19
        Section 363(b)(1) of the Bankruptcy Code provides:
20

21          The trustee, after notice and a hearing, may use, sell, or lease, other than in the
            ordinary course of business, property of the estate.

22  11 U.S.C. § 363(b)(1). See In re Ames Dept. Stores, Inc., 136 B.R. 357, 359 (Bankr. S.D.N.Y.

23  1992). To obtain court approval to sell property under section 363(b) of the Bankruptcy Code, a

24  debtor need only show a legitimate business justification for the proposed action. See, e.g., Myers v.

25  Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re

26  Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Committee of Equity Security Holders v. Lionel

27  Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (same); Walter v. Sunwest Bank (In

28  re Walter), 83 B.R. 14, 19-20, (B.A.P. 9th Cir. 1988). A debtor's application of its sound business

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    judgment in the use, sale, or lease of property is subject to great judicial deference. See, e.g., In re

2    Moore, 110 B.R. 924 (Bankr. C.D. Cal. 1990); In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D.

3    Cal. 1985). As stated by the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals in

4    Walter, the bankruptcy court should consider all salient factors pertaining to the proposed transaction

5    and, accordingly, act to further diverse interests of the debtor, creditors and other constituencies.

6    Walter, 83 B.R. at 19-20 (citing Lionel). The factors a court should evaluate include, inter alia, the

7    consideration to be paid, the financial condition and needs of the estate, the qualifications of the

8    buyer, and whether a risk exists that the assets proposed to be utilized by the estate would decline in

9    value if simply left in the estate's possession. See Financial Associates v. Loeffler (In re Equity

10   Funding Corp.), 492 F.2d 793, 794 (9th Cir. 1974); In re Work Recovery, Inc., 202 B.R. 301 (Bankr.

11   D. Ariz. 1996).

12        In this case, the Debtor has satisfied the business judgment test because the proposed sale

13   will maximize the value of the Assets for the benefit of all stakeholders. As described above, the

14   Debtor retained Sedo for the purpose of marketing the Assets. As detailed in the Declaration of

15   Jeremiah Johnston, Sedo conducted an extensive marketing of the Assets including worldwide

16   outreach to hundreds of potential acquirers. As a result, the Debtor and all parties in interest can be

17   assured that the Assets will be sold for the best price available. Thus, the fairness and

18   reasonableness of the consideration to be received by the Debtor has been demonstrated by adequate

19   "market exposure" – the best means for establishing whether a fair and reasonable price is being

20   paid.

21        In addition, the proposed sale to Buyer was the product of arms-length, good faith

22   negotiations, in which the Debtor bargained for the maximum possible purchase price for the Assets.

23   The negotiations involved substantial time and energy by the parties and their professionals, and the

24   Clover APA reflects "give-and-take" and compromises by both sides. Under the circumstances, the

25   Debtor submit that the proposed sales are the result of good faith, arm's-length negotiations and that

26   Clover should be entitled to all of the protection of section 363(m) of the Bankruptcy Code, as

27   further addressed in the Sale Procedures Motion.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.      The Proposed Sale Satisfied The Requirements Of Section 363(f) Of The Bankruptcy
Code For A Sale Free And Clear Of Liens, Claims, And Interests**

Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than
> the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free
> and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be
> sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding,
> to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements

enumerated therein will suffice to warrant the sale of the Assets free and clear of all liens, claims,

rights, interests, and encumbrances as provided in the Sale Agreement (collectively, the "Interests").

See Citicorp Homeowners Services, Inc. v. Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtor

submits that each Interest can be satisfied by at least one of the five conditions of section 363(f) of

the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in

full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims

and defenses the Debtor may possess with respect thereto. The Debtor accordingly request that the

Assets be transferred to the Buyer free and clear of all Interests (except those that may be

contemplated in the Clover APA).

The Debtor believes that the parties asserting lien claims against any of the Assets (i.e., the

Secured Lenders) consent to the proposed sale free and clear of all Interests. The Debtor has served

all known purported lienholders with this Motion and will provide notice of the Sale Hearing when

scheduled as instructed by the Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

### III.
### <u>CONCLUSION</u>

3      For all the foregoing reasons, the Debtor respectfully requests that the Court enter an order

4  (a) approving Clover as the Buyer and authorizing the Debtor to enter into and effectuate the Clover

5  APA in accordance with its terms;  (b) authorizing the Debtor to pay Sedo its sale commissions as

6  set forth in the Brokerage Agreement; (c) authorizing the Debtor to distribute the net sale proceeds

7  upon the closing to the Secured Lenders; and (d) granting such other relief as is fair and equitable.

8  Dated:      October 18, 2010              PACHULSKI STANG ZIEHL & JONES LLP

9

10                                   By    /s/ Jeffrey W. Dulberg
                                           Jeffrey W. Dulberg
11                                         Attorneys for Escom LLC
                                           Debtor and Debtor in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

## DECLARATION OF DEL ANTHONY POLIKRETIS

3        I, Del Anthony Polikretis, declare:

4        1.        I am the President and Chief Executive Officer of Escom, LLC, the above captioned

5    alleged debtor (the "Debtor"). I have over ten years of experience in the internet/web

6    development/domain industry. I have been employed by the Debtor since March 2007. I have a

7    masters of business degree.

8        2.        I run the Debtor's day-to-day operations, including management of the website and

9    all business functions. All facts stated herein are known by me to be true through my own personal

10    knowledge and, therefore, I would and could competently testify thereto in a court of law if called

11    upon to do so. I make this declaration in support of the Debtor's Motion For Order (I) Authorizing

12    Debtor to Sell Assets Free and Clear Of Liens, Claims, and Encumbrances, (II) Approving Asset

13    Purchase Agreement with Successful Bidder Clover Holdings Limited, (III) Authorizing Payment of

14    Sale Commissions From Sale Proceeds, and (IV) Granting Related Relief (the "Motion").

15    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the

16    Motion.

17        3.        At the conclusion of the Private Sale Period, on the Debtor's behalf, along with the

18    Debtor's managers, I considered various bids to acquire the Assets. In an exercise of the Debtor's

19    business judgment and at the direction of its managers, the Debtor selected Clover as the Buyer and,

20    subject to Court approval, entered into the Asset Purchase Agreement attached hereto as Exhibit "A"

21    in connection with the proposed sale (the "Clover APA"). Upon consideration of a variety of

22    factors, on behalf of the Debtor, I concluded that the Clover offer was the "highest and best" offer

23    for the Assets and that a sale pursuant to the Clover APA is in the best interests of the Debtor's

24    estate and all stakeholders. In a further exercise of its business judgment and at the direction of its

25    managers, the Debtor has reserved its right to select a Back-up Buyer for a Back-Up Transaction at a

26    later time, which transaction would take effect only if the transaction with the Buyer is not

27    consummated.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.     The proposed sale to the Buyer was the product of arms-length, good faith negotiations, in which the Debtor bargained for the maximum possible purchase price for the Assets. The negotiations involved substantial time and energy by the parties and their professionals, and the Clover APA reflects "give-and-take" and compromises by both sides.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this _18_ day of October, 2010, at _Thousand Oaks_, California.

DEL ANTHONY POLIKRETIS

## DECLARATION OF JEREMIAH JOHNSTON

I, Jeremiah Johnston, declare:

1.     I am the COO/General Counsel of Sedo.com LLC ("Sedo").  Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (albeit my own or that gathered from others within my organization), my review of relevant documents, or my opinion based upon my experience.  If called upon to testify, I would testify to the facts set forth in this Declaration.  I make this declaration in support of the Debtor's Motion For Order (I) Authorizing Debtor to Sell Assets Free and Clear Of Liens, Claims, and Encumbrances, (II) Approving Asset Purchase Agreement with Successful Bidder Clover Holdings Limited, (III) Authorizing Payment of Sale Commissions From Sale Proceeds, and (IV) Granting Related Relief (the "Motion").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.     Following entry of the Sale Procedures Order and in accordance with the Sale Procedures approved thereby, Sedo acted as the Debtor's sales and marketing agent with respect to the Assets.  Sedo actively marketed the Assets and solicited potential purchasers through a variety of methods during the Private Sale Period.  Sedo undertook an extensive and elaborate campaign utilizing a wide range of media outlets, including email marketing, online display advertisements, radio advertisements, use of Sedo's global public relation teams, printed sales collateral, event sponsorships, and highly targeted social media marketing.  This comprehensive marketing initiative produced a number of interested parties, approximately one dozen of whom signed non-disclosure agreements to permit them to conduct due diligence.  Sedo ultimately conducted lengthy discussions with many of these parties regarding the Assets and evaluated several offers during the Private Sale Period.

3.     It is Sedo's opinion that the Clover APA represents the highest and best offer received for the Assets.  Sedo conducted an extensive marketing of the Assets including worldwide outreach to hundreds of potential acquirers.  As a result, the Debtor and all parties in interest can be

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

assured that the Assets will be sold for the best price available. Thus, the fairness and

reasonableness of the consideration to be received by the Debtor has been demonstrated by adequate

"market exposure" – the best means for establishing whether a fair and reasonable price is being

paid.

I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed this _18_ day of October, 2010, at _161 First St.,_

_Cambridge, MA._

JEREMIAH JOHNSTON

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

EXECUTION VERSION

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "*Agreement*") is made and entered into as of this 8th day of October, 2010, by and between Clover Holdings Limited, a company established under the laws of Saint Vincent ("*Buyer*"), and Escom, LLC, a Delaware limited liability company ("*Seller*").

Sedo.com LLC, a Massachusetts limited liability company ("*Domain Escrow Agent*" or "*Sedo*") shall be a party to this Agreement for purposes of Sections 3, 4, 5, 9, 10, 15, 16, 17, 18, 19, 20 and 21.

Each of Seller and Buyer confirms and acknowledges that:

A.     On March 17, 2010 (the "*Petition Date*"), certain creditors of Seller filed an involuntary petition for relief (the "*Bankruptcy Case*") against Seller pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "*Bankruptcy Code*"), before the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division) (the "*Bankruptcy Court*"), which case is captioned *In re Escom, LLC*, Case No. 1:10-bk-13001-GM; and

B.     On June 21, 2010, the Bankruptcy Court entered an order for relief in the Bankruptcy Case. Seller operates its business and manages its affairs as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Bankruptcy Case.

C.     On June 30, 2010, the Bankruptcy Court entered its *Order (A) Approving Sale Procedures And Bid Protections, Including Breakup Fee, In Connection With Sale Of Domain Name And Trademarks, Free And Clear Of All Liens, Claims, Encumbrances And Interests; (B) Authorizing Employment Of Sedo.Com, LLC, As Marketing And Sales Agent Pursuant To Exclusive Brokerage Agreement; And (C) Granting Related Relief* (the "*Sale Procedures Order*").

D.     It is intended that the acquisition of the Assets (as defined herein) shall be accomplished through the sale, transfer and assignment of the Assets by Seller to Buyer in a sale undertaken pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, except as provided herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree that:

1.     Definitions. For purposes of this Agreement, the following terms shall have the meaning specified in this Section 1.

"Business Day" means any day of the year on which national banking institutions in Los Angeles, California are open to the public for conducting business and are not required or authorized to close.

"Final Order" means an Order, judgment, or other decree of the Bankruptcy Court that has not been vacated, reversed, modified, amended, or stayed, and for which the time to further appeal or seek review or rehearing has expired.

"Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private).

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Registration Agreement" means that certain service agreement along with all other relevant schedules, including but not limited to Schedule A consisting of Additional Terms Applicable To Registrants Of Domain Names (Nswebaddress™), in place between Seller and Network Solutions, LLC (*the "Registrar"*) which governs the registration and maintenance of the Sex.com domain name and Schedule F consisting of the Registrant Name Change Agreement (the "***Registrant Name Change Agreement***") attached hereto as Exhibit 1.

"Sale Order" shall be an Order of the Bankruptcy Court approving, among other things, this Agreement and all of the terms and conditions hereof, approving the sale and assignment to Buyer of the Assets, and approving and authorizing Seller to consummate the transactions contemplated hereby.

2.    Purchase and Sale of Assets and Assumption of Liabilities. In accordance with the terms of the Registrant Name Change Agreement and the mechanism for transfer of the sole right to be the registrant of the domain name <Sex.com> contained therein, Seller hereby sells, transfers, assigns, conveys and delivers to Buyer, free and clear of all liens, claims and encumbrances, all of Seller's right, title and interest in and to (a) the domain name of <Sex.com>, including but not limited to the sole right to hold the registration thereof (the "***Domain Name***"); and (b) the trademark Sex.com, including the registrations for the same which are U.S. Reg. No. 3284052 and U.S. Reg. No. 3122247 and all of the goodwill symbolized and associated with the business for which the trademarks have been used (the "***Trademarks***," and together with the Domain Name and the rights and obligations under the Registration Name Change Agreement, the "***Assets***"). Buyer hereby accepts such transfer and assignment and will act in accordance with the terms of the  Registrant Name Change Agreement in order to effectuate the registrant name change for <Sex.com> with the Registrar. In the event that the Registrar refuses to act in accordance with the Registrant Name Change Agreement, or otherwise interefers with the transfer of the Domain Name, the Parties agree to seek relief from the Court in the form of an order (i) requiring non-party VeriSign to move the Domain Name to a different registrar of Domain Escrow Agent's selection and (ii) requiring such new non-party registrar to move the domain name into an account identified by Domain Escrow Agent which is exclusively controlled by Domain Escrow Agent. Buyer shall assume and become responsible for all liabilities relating to the Assets arising after the Closing Date and all liabilities relating to any and all amounts required to be paid by Buyer under this

Agreement as described herein (collectively, the "*Assumed Liabilities*"). Should costs arise in connection with the transfer of the Domain Name (e.g., registrar transfer and/or renewal fees), they will be construed as Assumed Liabilities and paid by Buyer, except to the extent they are assessed by Seller's registrar to unlock the Domain Name registration in preparation for it to be transferred, in which case they will be borne by Seller. Any fees assessed by banking institutions relating to the transfer of money from Buyer to Seller's Counsel (as defined below) will be borne by the Buyer, and any fees relating to the transfer of money from Seller's Counsel to Seller will be borne by the Seller. Except as provided herein, Buyer is not assuming any liability or obligation of Seller (or any predecessor of Seller or any prior owner of all or part of its business and assets) of whatever nature, whether presently in existence or arising hereafter, and all such liabilities and obligations shall be retained by and remain obligations and liabilities of Seller (all such liabilities and obligations not being assumed being herein referred to as the "*Excluded Liabilities*").

3.   Purchase Price; Deposit; Trademark Assignments.   In consideration of the transfer of the Assets to Buyer, Buyer will pay to Seller via Domain Escrow Agent an aggregate amount of Thirteen Million U.S. Dollars ($13,000,000) in immediately available funds (the "*Purchase Price*"). Buyer shall deliver to Domain Escrow Agent a deposit of One Million U.S. Dollars ($1,000,000) (the "*Deposit*"). Buyer shall initiate a wire transfer to Domain Escrow Agent in the amount of the Deposit and provide a Federal Reference Number evidencing the same within twenty four (24) hours of the parties full execution of this Agreement. Domain Escrow Agent shall initiate a wire transfer of the Deposit to Seller's counsel, Pachulski Stang Ziehl & Jones LLP ("*Seller's Counsel*") and provide a Federal Reference Number evidencing the same within twenty four (24) hours of receipt of Buyer's wire transfer. Seller shall execute the Trademarks Assignment attached hereto as Exhibit 2 (*the "Trademarks Assignment"*) and deliver the same to Seller's Counsel.

4.   As soon as practicable, but no later than three (3) Business Days after Buyer's delivery of the Deposit (provided this Agreement was not previously terminated by Seller in accordance with Section 8 below), Seller shall file with the Bankruptcy Court a motion pursuant to section 363 of the Bankruptcy Code seeking approval to consummate the sale transaction contemplated hereunder as well as a proposed Sale Order in the form substantially similar to that annexed hereto as Exhibit 3. Seller shall provide the Buyer with a copy of all documents, motions, orders or pleadings that it intends to file with the Bankruptcy Court that relate to the sale contemplated hereby no less than one (1) Business Day prior to the date on which Seller intends to file such documents, motions, orders or pleadings.

5.   Closing.   The closing of the purchase and sale of the Assets and the assumption of the Assumed Liabilities by Buyer (the "*Closing*") shall take place by no later than three (3) Business Days after the Sale Order becomes a Final Order (the "*Closing Date*"); *provided however*, if, other than due to any act or omission of Buyer (i) the Sale Order has not been entered within forty-five (45) calendar days after the date hereof (Seller agrees that it shall use its best commercially reasonable efforts to obtain a hearing on or before October 27, 2010) or (ii) the Sale Order has not become a Final Order within fifteen (15) calendar days after the date on which the Sale Order is entered (each, a "*Voidable Event*"), Buyer shall have the right (but not the obligation), in its sole discretion, to terminate this Agreement, and upon such termination, the Deposit shall be returned to Buyer within one (1) Business Day after notice of

EXECUTION VERSION

such termination and neither the Buyer nor the Seller shall have any further obligations under this Agreement.  The Closing shall consist of the following process:

a) On or before the Closing Date,  Buyer shall transfer Twelve Million U.S. Dollars ($12,000,000), which is equal to the Purchase Price less the Deposit (the "***Closing Date Payment***"), in immediately available funds to the Domain Escrow Agent.  Domain Escrow Agent shall initiate a wire transfer of the Closing Date Payment less Sedo's Commission as authorized by the Sale Order to the escrow account of Seller's Counsel, along with a Federal Reference Number evidencing the same within twenty four (24) hours of Domain Escrow Agent's receipt thereof;

b) Upon the date on which Seller's Counsel confirms receipt of the Closing Date Payment, Seller shall transfer control of the Domain Name to Domain Escrow Agent by transfer to the following Network Solutions Registrar Account:

> **Account Name: "sedocouk"**
> **Registrant Name: Marius Wuerzner**
> **161 First Street**
> **Cambridge, MA 02142**
> **transferservice@sedo.com**

c) Upon Domain Escrow Agent's confirmation that it has exclusive control over the Domain Name registration sufficient to transfer ownership of the Domain Name to Buyer, Domain Escrow Agent will:

(i) notify Seller's Counsel that it may release the Closing Date Payment (the "***Release Notice***"), at which point Seller's Counsel shall release the Closing Date Payment to Seller; and

(ii) update all Administrative, Technical, and Billing Contact information to reflect Domain Escrow Agent, unlock the Domain Name registration and provide Buyer with an "EPP Code" so that Buyer can pull the Domain Name from Escrow Agent's registrar account at Network Solutions into Buyer's Network Solutions registrar account, and take all necessary steps to effectuate transfer of the Domain Name to Buyer, including but not limited to approving all transfer request confirmations sent by Registrar.  If Buyer does not maintain a Network Solutions Registrar account, Buyer agrees to create and maintain a Network Solutions Registrar account for purposes of the fulfillment of this Agreement.

d) The transaction shall be deemed consummated upon Seller's Counsel's receipt of the Release Notice and Buyer's receipt of the Domain Name into its account with Registrar, at which point Buyer will be deemed to have assumed the Assumed Liabilities (but not the Excluded Liabilities), which assumption shall be additional consideration for the transfer of the Assets and the undertakings set forth herein.  Upon such consummation, Seller's Counsel will deliver the Trademarks Assignment to Buyer and Buyer at its sole cost and expense, may record an assignment of the Trademarks with the United States Patent and Trademark Office.  Seller  agrees to execute any other

EXECUTION VERSION

documents reasonably necessary in order to effectuate assignment of the Trademarks to Buyer.

e) If, due to no fault of the Buyer, Seller fails to fulfill its obligations set forth in this Section 5 prior to the occurrence of a Voidable Event, then this Agreement shall be voidable by Buyer in its sole discretion. In the event Buyer terminates this Agreement in accordance with the preceding sentence, the Deposit shall be returned to the Buyer within one (1) Business Day after notice of such termination and neither the Buyer nor the Seller shall have any further obligations under this Agreement. Buyer acknowledges and agrees that the return of the Deposit, if applicable pursuant to the preceding sentence, shall be the sole and exclusive remedy of Buyer with respect to the failure of Seller to consummate the transactions contemplated by this Agreement.

6.      Representations and Warranties of Seller.  Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Delaware. Subject to Bankruptcy Court approval, Seller has corporate power and authority to execute and deliver this Agreement and any other agreement or document contemplated by this Agreement and to consummate the transactions contemplated hereby and thereby. Seller owns the Assets, and Buyer shall be vested with good title to such Assets, free and clear of all liens and encumbrances of any nature whatsoever, to the fullest extent permissible under section 363(f) of the Bankruptcy Code. Seller is not party to or bound by (i) any agreement relating to the ownership, use or operation of the Domain Name or the Assets, including, without limitation, any agreement that would purport to limit the freedom of Buyer to use the Assets after the Closing Date, or (ii) any agreement relating to the acquisition or disposition (whether by merger, sale of stock, sale of assets or otherwise) of any of the Assets. To Seller's knowledge, no claim by any third party regarding ownership, infringement or non-infringement, and/or use of the Assets exists as of the date hereof other than those claims asserted in the Bankruptcy Case, all of which shall be released with respect to the Assets upon the Closing of the transaction contemplated hereunder in accordance with the Sale Order. To Seller's actual knowledge, (a) it is not now in breach and is not aware of any breach of the Registration Agreement and (b) the Registration Agreement is in full force and effect as of the date hereof. NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, BUYER ACKNOWLEDGES AND AGREES THAT (A) SELLER IS NOT MAKING ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, BEYOND THOSE EXPRESSLY GIVEN BY SELLER IN THIS SECTION 6 HEREOF, AND (B) THE ASSETS ARE BEING TRANSFERRED, AS TO CONDITION, ON AN "AS IS" BASIS AND "WITH ALL FAULTS." SELLER HEREBY DISCLAIMS ANY WARRANTY (EXPRESS OR IMPLIED) (I) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS, (II) REGARDING TRAFFIC OR REVENUE THAT HAS BEEN OR CAN BE GENERATED BY SELLER'S OR BUYER'S USE OF THE DOMAIN NAME, (III) THAT THE DOMAIN NAME WILL MEET BUYER'S REQUIREMENTS, OR THAT BUYER WILL BE ABLE TO ATTAIN ANY SPECIFIC RESULTS OR VALUE ASSOCIATED WITH THE DOMAIN NAME OR THE USE THEREOF.

7.      Representations and Warranties of Buyer.  Buyer is a Saint Vincent company duly organized, validly existing and in good standing under the laws of Saint Vincent. Buyer

has corporate power and authority to execute and deliver this Agreement and any other agreement or document contemplated by this Agreement and to consummate the transactions contemplated hereby and thereby. Buyer has, as of the date hereof, and will have as of the Closing, sufficient funds available to pay the Purchase Price, to assume the Assumed Liabilities, and to pay any expenses incurred by Buyer in connection with the transactions contemplated by this Agreement.

8.    <u>Breach by Buyer</u>.  If Buyer is unable to fulfill its obligation under this Agreement to pay the Purchase Price, and consequently, the Closing does not occur, then Seller may terminate this Agreement, consummate the underlying transaction with an alternate purchaser and retain the Deposit, without prejudice to any other remedies that may be available to Seller in law or equity.

9.    <u>Survival</u>.  Seller and Buyer agree that all of the representations and warranties of the parties hereto shall survive the Closing Date indefinitely. Seller, Buyer and Sedo agree that all of the covenants to be performed at or after the date hereof contained in this Agreement shall survive the Closing and continue in full force and effect indefinitely.

10.    <u>Brokerage Obligations</u>.  Other than Sedo, there is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of Seller or Buyer who might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement. If any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Seller in connection with this transaction (other than from Sedo as authorized by the Sale Order, it being understood and agreed that Sedo shall not be entitled to any additional fee or commission with respect to its role as escrow agent for the Closing) and Buyer's actions (other than the Closing) form the basis of such claim, Buyer shall indemnify, defend (with counsel reasonably satisfactory to Seller), protect and save and hold Seller harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby, it being expressly acknowledged and agreed that Buyer shall have no responsibility for any commissions, fees or compensation payable to Sedo in connection with the transaction contemplated herein.

11.    <u>Bankruptcy Court Approval</u>.  Notwithstanding payment of the Purchase Price by Buyer, the sale, transfer, assignment, conveyance and delivery of the Assets by Seller to Buyer and Seller's obligations hereunder are subject to the approval of the Bankruptcy Court.

12.    <u>Conduct of Business</u>.  From the date hereof through the Closing Date, Seller shall not take any action that would result in, or by unreasonable inaction permit to occur, any material change in the Assets or any change to the representations and warranties it has made which are contained herein. Seller shall keep the Assets in the same form and manner as they exist as of the date hereof.

13.    <u>Mutual Cooperation</u>.  Seller and Buyer shall execute such other documents and take such further actions as may be reasonably required to effectuate the terms and conditions of this Agreement.

EXECUTION VERSION

14.   Counterparts.  This Agreement may be executed in any number of counterparts, and by the parties hereto on separate counterparts, but shall not be effective until each party has executed at least one counterpart.   Each counterpart shall constitute an original of this Agreement, but all the counterparts shall together constitute but one and the same instrument. Each counterpart may be delivered by facsimile transmission or portable data format (PDF), which transmission shall be deemed delivery of an originally executed document.

15.   Successors and Assigns.  This Agreement will be binding on, and will inure to the benefit of, the successors and permitted assigns of the Seller, Buyer, and Sedo.

16.   Assignment.  Neither this Agreement nor any rights and obligations hereunder may be transferred or assigned without all of the other parties' prior written consent.

17.   Entire Agreement.  This Agreement is the entire agreement between the parties hereto with respect to the subject matter hereof and shall not be amended except in a written agreement executed by an authorized officer of each party hereto.

18.   Notices.  All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), or (ii) one (1) Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses (or to such other address as a party hereto may have specified by notice given to the other party hereto pursuant to this provision):

If to Seller, to:

Escom, LLC
c/o Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA  90067-4100
Attention: Jeffrey W. Dulberg
E-mail:  jdulberg@pszjlaw.com

If to Buyer, to:

Clover Holdings Limited
Egmont Street, Bonadies Plaza Suite 3
Kingstown, Saint Vincent
E-mail:  Domains@Hushmail.com

If to Sedo:

Sedo.com LLC
161 First Street, 4th Fl.
Cambridge, MA 02142
Attention:  Sheri Archidiacono
E-Mail: sheri@sedo.com

EXECUTION VERSION

Notwithstanding the foregoing, any notice by electronic mail to the email address for a party set forth above (or such other email address as a party hereto may have specified by notice given to the other party hereto pursuant to this provision) shall be deemed effective notice hereunder upon the addressee's receipt of the same in the event such notice is acknowledged by reply email or other written acknowledgment.

19.     <u>Time Is of Essence</u>.  The parties agree that time is of the essence with respect to all obligations contained in this Agreement.

20.     <u>Governing Law</u>.     Notwithstanding any choice of law contained in the Registration Agreement, this Agreement shall be governed by and construed in accordance with the laws of the State of California, including but not limited to (i) how such California law applies to contracts made and performed in California, and (ii) the existence of intangible personal property rights in domain names, and to the extent applicable, the Bankruptcy Code.

21.     <u>Jurisdiction</u>.  The parties hereby: (a) irrevocably and unconditionally agrees that the United States Bankruptcy Court for the Central District of California (the "Court") shall have exclusive jurisdiction with respect to any issues, actions, suits, or proceedings arising out of or relating to this Agreement; and (b) irrevocably and unconditionally waive any objection to the laying of venue in the Court with respect to any action, suit or proceeding arising out of this Agreement.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

EXECUTION VERSION

*SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT*

**IN WITNESS WHEREOF**, Seller, Buyer and Domain Escrow Agent have
executed this Agreement as of the date first written above.

**SELLER:**

**Escom, LLC,**
a Delaware limited liability company,
Debtor and Debtor in Possession

By: _____
Name: _____
Its: _____

**BUYER:**

**Clover Holdings Limited**
a Saint Vincent company

By: _____
Name: _____
Its: _____

**DOMAIN ESCROW AGENT:**

Sedo.com LLC, a Massachusetts limited
liability company

By: _____
Name: _____
Its: _____

EXECUTION VERSION

## SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT

**IN WITNESS WHEREOF**, Seller, Buyer and Domain Escrow Agent have executed this Agreement as of the date first written above.

**SELLER:**

**Escom, LLC,**
a Delaware limited liability company,
Debtor and Debtor in Possession

By: _____
Name: _____
Its: _____

**BUYER:**

**Clover Holdings Limited**
a Saint Vincent company

By: _____
Name: E.M.French - DIRECTOR
Its: _____

**DOMAIN ESCROW AGENT:**

Sedo.com LLC, a Massachusetts limited
liability company

By: _____
Name: _____
Its: _____

# EXHIBIT 1

## SCHEDULE F TO NETWORK SOLUTIONS SERVICE AGREEMENT

### REGISTRANT NAME CHANGE AGREEMENT

1. The following additional terms and conditions (the "Registrant Name Change Agreement" or "RNCA") apply to any change of the registrant (account holder's) name for a second-level domain name or nsWebAddress™ ("Registrant Name Change"), and, unless specifically noted otherwise below, apply to you whether you are listed as the registrant before the change (the "Current Registrant") or after the change (the "New Registrant"). The nsWebAddress™ or domain name for which this RNCA is being processed shall be referred to in this Schedule as the "Domain Name." The RNCA shall not be effective until both the Current Registrant and the New Registrant have indicated their agreement to the terms and conditions of the Agreement (which includes the terms and conditions of this Schedule). You agree that we may void the RNCA and cancel the transfer to remedy an unauthorized change to a Registrant's domain name account. Nothing contained in this Schedule shall be construed as an assignment of the Current Registrant's rights under the Agreement. As used in this Schedule (as in the General Conditions), the word "Agreement" shall mean the Network Solutions Service Agreement of which this Schedule is a part.

2. The terms in this section apply only to the Current Registrant. You agree that you and Network Solutions are currently parties to the Agreement for the registration of the Domain Name(s). You hereby relinquish your registration of the Domain Name(s) and discharge Network Solutions from all obligations under the Agreement, and you release Network Solutions from all claims, liabilities or demands arising from the Agreement. You further acknowledge and agree that you are not entitled to a refund of any fees you may have paid to Network Solutions. You hereby authorize Network Solutions to take all steps necessary to register the Domain Name(s) to the New Registrant, including without limitation, disassociating the Domain Name(s) from the host servers designated by you without further notice. You represent and warrant that you possess the authority to legally bind the Current Registrant of the Domain Name(s) being transferred.

3. The terms in this section apply only to the New Registrant. You acknowledge that you have reviewed and you understand the terms, conditions, representations and warranties of the Agreement in effect as of the date of your application to become the New Registrant. By applying for this Registrant Name Change, you agree to be bound by and to perform in accordance with the terms and conditions of the Agreement, which includes Network Solutions' current Domain Name Dispute Policy. You also reaffirm the accuracy and completeness of all of the information submitted for the Registrant Name Change. Your registration of the Domain Name(s) shall be effective upon Network Solutions' transmission of an acknowledgement to you that the Domain Name(s) has been registered to the New Registrant. You agree to pay Network Solutions the RNCA processing fee set forth on our Website, if any, by providing appropriate credit card information as requested. You represent and warrant that you are the New Registrant or possess the authority to legally bind the New Registrant of the Domain Name(s) being transferred. You acknowledge and agree that unless you register additional registration years for the Domain Name(s), the term of your registration of the Domain Name(s) will be equal to the remaining term of the Current Registrant at the time of the Registrant Name Change.

(10594522-1)

**EXHIBIT 2**

## TRADEMARK ASSIGNMENT AGREEMENT

THIS TRADEMARK ASSIGNMENT, effective October 8th, 2010, by and between Clover Holdings Limited, a company established under the laws of Saint Vincent ("**CLOVER**"), and Escom, LLC, a Delaware limited liability company ("**ESCOM**").

WHEREAS, on March 17, 2010, certain creditors of ESCOM filed an involuntary petition for relief (the "**Bankruptcy Case**") against Seller pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), before the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division) (the "**Bankruptcy Court**"), which case is captioned *In re Escom, LLC*, Case No. 1:10-bk-13001-GM; and

WHEREAS, on June 21, 2010, the Bankruptcy Court entered an order for relief in the Bankruptcy Case. ESCOM operates its business and manages its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Bankruptcy Case; and

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of October __, 2010, by and between ESCOM and CLOVER (the "**Purchase Agreement**"), ESCOM has agreed to convey certain trademarks listed in the attached Schedule 1 (the "**Trademarks**"), to CLOVER and CLOVER has agreed to acquire said Trademark rights as part of the Assets (as defined in the Purchase Agreement) and, following approval of the Purchase Agreement by the Bankruptcy Court under section 363 of the Bankruptcy Code, CLOVER has made payment to ESCOM for said rights and other Assets; and

WHEREAS, ESCOM and CLOVER are desirous of memorializing said acquisition and transfer of all of the right, title and interest in and to the Trademarks together with all associated goodwill.

NOW, THEREFORE, in view of good and valuable consideration, including the mutual promises and undertakings set forth in the Purchase Agreement and herein, the value, sufficiency and receipt of which are acknowledged by the parties, ESCOM and CLOVER, intending to be legally bound, agree as follows:

1.     ESCOM hereby assigns to CLOVER, all right, title and interest in and to the Trademarks listed in the attached Schedule 1, together with all of the goodwill of the business associated with the use and symbolized by the Trademarks, together with all claims prior to the effective date of this Assignment that could have been asserted by ESCOM for damages by reason of past infringement by third parties of any of the Trademarks, with the same right to sue for, and collect on the same for CLOVER's own use and benefit and for the use and benefit of its successors, assigns and/or its other legal representatives.

2.     ESCOM agrees to execute such instruments as CLOVER deems necessary or desirable to vest in CLOVER all right, title and interest in and to the Trademarks listed in the attached Schedule 1, and to enable CLOVER to record such rights with the United States Patent and Trademark Office ("**PTO**").

*FTL 107,886,161v2 10-9-10*

3.     ESCOM will, upon request, but without expense to CLOVER, testify in any legal proceedings, sign all lawful papers, execute all renewals, and continued use declarations and/or extension applications, make all rightful oaths, execute any other forms of assignment for recordation of any and all facets of same and generally do all other and further lawful acts deemed necessary or expedient by CLOVER or by counsel for CLOVER, to assist and/or to enable CLOVER to obtain and enforce benefits from the Trademarks.

4.     This Agreement will inure to the benefit of the successors and assigns of CLOVER.

5.     ESCOM represents, warrants and covenants that, with respect to each Trademark and the pending trademark application to be submitted to the PTO, ESCOM has the full right to convey the above-described right, title, interest and goodwill by this instrument, free and clear of any encumbrances and that no other agreement has been or will be executed in conflict herewith.

6.     This Agreement shall be governed by and construed in accordance with the laws of the State of California, including but not limited to (i) how such California law applies to contracts made and performed in California, and (ii) the existence of intangible personal property rights in trademarks, and to the extent applicable, the Bankruptcy Code.

7.     The parties hereby: (a) irrevocably and unconditionally agrees that the Bankruptcy Court shall have exclusive jurisdiction with respect to any issues, actions, suits, or proceedings arising out of or relating to this Agreement; and (b) irrevocably and unconditionally waive any objection to the laying of venue in the Bankruptcy Court with respect to any action, suit or proceeding arising out of this Agreement.

*FTL 107,886,161v2 10-9-10*

OCT-12-2010 TUE 08:06 PM Alexander Front Desk        FAX NO. 3053418553                P. 03

IN WITNESS WHEREOF, the parties hereto have executed this TRADEMARK ASSIGNMENT AGREEMENT effective as of _____ __, 2010.

**SELLER:**

**Escom, LLC,**
a Delaware limited liability company,
Debtor and Debtor in Possession

By: _____
Name:_____
Its:_____

**BUYER:**

**Clover Holdings Limited**
a Saint Vincent company

By: _____
Name: E.M. FRENCH, DIRECTOR
Its:_____

FTL 107.886.181v2 10-9-10

# SCHEDULE 1

## Common Law Trademarks:

| Mark |
| --- |
| SEX.COM |

## Federal Trademark Registrations:

| Mark | Reg. No. | Status |
| --- | --- | --- |
| SEX.COM | 3122247 | Registered |
| SEX.COM | 3284052 | Registered |

*FTL 107,886,161v2 10-9-10*

4

**EXHIBIT 3**

1  Jeffrey W. Dulberg (CA Bar No. 181200)
   PACHULSKI STANG ZIEHL & JONES LLP
2  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California 90067-4100
3  Telephone: 310/277-6910
   Facsimile: 310/201-0760
4  E-mail:   jdulberg@pszjlaw.com
5
   Attorneys for Escom, LLC,
6  Debtor and Debtor in Possession
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11 | In re:                          | Case No.: 1:10-bk-13001-GM
12 |                                  | Chapter 11
13 | ESCOM, LLC,[1]                   | [PROPOSED] ORDER (I) AUTHORIZING
14 |                                  | DEBTOR TO SELL ASSETS FREE AND
   |                                  | CLEAR OF LIENS, CLAIMS, AND
15 |                                  | ENCUMBRANCES, (II) APPROVING ASSET
   |                                  | PURCHASE AGREEMENT AND
16 |              Debtor.             | TRADEMARKS ASSIGNMENT WITH
   |                                  | SUCCESSFUL BIDDER CLOVER HOLDINGS
17 |                                  | LIMITED, (III) APPROVING ASSET
   |                                  | PURCHASE AGREEMENT AND
18 |                                  | TRADEMARKS ASSIGNMENT WITH BACK-
   |                                  | UP BIDDER _____, (IV)
19 |                                  | AUTHORIZING PAYMENT OF SALE
   |                                  | COMMISSIONS FROM SALE PROCEEDS,
20 |                                  | AND (V) GRANTING RELATED RELIEF
21 |                                  | [Relates to Docket Nos. _____]
22 |                                  |
   |                                  | Date:
23 |                                  | Time:
   |                                  | Place: Courtroom 303
24 |                                  |        21041 Burbank Blvd.
   |                                  |        Woodland Hills, California 91367
25
26
27

28  _____
    [1] The Debtor is a Delaware limited liability company, Tax I.D. # 20-038609. The Debtor's address is PO Box 1410
    Agoura Hills. CA 91376.
    {10594517:1}

FTL 107,886,270v2 10-9-10

1    Upon the motion (the "Motion") of the above-captioned debtor and debtor in possession (the

2    "Debtor") for entry of an order approving the sale of the Assets[2] free and clear of all liens, claims,

3    encumbrances, and interests, in accordance with the terms and conditions of the Asset Purchase

4    Agreement annexed hereto as Exhibit A, and granting related relief; and this Court having entered an

5    order dated June 30, 2010, (i) authorizing the Debtor to employ Sedo.com, LLC ("Sedo") as the

6    Debtor's sales and marketing agent; (ii) approving Sale Procedures relating to the Assets; and (iii)

7    ordering that at a hearing may be scheduled on notice to all parties in interest at which the Debtor

8    would seek Court approval of the sale of the Assets to the successful bidder and payment of a

9    commission to Sedo (the "Procedures Order," Docket No. 81); and the Debtor having determined

10   that Clover Holdings Limited, a company organized under the laws of St. Vincent, has made the

11   highest and best offer for the Assets (the "Buyer") in accordance with the Sale Procedures; and the

12   Debtor having determined that _____, has made the second highest and best

13   offer for the Assets (the "Back-Up Buyer") in accordance with the Sale Procedures; and the Court

14   having jurisdiction to consider the Motion and the relief requested therein; and the appearance of all

15   interested parties and all responses and objections, if any, to the Motion having been duly noted in

16   the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and

17   proceedings in this case; and it appearing that the relief requested in the Motion is in the best

18   interests of the Debtor, its estate, its creditors, and all other parties in interest; and after due

19   deliberation and sufficient cause appearing therefore;

20   IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

21       A.    The findings and conclusions set forth herein constitute the Court's findings of fact

22   and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

23   pursuant to Bankruptcy Rule 9014.

24       B.    To the extent any of the following findings of fact constitute conclusions of law, they

25   are adopted as such.  To the extent any of the following conclusions of law constitute findings of

26   fact, they are adopted as such.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.
[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.
{10594517:1}

PATERSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

FTL 107,886,270v2 10-9-10

C.      The Court has jurisdiction over this matter and over the property of the Debtor,

including the Assets, and its estate pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this chapter 11 case and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the Motion and the basis for the

approvals and authorizations herein are sections 105 and 363 of Title 11 of the United States Code

(the "Bankruptcy Code") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

E.      On March 17, 2010, an involuntary petition for relief under chapter 11 of the

Bankruptcy Code was commenced against the Debtor. On June 21, 2010, the Court entered an order

for relief. The Debtor operates its business and manages its affairs as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee

has been appointed in this chapter 11 case.

F.      As evidenced by the proofs of service filed with the Court, proper, timely, adequate,

and sufficient notice of the Motion, the Sale Procedures, and the Sale Hearing have been provided in

accordance with Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules 2002, 6004 and 9014,

the local rules of this Court. No other or further notice of the Motion, the Sale Procedures, or the

Sale Hearing is necessary or shall be required.

G.      A reasonable opportunity to object or be heard regarding the requested relief has been

afforded to all interested persons and entities, including, without limitation, (i) the Office of the

United States Trustee; (ii) the Debtor's prepetition secured lenders (collectively, the "Lenders"); (iii)

all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of

Bankruptcy Procedure; (iv) applicable taxing authorities; and (v) all of the Debtor's known

unsecured creditors. Other parties interested in bidding on the Assets were provided, upon request,

sufficient information to make an informed judgment on whether to bid on the Assets.

H.      The Debtor has demonstrated a sufficient basis for it to enter into the Asset Purchase

Agreement with Clover Holdings Limited (the "Clover APA" and "Buyer"), annexed hereto as

**Exhibit "A"**, and to sell the Assets, and such actions are appropriate exercises of the Debtor's

{10594517:1}

FTL 107,886,270v2 10-9-10

3

36

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   business judgment and in the best interests of the Debtor, its estate, and its creditors.  To the extent it

2   becomes necessary, the Debtor has further demonstrated a sufficient basis for it to enter into the

3   Asset Purchase Agreement with _____ ("Back-Up Buyer" and the "Back-Up APA"), annexed

4   hereto as **Exhibit "B"**, as a back-up buyer pursuant to the Procedures Order.  For purposes of

5   convenience in this Order, (i) the Clover APA and the Back-Up APA are sometimes collectively

6   referred to as the "Sale Agreements" and (ii) the Buyer and the Back-Up Buyer are sometimes

7   collectively referred to as the "Buyers".

8          I.      The Debtor and its professionals have complied, in good faith, in all respects with the

9   Procedures Order.  As demonstrated by the testimony and other evidence proffered or adduced at the

10   Sale Hearing through marketing efforts and a competitive sale process conducted in accordance with

11   the Procedures Order, the Debtor and Sedo (i) afforded interested potential purchasers a full, fair,

12   and reasonable opportunity to qualify as bidders and submit their best offer to purchase the Assets,

13   and (ii) provided potential purchasers, upon request, sufficient information to enable them to make

14   an informed judgment on whether to bid on the Assets.

15          J.      The Sale Procedures obtained the highest and best value for the Assets for the Debtor

16   and its estate.

17          K.      Neither the Buyer nor the Back-Up Buyer is an "insider" or "affiliate" of the Debtor

18   as those terms are defined in the Bankruptcy Code.  Each of the Sale Agreements was negotiated and

19   entered into in good faith, based upon arm's-length bargaining, and without misconduct, collusion or

20   fraud of any kind, attempted or otherwise.  Neither the Buyer nor the Back-Up Buyer has engaged in

21   any conduct that would prevent the application of Bankruptcy Code section 363(m) or cause the

22   application of or implicate Bankruptcy Code section 363(n) to the consummation of the sale

23   transaction to either party.  The Buyers are entitled to all the protections and immunities of

24   Bankruptcy Code section 363(m).

25          L.      The Debtor has full corporate power and authority to execute the Sale Agreements

26   and all other documents contemplated thereby, and the sale of the Assets has been duly and validly

27   authorized by all necessary corporate authority by the Debtor.  No consents or approvals, other than

28

{10594517:1}

FTL 107,886,270v2 10-9-10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  as may be expressly provided for in the Sale Agreements, are required by the Debtor to consummate

2  such transactions.

3      M.      The Debtor has advanced sound business reasons for seeking to enter into the Sale

4  Agreements and to sell the Assets and it is a reasonable exercise of the Debtor's business judgment

5  to sell the Assets and to consummate the transactions contemplated by the Sale Agreements.

6      N.      The terms and conditions of the Clover APA, including the consideration to be

7  realized by the Debtor, are fair and reasonable, and the transaction contemplated by the Clover APA

8  is in the best interests of the Debtor's estate.  In the event the Clover APA transaction is not

9  consummated, the terms and conditions of the Back-Up APA, including the consideration to be

10  realized by the Debtor, are fair and reasonable, and the transaction contemplated by the Back-Up

11  APA is in the best interests of the Debtor's estate in such event.

12      O.      The Assets shall be sold free and clear of all liens, claims, encumbrances, and

13  interests, with liens, claims, encumbrances, and interests to attach to the consideration to be received

14  by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as before

15  the Closing, and neither of the Buyers would purchase the Assets otherwise.

16      P.      The transfer of the Assets, once consummated in accordance with the relevant Sale

17  Agreement, will be a legal, valid, and effective transfer of the Assets, and shall vest the Buyer or the

18  Back-Up Buyer, as the case may be, with all right, title, and interest of the Debtor to the Assets free

19  and clear of any and all liens, claims, encumbrances, and interests of any kind whatsoever

20  (collectively, the "Liens, Claims, Encumbrances, and Interests").  Except as specifically provided in

21  the Sale Agreements, neither the Buyer nor the Back-Up Buyer shall assume or become liable for

22  any Liens, Claims, Encumbrances, and Interests relating to the Assets.  All persons having Liens,

23  Claims, Encumbrances, or Interests of any kind or nature whatsoever against or in any of the Debtor

24  or the Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting

25  such Liens, Claims, Encumbrances, or Interests against the Buyer or the Back-Up Buyer, as the case

26  may be, any of their assets, property, successors or assigns, or the Assets.

27      Q.      The Debtor may sell the Assets free and clear of all Liens, Claims, Encumbrances,

28  and Interests of any kind or nature whatsoever because, in each case, one or more of the standards

{10594517:1}

FTL 107,886,270v2 10-9-10

1   set forth in Bankruptcy Code section 363(f) has been satisfied. Those (i) holders of Liens, Claims,

2   Encumbrances, and Interests and (ii) non-debtor parties, who did not object, or who withdrew their

3   objections, to the sale of the Assets and the Motion are deemed to have consented to the sale

4   pursuant to Bankruptcy Code section 363(f)(2). All objections to the Motion have been resolved or,

5   to the extent not resolved, are hereby overrruled. Those holders of Liens, Claims, Encumbrances,

6   and Interests who did object fall within one or more of the other subsections of Bankruptcy Code

7   section 363(f) and are adequately protected by having their Liens, Claims, Encumbrances, and

8   Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property

9   against or in which they claim or may claim any Liens, Claims, Encumbrances, and Interests, with

10   such Liens, Claims, Encumbrances, and Interests being subject to treatment as prescribed in any plan

11   of liquidation proposed by the Debtor or by other, separate order of this Court.

12       R.      Not selling the Assets free and clear of all Liens, Claims, Interests, and

13   Encumbrances would adversely impact the Debtor's estate, and the sale of Assets other than free and

14   clear of all Liens, Claims, Encumbrances, and Interests would be of substantially less value to the

15   Debtor's estate.

16       S.      The transaction contemplated under the Clover APA (or the Back-Up APA, as the

17   case may be) does not amount to a consolidation, merger, or *de facto* merger of the Buyer (or the

18   Back-Up Buyer, as the case may be) with the Debtor.

19       T.      The sale of the Assets outside of a plan of reorganization neither impermissibly

20   restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating

21   plan of reorganization for the Debtor. The sale does not constitute a *"sub rosa"* chapter 11 plan.

22       U.      Time is of the essence in consummating the sale. In order to maximize the value of

23   the Assets, it is essential that the Closing occur within the time constraints set forth in the Clover

24   APA. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004(h).

25   BASED UPON THE FOREGOING, IT IS HEREBY **ORDERED, ADJUDGED, AND DECREED**

26   THAT:

27       1.      The relief requested in the Motion with respect to the sale of the Assets and related

28   matters is granted in its entirety, subject to the terms and conditions contained herein.

{10594517:1}

FTL 107,886,270v2 10-9-10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      2.     All objections, responses, and requests for continuance concerning the Motion are

2    resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.

3    To the extent any such objection, response or request for continuance was not otherwise withdrawn,

4    waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

5      3.     Notice of the Sale Hearing was fair and equitable under the circumstances and

6    complied in all respects with all applicable law and rules of Court, including Section 102(1) of the

7    Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

8      4.     The sale of the Assets, the terms and conditions of the Clover APA (including all

9    schedules and exhibits affixed thereto), and the transaction contemplated thereby are authorized and

10    approved in all respects and shall be binding on the Debtor and its estate, creditors, interest holders

11    and parties in interest.

12      5.     Solely in the event the Closing (as defined in the Clover APA) of the sale of the

13    Assets does not occur under the terms of the Clover APA, the terms and conditions of the Back-Up

14    APA (including all schedules and exhibits affixed thereto) and the transaction contemplated thereby

15    is authorized and approved in all respects.

16      6.     The sale of the Assets and the consideration provided by the Buyer under the Clover

17    APA and by the Back-Up Buyer under the Back-Up APA, as the case may be, are fair and

18    reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent

19    value and fair consideration under the Bankruptcy Code and any other applicable law and shall not

20    be subject to challenge under any applicable non-bankruptcy law.

21      7.     The Buyers are hereby granted and are entitled to all of the protections provided to a

22    good faith buyer under section 363(m) of the Bankruptcy Code.

23      8.     The Debtor is authorized and directed to perform and implement the terms of each of

24    the Sale Agreements, as the case may be, together with any and all additional instruments and

25    documents that may be reasonably necessary or desirable to implement and effectuate their terms,

26    and to take all further actions as may reasonably be requested by the Buyer or the Back-Up Buyer, as

27    the case may be, for the purpose of assigning, transferring, granting, conveying and conferring the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

{10594517;1}

FTL 107,886,270v2 10-9-10

1    Assets to the Buyer or the Back-Up Buyer, as the case may be, without any further corporate action

2    or orders of this Court.

3          9.    All commissions due to Sedo in accordance with the terms of Sedo's employment and

4    the Procedures Order shall be duly paid to Sedo by the Debtor at the Closing of the sale of the

5    Assets. All remaining proceeds from the sale of the Assets shall be distributed among the Lenders in

6    accordance with the terms of that certain settlement order entered on June 9, 2010 in the Debtor's

7    chapter 11 case [Docket #57].

8          10.    The Debtor and each other person or entity having duties or responsibilities under the

9    Sale Agreements, any agreements related thereto or this Order, and their respective directors,

10   officers, employees, members, agents, representatives, and attorneys, are authorized, directed, and

11   empowered, subject to the terms and conditions contained in the Sale Agreements, (a) to carry out all

12   of the provisions of the Sale Agreements and any related agreements; (b) to issue, execute, deliver,

13   file, and record, as appropriate, the documents evidencing, implementing and consummating the Sale

14   Agreements, and any related agreements; (c) to take any and all actions contemplated by the Sale

15   Agreements, any related agreements or this Order; (d) to issue, execute, deliver, file, and record, as

16   appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale,

17   assignments, leases, or other agreements or documents, including, without limitation, the Trademark

18   Assignment Agreement attached as Exhibit 2 to the Clover APA; (e) to perform such other acts and

19   execute and deliver such other documents, as are consistent with, and reasonably necessary or

20   appropriate to implement, effectuate, and consummate the Sale Agreements, any related agreements

21   and this Order and the transactions contemplated thereby and hereby; and (f) to take any and all

22   further actions as may be reasonably requested by the Buyer or the Back-Up Buyer, as the case may

23   be, for the purpose of transferring, assigning, granting, conveying, or conferring the Assets to the

24   possession of the Buyer or the Back-Up Buyer, as the case may be, all without further application to,

25   or order of, the Court or further action by their respective directors, officers, employees, members,

26   agents, representatives, and attorneys, and with like effect as if such actions had been taken by

27   unanimous action of the respective directors, officers, employees, members, agents, representatives,

28   and attorneys of such entities. The Debtor is further authorized, directed, and empowered to cause to

{10594517;1}

8

FTL 107,886,270v2 10-9-10

be filed with the secretary of state of any state or other applicable officials of any applicable

governmental units, including, without limitation, the United States Patent and Trademark Office,

any and all certificates, agreements, or amendments necessary or appropriate to effectuate the

transactions contemplated by the Sale Agreements, any related agreements and this Order.

11.    The sale of the Assets shall constitute a legal, valid, and effective transfer of the

Assets notwithstanding any requirement for approval or consent by any person and shall vest the

Buyer or the Back-Up Buyer, as the case may be, with all right, title, and interest of the Debtor in

and to the Assets, free and clear of all Liens, Claims, Encumbrances, and Interests of any kind,

including adverse interests of any kind or nature whatsoever and all debts arising under or out of, in

connection with, or in any way relating to, any acts of the Debtor, pursuant to section 363(f) of the

Bankruptcy Code.

12.    The sale contemplated hereunder is not subject to challenge or avoidance pursuant to

section 363(n) of the Bankruptcy Code.

13.    The sale of the Assets shall vest the Buyer, or the Back-Up Buyer, as the case may be,

with all right, title, and interest of the Debtor to the Assets free and clear of any and all Liens,

Claims, Encumbrances, and Interests and other liabilities and claims, whether secured or unsecured,

choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured,

disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition

Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens,

Claims, Encumbrances, and Interests to attach only to the proceeds of the sale with the same priority,

validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and

defenses the Debtor may possess with respect thereto; provided, however, that at Closing, the

Lenders' liens shall attach to the sale proceeds to the same extent, validity and priority as they

attached to the Assets immediately prior to the Closing.  Following the Closing Date, no holder of

any Liens, Claims, Encumbrances, and Interests in the Assets shall interfere with the Buyer's use

and enjoyment of the Assets based on or related to such Liens, Claims, Encumbrances, and Interests,

or any actions that the Debtor may take in its chapter 11 case and no person shall take any action to

1    prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by

2    the Sale Agreements or this Order.

3        14.    The provisions of this Order authorizing the sale of the Assets free and clear of Liens,

4    Claims, Encumbrances, and Interests, shall be self-executing, and except with respect to the

5    Trademarks Assignment as required in the Sale Agreements, neither the Debtor nor the Buyers shall

6    be required to execute or file releases, termination statements, assignments, consents, or other

7    instruments in order to effectuate, consummate and implement the provisions of this Order.  Subject

8    to the terms of the Sale Agreements, the Debtor and the Buyers, and each of their respective officers,

9    employees and agents are hereby authorized and empowered to take all actions and execute and

10   deliver any and all documents and instruments that either the Debtor or the Buyers deem reasonably

11   necessary or appropriate to implement and effectuate the terms of the Sale Agreements and this

12   Order.

13       15.    Upon the Closing, the Debtor's creditors are authorized and directed to execute such

14   documents and take all other actions as may be necessary to release any Liens, Claims,

15   Encumbrances, or Interests of any kind against the Assets.  If any person or entity (other than the

16   Lenders) that has filed financing statements or other documents or agreements evidencing any Liens,

17   Claims, Encumbrances, or Interests in or against the Assets shall not have delivered to the Debtor

18   prior to the Closing after request therefor, in proper form for filing and executed by the appropriate

19   parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims,

20   Encumbrances, or Interests that the person or entity has with respect to the Assets, the Debtor is

21   hereby authorized to execute and file such statements, and empowered to perform under, all

22   instruments, releases and other documents on behalf of the person or entity with respect to such

23   Assets prior to the Closing, and the Buyer, or the Back-Up Buyer, as the case may be, is authorized

24   to file such documents after Closing.

25       16.    To the extent available under applicable law, the Buyer, or the Back-Up Buyer, as the

26   case may be, shall be authorized, as of the Closing, to operate under any license, permit, registration

27   and governmental authorization or approval of the Debtor with respect to the Assets, and all such

28   licenses, permits, registrations and governmental authorizations and approvals are deemed to have

{10594517:1}

FTL 107,886,270v2 10-9-10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   been, and hereby are, directed to be transferred to the Buyer, or the Back-Up Buyer, as the case may

2   be, as of the Closing Date.

3        17.    All of the Debtor's interests in the Assets shall be, as of the Closing Date and upon

4   the occurrence of the Closing, transferred to and vested in the Buyer, or the Back-Up Buyer, as the

5   case may be.  Upon the occurrence of the Closing, this Order shall be considered and constitute for

6   any and all purposes a full and complete general assignment, conveyance and transfer of the Assets

7   transferring good and marketable, indefeasible title and interest in the Assets to the Buyer, or the

8   Back-Up Buyer, as the case may be.

9        18.    All persons or entities presently or after the Closing in possession of some or all of

10   the Assets are directed to surrender possession of the Assets to the Buyer, or the Back-Up Buyer, as

11   the case may be, on the Closing Date, or at such time thereafter as may be requested.

12        19.    Each and every federal, state, and local governmental agency or department is hereby

13   directed to accept any and all documents and instruments necessary and appropriate to consummate

14   the transactions contemplated by the Sale Agreements and this Order.

15        20.    All persons, Governmental Units (as defined in section 101(27) of the Bankruptcy

16   Code) and all holders of Liens, Claims, Encumbrances, and Interests based upon or arising out of

17   liabilities retained by the Debtor are hereby enjoined from taking any action against the Buyer, or the

18   Back-Up Buyer, as the case may be, or the Assets to recover any Liens, Claims, Encumbrances, and

19   Interests or on account of any liabilities of the Debtor.

20        21.    To the extent permitted under applicable law, neither of the Buyers is, nor shall they

21   be deemed to be, a "successor" to the Debtor or its estate by reason of any theory of law or equity,

22   and neither the Buyer nor the Back-Up Buyer shall assume, nor be deemed to assume, or in any way

23   be responsible for any liability or obligation of the Debtor and/or its estate including, but not limited

24   to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided

25   in the respective Sale Agreements.  To the fullest extent permitted under applicable law, neither the

26   purchase of the Assets, nor the fact that the Buyer, or the Back-Up Buyer, as the case may be, or

27   their affiliates, are using the Assets previously operated by the Debtor, will cause the Buyer, or the

28   Back-Up Buyer, as the case may be, or any of their affiliates, to be deemed a successor in any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

FTL 107,886,270v2 10-9-10

1   respect to the Debtor's businesses within the meaning of any foreign, federal, state or local revenue,

2   pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including,

3   without limitation, filing requirements under any such laws, rules or regulations), or under any

4   foreign, federal, state or local law, rule, regulation or doctrine prohibiting the possession or

5   publication of pornography with respect to the Debtor's liability under such law, rule, regulation or

6   doctrine, or under any products liability law or doctrine with respect to the Debtor's liability under

7   such law, rule, regulation or doctrine.

8         22.     All persons and entities, including, but not limited to, the Debtor, all debt holders,

9   equity security holders, the Debtor's employees or former employees, governmental, tax and

10  regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other

11  creditors asserting or holding a Lien, Claim, Encumbrance, or Interest of any kind or nature

12  whatsoever against, in or with respect to the Debtor or the Assets (whether legal or equitable,

13  secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated),

14  arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the

15  operation of the Debtor's business prior to the Closing Date or the transfer of the Assets, shall be

16  forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise

17  pursuing such Lien, Claim, Encumbrance or Interest against the Buyer, or the Back-Up Buyer, as the

18  case may be, or any affiliate, successor or assign thereof and each of their respective current and

19  former members, shareholders, officers, directors, managed funds, investment advisors, attorneys,

20  employees, partners, affiliates and representatives (each of the foregoing in its individual capacity),

21  or the Assets.

22        23.     Subject to the terms of the Sale Agreements, such Sale Agreements may be waived,

23  modified, amended, or supplemented by agreement of the Debtor and the Buyer, or the Back-Up

24  Buyer, as the case may be, without further action or order of the Court; provided, however, that any

25  such waiver, modification, amendment, or supplement is not material and substantially conforms to,

26  and effectuates, the respective Sale Agreement.

27        24.     The failure specifically to include any particular provisions of the Sale Agreements in

28  this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the

{10594517:1}

12

FTL 107,886,270v2 10-9-10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Court, the Debtor, and the Buyers that the Sale Agreements are authorized and approved together

2   with such amendments thereto as may be made by the parties in accordance with this Order.

3       25.    To the extent any provisions of this Order conflict with the terms and conditions of

4   the Sale Agreements, this Order shall govern and control.

5       26.    This Order and the Sale Agreements shall be binding upon and govern the acts of all

6   persons and entities, including without limitation, the Debtor, the Buyers, Sedo, their respective

7   successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter

8   appointed for the Debtor's estate or any trustee appointed in a Chapter 7 case if this case is converted

9   from Chapter 11, all creditors of the Debtor (whether known or unknown), filing agents, filing

10  officers, title agents, recording agencies, secretaries of state, registrars, registries, and all other

11  persons and entities who may be required by operation of law, the duties of their office or contract,

12  to accept, file, register, or otherwise record or release any documents or instruments or who may be

13  required to report or insure any title in or to the Assets.  Such binding effect is an integral part of the

14  Sale Agreements and this Order.

15      27.    The Back-up Buyer is not and shall not be deemed to be a third party beneficiary for

16  any purposes under the Clover APA.  Any rights or approval granted to the Back-up Buyer

17  hereunder shall be of no force or effect unless and until the Closing (as defined in the Clover APA)

18  of the sale of the Assets fails to occur under the terms of the Clover APA.

19      28.    Notwithstanding Bankruptcy Rules 6004 and 7062, this Order shall be effective and

20  enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any

21  person or entity obtaining a stay pending appeal, the Debtor and the Buyer or the Back-Up Buyer, as

22  the case may be, are free to close under the relevant Sale Agreement at any time, subject to the terms

23  of such Sale Agreement.

24      29.    This Court shall retain exclusive jurisdiction to enforce the terms and provisions of

25  this Order, the Procedures Order, and the Sale Agreements in all respects and to decide any disputes

26  concerning this Order, the Sale Agreements, or the rights and duties of the parties hereunder or

27  thereunder or any issues relating to the Sale Agreements and this Order including, but not limited to,

28  the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

{10594517:1}

13

46

1    extent of the Assets and all issues and disputes arising in connection with the relief authorized

2    herein, inclusive of those concerning the transfer of the Assets free and clear of all Liens, Claims,

3    Interests, and Encumbrances.

4                                                    #####

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document described as ***NOTICE OF MOTION AND MOTION FOR ORDER (I) AUTHORIZING DEBTOR TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) APPROVING ASSET PURCHASE AGREEMENT WITH SUCCESSFUL BIDDER CLOVER HOLDINGS LIMITED, (III) AUTHORIZING PAYMENT OF SALE COMMISSIONS FROM SALE PROCEEDS, AND (IV) GRANTING RELATED RELIEF; DECLARATIONS OF DEL ANTHONY POLIKRETIS AND JEREMIAH JOHNSTON IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***October 18, 2010,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On ***October 18, 2010,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***October 18, 2010,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**VIA HAND DELIVERY**
Honorable Geraldine Mund
U.S. States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 18, 2010 | Mary de Leon | | /s/ Mary de Leon |
|---|---|---|---|
| Date | | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

**1:10-bk-13001-GM Notice will be electronically mailed to:**

Jeffrey W Dulberg on behalf of Debtor Escom LLC
jdulberg@pszjlaw.com

Michael I Gottfried on behalf of Creditor Nothin But Net LLC
mgottfried@lgbfirm.com, msaldana@lgbfirm.com

Peter J Gurfein on behalf of Creditor Nothin But Net LLC
pgurfein@lgbfirm.com

John W Kim on behalf of Creditor DOM Partners LLC
jkim@nossaman.com

Susan I Montgomery on behalf of Interested Party Courtesy NEF
susan@simontgomerylaw.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**


***SEE ATTACHED SERVICE LIST***

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**

49

## MASTER MAILING LIST FOR ESCOM

**Office of the United States Trustee**
S Margaux Ross
21051 Warner Ctr Ln, Ste 115
Woodland Hills, CA  91367
margaux.ross@usdoj.gov

**Debtor**
Escom LLC
Post Office Box 1410
Agoura Hills, CA  91376
Attn: Del Anthony
del@escomllc.com

Del Polikretis
PO Box 1175
Agoura Hills, CA  91376
del@escomllc.com

DOM Partners, LLC
2050 Center Avenue
Suite 600
Fort Lee, NJ  07024

DOM Partners, LLC
300B Lake Street
Ramsey, NJ  07446

**Counsel for Nothin' But Net, LLC**
Daniel G. Gurfein
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, NY  10169
Tel: (212) 818-9200/Fax: (212) 818-9606
dgurfein@ssbb.com

**Counsel for Nothin' But Net, LLC**
Peter J. Gurfein
Landau Gottfried & Berger, LLP
1801 Century Park East, Suite 1460
Los Angeles, CA  90067
Tel: (310) 557-0050/Fax: (310) 557-0056
pgurfein@lgbfirm.com

Nutin' But Net, LLC
210 Crossways Park West
Woodbury, NY  11797

**Counsel for DOM Partners LLC**
Alan Nisselson/Scott Matthews
Windels Marx Lane & Mittendorf, LLP
156 West 56th St.
New York, NY 10019
Tel: (212) 237-1000/Fax: (212) 262-1215
smatthews@windelsmarx.com
anisselson@windelsmarx.com

**Counsel for Dom Partners LLC**
Allan H. Ickowitz/John Kim
Nossaman LLP
445 So. Figueroa Street, 31st Floor
Los Angeles, CA  90071
Tel: (213) 612-7800/Fax: (213) 612-7801
aickowitz@nossaman.com
jkim@nossaman.com

**Attorneys for Petitioning Creditors Washington Technology Associates, LLC,
iEntertainment, Inc., and AccountingMatters.comLLC**
Susan I. Montgomery, Esq.
1925 Century Park East, Suite 2000
Los Angeles, CA 90067
Tel: (310) 556-8900/Fax: (310) 556-8905
susan@susanmontgomerylaw.com

Washington Technology Associates
9812 Falls Road, #114-331
Potomac, MD  20854

**Attorneys for Petitioning Creditors Washington Technology Associates, LLC,
iEntertainment, Inc., and AccountingMatters.comLLC**
Lawrence F. Morrison, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th St., 19th Floor
New York, NY 10017
Tel: (212) 655-3582/Fax: (646) 539-3682
lfm@msf-law.com

**Creditors or Parties in Interest**
i95 Invesment Group
60 Wells Ave., Suite 100
Newton, MA 02459
Attn: Corey Bialow
Tel: (617) 928-9423/Fax: (617) 964-5318
cbialow@bialow.com

iEntertainment, Inc.
9812 Falls Road, #114-331
Potomac, MD  20854

2

**Creditors or Parties in Interest**
Domain Name Acquisition Group, LLC
188 Needham St., Suite 255
Newton, MA 02464
Attn: Andrew Miller
Tel: (617) 236-0806/Fax: (617) 927-1199
amiller@internetrealestate.com

Accounting Matters
600 Jefferson St., #320
Rockville, MD  20852

Taxing Authorities
Employment Development Dept.
Bankruptcy Group
Post Office Box 826880
Sacramento, CA  94280

Franchise Tax Board
Attention:  Bankruptcy
Post Office Box 2952
Sacramento, CA  95812

Franchise Tax Board
Post Office Box 942857
Sacramento, CA  94257-0631

Internal Revenue Service
Post Office Box 21126
Philadelphia, PA  19114

State Board of Equalization
Attn:  Special Procedures Section
Post Office Box 942879
Sacramento, CA  95814

23880-001\DOCS_LA:221388.2